| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF CHARLESTON | ) | |
| DAWN LEDWELL, | ) | CIVIL ACTION COVERSHEET |
| | ) | |
| **Plaintiff(s)** | ) | |
| vs. | ) | 2018-CP-10- 5824 |
| THOMAS RAVENEL; HAYMAKER CONTENT LLC; BRAVO MEDIA PRODUCTIONS, INC.; NBCUNIVERSAL MEDIA, LLC; COMCAST CORPORATION, | ) | |
| **Defendant(s)** | ) | |

(Please Print)
Submitted By: Ryan C. Andrews; Hal E. Cobb
Address: 222 W. Coleman Blvd., Building 2
    Mt. Pleasant, SC 29464

| SC Bar #: | 101104 (Ryan); 100575 (Hal) |
|---|---|
| Telephone #: | (843)936-6680 |
| Fax #: | (843)353-2583 |
| Other: | |
| E-mail: | randrews@cdhlawfirm.com |

NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION *(Check all that apply)*
***If Action is Judgment/Settlement do not complete***

- ☒ **JURY TRIAL** demanded in complaint.  ☐ **NON-JURY TRIAL** demanded in complaint.
- ☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
- ☒ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
- ☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION *(Check One Box Below)*

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☒ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | Previous Notice of Intent Case # | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | 20___-CP-___-_____ | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | ☐ Notice/ File Med Mal (230) | ☐ Personal Injury (350) | ☐ Possession (450) |
| | ☐ Other (299) | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☐ Other (399) | ☐ Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
| | ☐ Transcript Judgment (740) | ☐ Forfeiture-Petition (840) | ☐ Probate Court (940) |
| | ☐ Lis Pendens (750) | ☐ Forfeiture—Consent Order (850) | ☐ SCDOT (950) |
| | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Other (899) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | ☐ Other (799) | | ☐ Public Service Commission (990) |
| | | | ☐ Employment Security Comm (991) |

| Special/Complex /Other | | |
|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Other (999) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | |
| ☐ Medical (620) | ☐ Out-of State Depositions (650) | |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | |
| | ☐ Sexual Predator (510) | |

EXHIBIT
B

1

**Submitting Party Signature:** _____    **Date:** 12/9/2018

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

Allendale, Anderson, Beaufort, Clarendon, Colleton, Florence, Greenville, Hampton, Horry, Jasper, Lee, Lexington, Pickens (Family Court Only), Richland, Sumter, Union, Williamsburg, and York

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

   a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

   b. Requests for temporary relief;

   c. Appeals

   d. Post Conviction relief matters;

   e. Contempt of Court proceedings;

   f. Forfeiture proceedings brought by governmental entities;

   g. Mortgage foreclosures; and

   h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:** **You must comply with the Supreme Court Rules regarding ADR.**
**Failure to do so may affect your case or may result in sanctions.**

IN THE STATE OF SOUTH CAROLINA  )
COUNTY OF CHARLESTON            )

IN THE COURT OF COMMON PLEAS
FOR THE 9TH JUDICIAL CIRCUIT
CASE NO: 2018-CP-10- 5824

Dawn Ledwell,

                  Plaintiff(s),

      v.

Thomas Ravenel; Haymaker Content LLC;
Bravo Media Productions, Inc.;
NBCUniversal Media, LLC; Comcast
Corporation,

                Defendant(s).

**SUMMONS**
**(Jury Trial Demanded)**

**TO:   THE DEFENDANT(S) ABOVE NAMED:**

    **YOU ARE HEREBY SUMMONED** and required to Answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint upon the Plaintiffs or their attorneys, Ryan C. Andrews and Hal E. Cobb, at his office, 222 W. Coleman Blvd, Building 2, Mt. Pleasant, SC 29464, within (30) days after the service hereof, exclusive of the day of such service and if you fail to Answer the Complaint within the time aforesaid, Plaintiff will apply to the court for the relief demanded in the Complaint.

    Dated at Mt. Pleasant, South Carolina on the 7 day of December, 2018.

                    **COBB DILL & HAMMETT, LLC**

                    BY _____
                       Ryan C. Andrews, S.C. Bar No.: 101104
                       Hal E. Cobb, S.C. Bar No.:  100575
                       222 W. Coleman Blvd. Building 2
                       Mt. Pleasant, SC 29464
                       (843) 936-6680 (office)
                       (843) 353-2488 (facsimile)
                       randrews@cdhlawfirm.com
                       hcobb@cdhlawfirm.com

                  **ATTORNEYS FOR THE PLAINTIFFS**

IN THE STATE OF SOUTH CAROLINA  )
COUNTY OF CHARLESTON           )

Dawn Ledwell,

                              Plaintiff(s),

                v.

Thomas Ravenel; Haymaker Content LLC;
Bravo Media Productions, Inc.;
NBCUniversal Media, LLC; Comcast
Corporation,

                              Defendant(s).

IN THE COURT OF COMMON PLEAS
FOR THE 9TH JUDICIAL CIRCUIT
CASE NO: 2018-CP-10-5824

**COMPLAINT**
**(Jury Trial Demanded)**

The Plaintiff, complaining of the Defendants, alleges and says as follows:

## PARTIES, JURISDICTION, AND VENUE

1.  That the Plaintiff, Dawn Ledwell, (herein referred to as "Plaintiff") is a citizen and resident of North Carolina.

2.  That upon information and belief, Defendant Thomas Ravenel (herein referred to as "Defendant Ravenel") is a citizen and resident of Charleston County, State of South Carolina.

3.  That upon information and belief, Defendant Haymaker Content, LLC (herein referred to as "Defendant Haymaker" is a limited liability company organized and existing under the laws of New York and responsible for the filming and production of the reality television show "Southern Charm." Defendant Haymaker can be served with process to its registered agent, Irad Eyal, 111 North Gardner Street, Los Angeles, California 90036.

4.  That upon information and belief, Defendant Bravo Media Productions, LLC (herein referred to as "Defendant Bravo") is a limited liability company organized and existing under the laws of New York and responsible for the filming and production of the reality television show "Southern Charm." Defendant Bravo can be served with process to its registered agent, Tracy Donovan, 145 W. 28th Street, 2nd Floor, New York, New York

1

10001.

5. That upon information and belief, Defendant NBCUniversal Media, LLC (herein referred to as "Defendant NBC") is a limited liability company organized and existing under the laws of Delaware, and can be served with process to its registered agent, Enterprise Corporate Services, LLC, 1201 N. Market Street, Suite 1000, Wilmington, Delaware 19801.

6. That upon information and belief, Defendant Comcast Corporation (herein referred to as "Defendant Comcast"; Defendants Comcast, NBC, Haymaker, and Bravo are all herein collectively referred to as "Corporate Defendants") is a corporation organized and existing under the laws of Pennsylvania, and can be served with process to its registered agent, Corporation System, 111 Eighth Avenue, New York, New York 10011.

7. That upon information and belief, Corporate Defendants transact business in the State of South Carolina, contract to supply services in the State of South Carolina, and have entered into contracts to be performed in whole or in part in the State of South Carolina through their respective association with the reality television show "Southern Charm," the filming of which is based predominantly in Charleston, South Carolina.

8. That the tortious actions and subsequent injury that is subject of this action occurred in Charleston County, State of South Carolina.

9. That this Court has jurisdiction over the parties.

**FACTUAL BACKGROUND**

10. That Corporate Defendants direct, air, and/or otherwise produce the reality television show "Southern Charm."

11. That "Southern Charm" is a reality television show based in Charleston, South Carolina and upon information and belief, has been airing on national and worldwide television

2

since March of 2014 .

12. That upon information and belief, Defendants Haymaker and Bravo were the production companies behind the reality television show "Southern Charm" that airs on a television network owned by Defendant Bravo, a subsidiary of Defendant NBC.

13. That upon information and belief, Defendant NBC is Defendant Comcast's media, content, and entertainment arm, and is a wholly owned subsidiary of Defendant Comcast.

14. That Defendant Ravenel has been a central main cast member of "Southern Charm" since its inception.

15. That Defendant Ravenel has contracted and otherwise been employed by Corporate Defendants since the inception of "Southern Charm."

16. That upon information and belief, Corporate Defendants have permitted and encouraged "Southern Charm" to be promoted as a show that "goes behind the walls of Charleston, South Carolina's most aristocratic families to reveal a world of exclusivity, money and scandal that goes back generations,"[1] as well as a show that "reveals a world of exclusivity, money and scandal dating back through generations of families in Charleston, S.C."[2]

17. That upon information and belief, Corporate Defendants have created, permitted, and encouraged "Southern Charm" plot lines that focus on alcohol, sexual encounters, and the concept that the male cast members, including Defendant Ravenel, suffer from "Peter Pan Syndrome" and that they are the "Lost Boys" and Charleston is their "Neverland."

18. That upon information and belief, Corporate Defendants have permitted and encouraged drinking during production of "Southern Charm" and Corporate Defendants have made alcohol available for consumption during filming.

19. That upon information and belief, Corporate Defendants require cast members and anyone

---

[1]      https://www.amazon.com/gp/product/B00JZSG55M
[2]      www.afterbuzztv.com/southern-charm

who appears on "Southern Charm" to sign agreements that include the following language: "I understand that in and in connection with the Program [Southern Charm], I may reveal or relate, and other parties may reveal or relate information about me of a personal, private, surprising, defamatory, disparaging, embarrassing or unfavorable nature, and that my actions and the actions of others participating in the Program may be embarrassing or of an otherwise unfavorable nature that may be factual or fictional. I further understand that my appearance, depiction, and portrayal in and in connection with the Program or otherwise, and my actions and the actions of others displayed in and in connection with the Program or otherwise, may be disparaging, defamatory, embarrassing or of an otherwise unfavorable nature, may expose me to public ridicule, humiliation or condemnation, and may portray me in a false light."

20. That upon information and belief, Corporate Defendants require cast members and anyone who appears on "Southern Charm" to sign agreements that include the following language regarding offensive behavior and harassment: "My participation in the Program [Southern Charm] may cause me to be exposed to conversations, banter, and behavior of other participants that may contain explicit references to sex, age, gender, race, religion, sexual orientation, national origin, disability, marital status, violence, and other topics that could be considered offensive. I freely and knowingly consent to being in an environment where such conversations, banter, and behavior may take place. However, I will inform Producer [Corporate Defendants] immediately if I feel harassed by, threatened by, or uncomfortable with the behavior of any other individual connected with the production of the Program at any time, and I understand that I will not be penalized or retaliated against, in any way, for doing so."

21. That upon information and belief, Defendant Ravenel, has owned and/or leased property

4

and resided at 29 ½ Charlotte St. Charleston, SC 29403 (herein referred to as "Defendant Ravenel's Residence) during the time of production of "Southern Charm."

22. That Plaintiff was hired and contracted with Defendant Ravenel for nannying services for Defendant Ravenel's minor children, whose births were chronicled on "Southern Charm."

23. That upon information and belief, Kathryn Dennis is the mother of Defendant Ravenel's children.

24. That Kathryn Dennis is also a cast member of "Southern Charm."

25. That upon information and belief, Defendant Ravenel and Kathryn Dennis had a contractual relationship with Corporate Defendants to appear as paid cast members on the reality television show "Southern Charm."

26. That upon information and belief, Defendant Ravenel resided with his minor children at Defendant Ravenel's Residence.

27. That upon information and belief, Plaintiff cared for Defendant Ravenel's minor children for approximately 3 years.

28. That "Southern Charm" would air, tape, and otherwise video footage of Plaintiff while Plaintiff was working for Defendant Ravenel.

29. That Plaintiff made various appearances on "Southern Charm" in her role as a nanny for Defendant Ravenel.

30. That Plaintiff contracted with Corporate Defendants to appear on "Southern Charm."

31. That upon information and belief, Defendant Haymaker paid Plaintiff for a portion of her nanny services provided to the Ravenel family during production of "Southern Charm."

32. That in or about January 2015, Defendant Ravenel was residing at Defendant Ravenel's Residence with his minor daughter.

33. That on or about an evening in January 2015, Plaintiff was working for Defendant Ravenel

and/or Corporate Defendants at Defendant Ravenel's Residence, while Defendant Ravenel went out for the evening.

34. That at the on or about January 2015, Defendant Ravenel had only one minor child in which Plaintiff was watching.

35. That in or about January 2015, upon Defendant Ravenel's return to Defendant Ravenel's Residence, Plaintiff was the victim of a violent, and unexpected sexual assault at the hands of an intoxicated Defendant Ravenel.

36. That Defendant Ravenel did attempt to remove and rip away Plaintiff's clothing in attempts to engage in sexual intercourse with Plaintiff.

37. That Plaintiff was able to escape and break free of Defendant Ravenel's clutches.

38. That Plaintiff departed Defendant Ravenel's Residence and immediately notified others of the attack perpetrated by Defendant Ravenel.

39. That Plaintiff was shocked, scared, humiliated, and otherwise injured due to the assault perpetrated by Defendant Ravenel.

40. That Corporate Defendants knew or should have known of Defendant Ravenel's propensities to assault females and failed to take appropriate steps to prevent and/or warn of the same.

41. That in or about December 2015, Plaintiff notified Chaz Morgan, an employee and/or agent of Corporate Defendants, of the sexual assault committed by Defendant Ravenel against Plaintiff.

42. That at all times material to the incident made as the basis of this action, Chaz Morgan was acting by and through his employer Corporate Defendants as an employee/agent of Corporate Defendants, and was at all times material acting within the course and scope of his employment or agency in performing duties for, and on behalf of Corporate Defendants.

43. That upon information and belief, Corporate Defendants failed to investigate Plaintiff's allegations against Defendant Ravenel when they were first made aware of these allegations.

44. That upon information and belief, Chaz Morgan reported Plaintiff's sexual assault to executives for Defendant Haymaker, and the co-founder of Defendant Haymaker and executive producer of "Southern Charm," Aaron Rothman; however, upon information and belief, Aaron Rothman failed to investigate and/or report the sexual assault.

45. That upon information and belief, continuing now and since the date of Plaintiff's attack, Defendant Ravenel has made threats towards Kathryn Dennis and others regarding Plaintiff, including that he would destroy the livelihoods of anyone that helps Plaintiff.

46. That upon information and belief, Corporate Defendants instructed cast members of "Southern Charm" and other employees/agents of Corporate Defendants to not speak with anyone regarding the assault of Plaintiff as described above and chose to coverup the same out of fear that such assault could damage the profitability of "Southern Charm."

47. That upon information and belief, Corporate Defendants have made false, defamatory and otherwise disparaging comments to others regarding Plaintiff and her sexual assault in attempts to hide and conceal the same.

48. That upon information and belief, Corporate Defendants and Defendant Ravenel have profited greatly from "Southern Charm."

49. That upon information and belief, Corporate Defendants had a policy, whether written or otherwise, to deter the investigations of the assaults committed by Defendant Ravenel and/or Corporate Defendant were willfully ignorant to the same.

50. That upon information and belief, Corporate Defendants and Defendant Ravenel have conspired with one another to deter the investigations of assaults committed by Defendant

Ravenel.

51. That upon information and belief, Corporate Defendants did not begin investigating the assault of Plaintiff as described above until Plaintiff's allegations against Defendant Ravenel were made public on or around May 4, 2018.

52. That upon information and belief, Corporate Defendants are currently filming the sixth season of "Southern Charm" and preparing to include episodes discussing Defendant Ravenel's assault of females, including but not limited to the assault of Plaintiff.

53. That upon information and belief, Defendant Ravenel sexually assaulted another female, in and around December 2015, and did so after Plaintiff disclosed her assault to Corporate Defendants and Kathryn Dennis.

54. That upon information and belief, Defendant Ravenel paid the other sexually assaulted female, a monetary settlement under a non-disclosure agreement following participation in a mediation in and around June 2016.

55. That upon information and belief, Corporate Defendants knew or should have known of the various assaults perpetrated by Defendant Ravenel.

56. That upon information and belief, Corporate Defendants chose not to investigate various allegations of assault perpetrated by its employee/agent, Defendant Ravenel, and instead chose to continue to create, permit, and encourage plot lines focusing on Defendant Ravenel's romantic and sexual interactions with women.

57. That upon information and belief, Corporate Defendants have not contacted Plaintiff since the public disclosure of the allegations of assault in and around May 4, 2018, despite Corporate Defendants' publicly claiming in and around May 4, 2018 that "Haymaker, the production company for Southern Charm, and Bravo take allegations like these very seriously. Haymaker is conducting an investigation, and once all the information is

8

gathered and carefully reviewed, appropriate action will be taken."[3]

58. That Defendant Ravenel was arrested and charged with Assault and Battery – Second Degree in regard to his assault of Plaintiff.

59. That as a result of Corporate Defendants' and Defendant Ravenel's acts, as more fully described above, Plaintiff has been hurt, injured, embarrassed, humiliated and otherwise damaged.

60. That Corporate Defendants are vicariously liable, due to the negligence of their employees as agents, as is set forth more fully above, for proximately causing injuries and/or damages to Plaintiff, under the doctrines of *respondeat superior, agency*, and/or *ostensible apparent agency*.

61. That all Defendants are jointly and severally liable for the injuries sustained by the Plaintiff.

## <u>FOR A FIRST CAUSE OF ACTION AS TO DEFENDANT RAVENEL</u>
### (Assault & Battery)

62. Plaintiff restates and re-alleges every allegation set forth above as if stated herein verbatim.

63. That Defendant Ravenel did violently approach Plaintiff putting Plaintiff in reasonable fear of bodily harm.

64. That Defendant Ravenel did make forcible unwanted contact with Plaintiff by violently and aggressively pushing Plaintiff into Defendant Ravenel's bedroom, grabbing Plaintiff's arm and ripping Plaintiff's shirt off, pulling Plaintiff's pants down, and inserting Defendant Ravenel's hands between Plaintiff's legs causing severe and significant injuries to Plaintiff's persons.

65. That Defendant Ravenel through his actions caused Plaintiff severe and significant injuries.

---

[3]    https://www.fitsnews.com/2018/05/04/bravo-tv-breaks-its-silence-on-thomas-ravenel-allegations/

66. That the Plaintiff is entitled to an award of damages against Defendant Ravenel in the amount of actual damages, consequential damages, punitive damages, attorney's fees, costs of this action, and other damages or remedies available pursuant to existing law, and which a jury deems appropriate and just.

## FOR A SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS
### (Outrage/Intentional Infliction of Emotional Distress)

67. Plaintiff restates and re-alleges every allegation set forth above as if stated herein verbatim.

68. That upon sexually assaulting Plaintiff and continually making false statements regarding her, Defendant Ravenel recklessly inflicted severe emotional distress, or was certain or substantially certain that such distress would result from his conduct.

69. That upon failing to take any action concerning Plaintiff's sexual assault, Corporate Defendants recklessly inflicted severe emotional distress, or was certain or substantially certain that such distress would result from their conduct.

70. That the Defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

71. That the actions of the Defendants caused Plaintiff's emotional distress.

72. That the Plaintiff's emotional distress was and continues to be so severe that no reasonable person could be expected to endure it.

73. That as a direct and proximate result of the Defendants' actions, Plaintiff has been and continues to suffer from mental anguish, anxiety, and stress of being sexually assaulted and other such ways as would cause Plaintiff additional and unnecessary pain, suffering, and aggravation.

74. That the Plaintiff is entitled to an award of damages against all Defendants in the amount of actual damages, consequential damages, punitive damages, attorney's fees, costs of this

action, and other damages or remedies available pursuant to existing law, and which a jury deems appropriate and just.

## FOR A THIRD CAUSE OF ACTION AS TO ALL DEFENDANTS
### (Civil Conspiracy)

75. Plaintiff restates and re-alleges every allegation set forth above as if stated herein verbatim.

76. That the Defendants did combine, conspire or otherwise join with at least one other person and/or entity.

77. That the purpose of this combination, conspiracy or joining together was for the purpose of hiding and concealing Defendant Ravenel's sexual assault of Plaintiff.

78. That as a result of this combination, conspiracy or joining of individuals, Plaintiff did suffer special damages including but not limited to the added publicity, notoriety, shock, humiliation and otherwise embarrassment she has received due to the continual promotion of "Southern Charm" by Corporate Defendants.

79. That as a direct and proximate result of the Defendants' actions, Plaintiff has been and continues to suffer from mental anguish, anxiety, and stress of being sexually assaulted and other such ways as would cause Plaintiff additional and unnecessary pain, suffering, and aggravation.

80. That the Plaintiff is entitled to an award of damages against all Defendants in the amount of actual damages, consequential damages, punitive damages, attorney's fees, costs of this action, and other damages or remedies available pursuant to existing law, and which a jury deems appropriate and just.

## FOR A FOURTH CAUSE OF ACTION AS TO ALL DEFENDANTS
### (Defamation)

81. Plaintiff restates and re-alleges every allegation set forth above as if stated herein verbatim.

82. That all Defendants did and continue to make false and defamatory statements regarding Plaintiff to third-parties as described above, which harmed the reputation of Plaintiff so as to lower her in the estimation of the community and/or to deter third person from associating or dealing with her.

83. That all Defendants were at fault for the publication of these false and defamatory statements about Plaintiff, and Defendants made these statements with actual and/or implied malice.

84. That Plaintiff suffered actual, special, and consequential damages, including but not limited to embarrassment, humiliation, and mental suffering, as a result of the publication of these false and defamatory statements made by Defendants

85. That the Plaintiff is entitled to an award of damages against all Defendants in the amount of actual damages, consequential damages, punitive damages, attorney's fees, costs of this action, and other damages or remedies available pursuant to existing law, and which a jury deems appropriate and just.

### FOR A FIFTH CAUSE OF ACTION AS TO ALL DEFENDANTS
#### (Negligence/Gross Negligence/Negligence *Per Se*)

86. Plaintiff restates and re-alleges every allegation set forth above as if stated herein verbatim.

87. That Defendants owe a duty to the public at large, and a heightened duty to the Plaintiff, to take reasonable precautions to avoid creating or encouraging any conditions which would put the public in unreasonable danger where the same could be reasonably avoided.

88. That Corporate Defendants knew or should have known of Defendant Ravenel's violent propensities and irresponsible alcohol consumption.

89. That Defendants did breach this duty and that the injuries, harms and losses suffered by Plaintiff as alleged in this Complaint were caused directly and proximately by one or more of the following negligent, grossly negligent, careless, reckless, willful, wanton, and

unlawful acts and/or omissions of the Defendants in any one or more of the following respects:

As to Corporate Defendants:

    a. In each and every instance, act, and/or omission heretofore alleged in this Complaint;

    b. In knowingly permitting Defendant Ravenel to remain in their employment;

    c. In continually making false and defamatory statements regarding Plaintiff;

    d. In knowingly encouraging an atmosphere of overconsumption of alcohol and sexual deviancy;

    e. In violating the general standard of care owed to persons appearing on Corporate Defendants' reality television show;

    f. In failing to warn Plaintiff of the propensities of their employees;

    g. In failing to provide adequate security to Plaintiff and other persons appearing on Corporate Defendants' television show;

    h. In any other acts or omissions which constitute a violation of the laws of this state or the United States; and

    i. In any other manner Plaintiff may discover during the course of this action.

As to Defendant Ravenel:

    a. In each and every instance, act, and/or omission heretofore alleged in this Complaint;

    b. In knowingly creating a condition of danger;

    c. In continually making false and defamatory statement regarding Plaintiff;

    d. In knowingly encouraging an atmosphere of overconsumption of alcohol and sexual deviancy;

e.   In approaching and sexually assaulting Plaintiff in violation of numerous state and federal laws;

f.   In refusing Plaintiff assistance and aid;

g.   In any other acts or omissions which constitute a violation of the laws of this state or the United States; and

h.   In any other manner Plaintiffs may discover during the course of this action.

90. That as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness, wantonness, and acts and/or omissions of the Defendants, as is set forth more fully above, Plaintiff was injured, has endured pain and suffering, has suffered mentally and emotionally, and has incurred, and will incur various medical expenses, and has otherwise been damaged and injured.

91. That Defendants' acts and omissions, as set forth more fully above, show willful misconduct, malice, wantonness and an entire want of care, raising a presumption of the Defendants' conscious indifference to the consequences of such acts and omissions.

92. That because of the Defendants' acts and omission and the proximate harm resulting to Plaintiff, Plaintiff should be awarded punitive damages in an amount to be determined by the trier of fact, in order to punish and penalize the Defendants and to deter the Defendants and others from similar behavior.

93. That upon information and belief, Plaintiff is entitled to judgment against the Defendants for actual, compensatory and exemplary or punitive damages for their personal injuries set forth here in an amount that is fair, just and reasonable under the circumstances, plus whatever costs, interest and attorney fees to which he may be entitled to be determined by a jury.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants for an amount to be ascertained by the jury at the trial of this action for all damages, punitive and actual, for the cost and disbursements of this action, and both prejudgment and post judgment interest, and for such other and further relief, in law or in equity, as this court may deem just and proper.

Respectfully submitted,

**COBB DILL & HAMMETT, LLC**

BY _____

Ryan C. Andrews, S.C. Bar No.: 101104
Hal E. Cobb, S.C. Bar No.: 100575
222 W. Coleman Blvd. Building 2
Mt. Pleasant, SC 29464
(843) 936-6680 (office)
(843) 353-2488 (facsimile)
randrews@cdhlawfirm.com
hcobb@cdhlawfirm.com

**ATTORNEYS FOR THE PLAINTIFF**

Mt. Pleasant, South Carolina
_Dec. 7_____, 2018

IN THE STATE OF SOUTH CAROLINA  )          IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON                  )          FOR THE 9TH JUDICIAL CIRCUIT
                                                               CASE NO: 2018-CP-10-5824

Dawn Ledwell,

                                    Plaintiff,

              v.                                              **AMENDED SUMMONS**
                                                               **(Jury Trial Demanded)**
Thomas Ravenel; Haymaker Content LLC;
Bravo Media Productions, Inc.;
NBCUniversal Media, LLC; and Comcast
Corporation,

                                    Defendant.

**TO:     THE DEFENDANT(S) ABOVE NAMED:**

      **YOU ARE HEREBY SUMMONED** and required to Answer the Amended Complaint in

this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to

said Amended Complaint upon the Plaintiffs or their attorneys, Ryan C. Andrews and Hal E. Cobb,

at his office, 222 W. Coleman Blvd, Mt. Pleasant, SC 29464, within (30) days after the service

hereof, exclusive of the day of such service and if you fail to Answer the Amended Complaint

within the time aforesaid, Plaintiff will apply to the court for the relief demanded in the Complaint.

      Dated at Mt. Pleasant, South Carolina on the 25 day of February, 2019.


                              **COBB DILL & HAMMETT, LLC**


                              BY _____
                                    Ryan C. Andrews, S.C. Bar No.: 101104
                                    Hal E. Cobb, S.C. Bar No.:  100575
                                    222 W. Coleman Blvd.
                                    Mt. Pleasant, SC 29464
                                    (843) 936-6680 (office)
                                    (843) 279-3177 (facsimile)
                                    randrews@cdhlawfirm.com
                                    hcobb@cdhlawfirm.com


                              **ATTORNEYS FOR THE PLAINTIFFS**

IN THE STATE OF SOUTH CAROLINA )
COUNTY OF CHARLESTON )

Dawn Ledwell,

                            Plaintiff,

      v.

Thomas Ravenel; Haymaker Content LLC;
Bravo Media Productions, Inc.;
NBCUniversal Media, LLC; and Comcast
Corporation,

                          Defendants.

IN THE COURT OF COMMON PLEAS
FOR THE 9TH JUDICIAL CIRCUIT
CASE NO: 2018-CP-10-5824

**AMENDED COMPLAINT**
**(Jury Trial Demanded)**



The Plaintiff, complaining of the Defendants, alleges and says as follows:

## PARTIES, JURISDICTION, AND VENUE

1. That the Plaintiff, Dawn Ledwell, (herein referred to as "Plaintiff") is a citizen and resident of North Carolina.

2. That upon information and belief, Defendant Thomas Ravenel (herein referred to as "Defendant Ravenel") is a citizen and resident of Charleston County, State of South Carolina.

3. That upon information and belief, Defendant Haymaker Content, LLC (herein referred to as "Defendant Haymaker") is a limited liability company organized and existing under the laws of New York and responsible for the filming and production of the reality television show "Southern Charm." Defendant Haymaker can be served with process to its registered agent, Irad Eyal, 111 North Gardner Street, Los Angeles, California 90036.

4. That upon information and belief, Defendant Bravo Media Productions, LLC (herein referred to as "Defendant Bravo") is a limited liability company organized and existing under the laws of New York and responsible for the filming and production of the reality television show "Southern Charm." Defendant Bravo can be served with process to its registered agent, Tracy Donovan, 145 W. 28th Street, 2nd Floor, New York, New York

1

10001.

5. That upon information and belief, Defendant NBCUniversal Media, LLC (herein referred to as "Defendant NBC") is a limited liability company organized and existing under the laws of Delaware and can be served with process to its registered agent, Enterprise Corporate Services, LLC, 1201 N. Market Street, Suite 1000, Wilmington, Delaware 19801.

6. That upon information and belief, Defendant Comcast Corporation (herein referred to as "Defendant Comcast"; Defendants Comcast, NBC, Haymaker, and Bravo are all herein collectively referred to as "Corporate Defendants") is a corporation organized and existing under the laws of Pennsylvania, and can be served with process to its registered agent, Corporation System, 111 Eighth Avenue, New York, New York 10011.

7. That upon information and belief, Corporate Defendants transact business in the State of South Carolina, contract to supply services in the State of South Carolina, and have entered into contracts to be performed in whole or in part in the State of South Carolina through their respective association with the reality television show "Southern Charm," the filming of which is based predominantly in Charleston, South Carolina.

8. That the careless and reckless actions and subsequent injuries that are the subject of this action occurred in Charleston County, State of South Carolina.

9. That this Court has jurisdiction over the parties.

**FACTUAL BACKGROUND**

10. That Corporate Defendants direct, film, air, and/or otherwise produce the reality television show "Southern Charm."

11. That "Southern Charm" is a reality television show based in Charleston, South Carolina and upon information and belief, has been airing on national and worldwide television

2

since March of 2014.

12. That upon information and belief, Defendants Haymaker and Bravo were the production companies behind the reality television show "Southern Charm" that airs on a television network owned by Defendant Bravo, a subsidiary of Defendant NBC.

13. That upon information and belief, Defendant NBC is Defendant Comcast's media, content, and entertainment arm, and is a wholly owned subsidiary of Defendant Comcast.

14. That Defendant Ravenel has been a central main cast member of "Southern Charm" since its inception.

15. That Defendant Ravenel has contracted and otherwise been employed by Corporate Defendants since the inception of "Southern Charm."

16. That upon information and belief, Corporate Defendants have permitted and encouraged "Southern Charm" to be promoted as a show that "goes behind the walls of Charleston, South Carolina's most aristocratic families to reveal a world of exclusivity, money and scandal that goes back generations,"[1] as well as a show that "reveals a world of exclusivity, money and scandal dating back through generations of families in Charleston, S.C."[2]

17. That upon information and belief, Corporate Defendants have created, permitted, and encouraged "Southern Charm" plot lines that focus on alcohol, sexual encounters, immoral behavior, and the concept that the male cast members, including Defendant Ravenel, suffer from "Peter Pan Syndrome" and that they are the "Lost Boys" with Charleston, South Carolina as their "Neverland."

18. That upon information and belief, Corporate Defendants have careless and recklessly permitted and encouraged the consumption of alcohol during production of "Southern Charm" and Corporate Defendants have carelessly and recklessly made alcohol available

---

[1]     https://www.amazon.com/gp/product/B00JZSG55M
[2]     www.afterbuzztv.com/southern-charm

3

for consumption during filming.

19. That upon information and belief, Corporate Defendants have cast members and anyone who appears on "Southern Charm" to agree that "Southern Charm" may reveal private and inflammatory information about those cast members and anyone who appears on the same.

20. That upon information and belief, Corporate Defendants have cast members and anyone who appears on "Southern Charm" to agree to inform Corporate Defendants should they feel threatened by any other individual connected to the same without fear of retribution.

21. That upon information and belief, Defendant Ravenel, has owned and/or leased property and resided at 29 ½ Charlotte St. Charleston, SC 29403 (herein referred to as "Defendant Ravenel's Residence) during the time of production of "Southern Charm."

22. That Plaintiff provided nannying services for Defendant Ravenel's minor children, whose births were chronicled on "Southern Charm."

23. That upon information and belief, Kathryn Dennis is the mother of Defendant Ravenel's children.

24. That Kathryn Dennis is also a cast member of "Southern Charm."

25. That upon information and belief, Defendant Ravenel and Kathryn Dennis had a contractual relationship with Corporate Defendants to appear as paid cast members on the reality television show "Southern Charm."

26. That upon information and belief, Defendant Ravenel resided with his minor children at Defendant Ravenel's Residence.

27. That upon information and belief, Plaintiff cared for Defendant Ravenel's minor children for approximately 3 years.

28. That "Southern Charm" would air, tape, and record video footage of Plaintiff while Plaintiff was working for Defendant Ravenel.

29. That Plaintiff made various appearances on "Southern Charm" in her role as a nanny for Defendant Ravenel.

30. That Plaintiff appeared on "Southern Charm" incidental to the services she provided to Defendant Ravenel and/or at the request of Corporate Defendants.

31. That upon information and belief, Defendant Haymaker paid Plaintiff for a portion of her nanny services provided to the Ravenel family during production of "Southern Charm."

32. That in or about January 2015, Defendant Ravenel was residing at Defendant Ravenel's Residence with his minor daughter.

33. That on or about an evening in January 2015, Plaintiff was working for Defendant Ravenel and/or Corporate Defendants at Defendant Ravenel's Residence, while Defendant Ravenel went out for the evening.

34. That at the on or about January 2015, Defendant Ravenel had only one minor child in which Plaintiff was watching.

35. That in or about January 2015, upon Defendant Ravenel's return to Defendant Ravenel's Residence, Plaintiff was the victim of an unwanted careless and reckless physical act at the hands of an intoxicated Defendant Ravenel.

36. That Defendant Ravenel did carelessly and recklessly attempt to remove and rip away Plaintiff's clothing.

37. That Plaintiff was ultimately able to rebuff Defendant Ravenel's careless and reckless attempts and removed herself from Defendant's Residence.

38. That Plaintiff departed Defendant Ravenel's Residence and immediately notified others of Defendant Ravenel's aforementioned careless and reckless conduct.

39. That Plaintiff was shocked, scared, humiliated, and otherwise injured due to the careless and reckless conduct of Defendant Ravenel.

5

40. That Corporate Defendants knew or should have known of Defendant Ravenel's propensity to engage in careless and reckless conduct and failed to take appropriate steps to prevent and/or warn of the same.

41. That in or about December 2015, Plaintiff notified and informed Chaz Morgan, an employee and/or agent and/or servant of Corporate Defendants, of the aforementioned incident involving Defendant Ravenel.

42. That at all times material to the incidents made as the basis of this action, Chaz Morgan was acting by and through his employer Corporate Defendants as an employee/agent/servant of Corporate Defendants, and was at all times material acting within the course and scope of his employment or agency in performing duties for, and on behalf of Corporate Defendants.

43. That at all times material to the incidents made as the basis of this action, upon information and belief Chaz Morgan was a Producer and/or Production Manager for Corporate Defendants.

44. That upon information and belief, Chaz Morgan's job duties for Corporate Defendants entailed receiving, investigating, and reporting complaints of harassment, threats, and otherwise careless and reckless behavior exhibited by individuals connected with "Southern Charm," such as the aforementioned careless and reckless acts of Defendant Ravenel.

45. That upon information and belief, Chaz Morgan and Corporate Defendants represented to individuals that should those individuals report harassing, threatening, and otherwise careless and reckless behavior exhibited by individuals connected with "Southern Charm," such as the aforementioned careless and reckless acts of Defendant Ravenel, those individuals would not be penalized or retaliated against by Chaz Morgan, Corporate

6

Defendants, and other employees/agents/servants of Corporate Defendants.

46. That upon information and belief, Corporate Defendants, by and through their employee/agent/servant Chaz Morgan and other employees/agents/servants, failed to investigate Plaintiff's allegations against Defendant Ravenel when they were first made aware of these allegations.

47. That upon information and belief, Chaz Morgan reported Defendant Ravenel's careless and reckless actions to executives for Defendant Haymaker, and the co-founder of Defendant Haymaker and executive producer of "Southern Charm," Aaron Rothman; however, upon information and belief, Aaron Rothman failed to investigate and/or report the careless and reckless actions.

48. That upon information and belief, continuing now and since the date of the aforementioned incident involving Defendant Ravenel's careless and reckless acts, Defendant Ravenel has made careless and reckless misrepresentations and mischaracterizations to Kathryn Dennis and others regarding Plaintiff, including that severe negative consequences would befall the livelihoods of anyone that would purport to help Plaintiff and made such threats to the Plaintiff herself.

49. That upon information and belief, Corporate Defendants instructed cast members of "Southern Charm" and other employees/agents/servants of Corporate Defendants to not speak with anyone regarding the aforementioned incident as described above and carelessly and recklessly failed to investigate the same and take appropriate actions out of fear that such careless and reckless acts by its cast members could damage the profitability of "Southern Charm."

50. That upon information and belief, Corporate Defendants, by and through their employee/agent/servant Chaz Morgan and other employees/agents/servants, have made

false, defamatory misrepresentations to others regarding the aforementioned incident involving Plaintiff and Defendant Ravenel and have carelessly and recklessly failed to initially investigate properly and take appropriate actions regarding the same.

51. That upon information and belief, Corporate Defendants and Defendant Ravenel have profited greatly from "Southern Charm."

52. That upon information and belief, it was a custom and practice of Corporate Defendants, whether written or otherwise, to fail to investigate allegations of careless and reckless acts committed by Defendant Ravenel and other employees/agents/servants of Corporate Defendants and/or Corporate Defendants were willfully ignorant to the same.

53. That upon information and belief, two or more Defendants have carelessly and recklessly conspired with one another to fail to initially investigate properly allegations of careless and reckless acts committed by Defendant Ravenel and to take appropriate actions regarding the same.

54. That upon information and belief, Corporate Defendants did not begin properly investigating the aforementioned incident involving Plaintiff and Defendant Ravenel as described above until Plaintiff's allegations against Defendant Ravenel were made public on or around May 4, 2018.

55. That upon information and belief, Corporate Defendants are currently filming, or have completed filming, the sixth season of "Southern Charm" and preparing to include episodes discussing Defendant Ravenel's careless and reckless actions, including but not limited to, the incident involving Plaintiff and himself as described above.

56. That upon information and belief, Defendant Ravenel carelessly and recklessly harmed another female, in and around December 2015, and did so after Plaintiff disclosed the incident involving her and Defendant Ravenel as described above to Corporate Defendants

and Kathryn Dennis.

57. That upon information and belief, Defendant Ravenel paid the other female a monetary settlement under a non-disclosure agreement following participation in a mediation in and around June 2016.

58. That upon information and belief, Corporate Defendants knew or should have known of the various careless and reckless actions perpetrated by Defendant Ravenel.

59. That upon information and belief, Corporate Defendants carelessly and recklessly failed to appropriately investigate various allegations of careless and reckless actions perpetrated by its employee/agent/servant, Defendant Ravenel, and instead carelessly and recklessly continued to create, permit, and encourage plot lines focusing on Defendant Ravenel's romantic and sexual interactions with women.

60. That upon information and belief, Corporate Defendants have not contacted Plaintiff since the public disclosure of the allegations of Defendant Ravenel's careless and reckless actions as described above in and around May 4, 2018, despite Corporate Defendants' publicly claiming in and around May 4, 2018 that "Haymaker, the production company for Southern Charm, and Bravo take allegations like these very seriously. Haymaker is conducting an investigation, and once all the information is gathered and carefully reviewed, appropriate action will be taken."[3]

61. That Defendant Ravenel was arrested and criminally charged in regards to the aforementioned incident involving the Plaintiff.

62. That as a result of Corporate Defendants' and Defendant Ravenel's careless and reckless acts, as more fully described above, Plaintiff has suffered bodily injuries, been hurt, embarrassed, humiliated and otherwise damaged.

---

[3] https://www.fitsnews.com/2018/05/04/bravo-tv-breaks-its-silence-on-thomas-ravenel-allegations/

63. That Corporate Defendants are vicariously liable, due to the negligence of their employees, agents and servants, as is set forth more fully above, for proximately causing injuries and/or damages to Plaintiff, under the doctrines of *respondeat superior, agency*, and/or *ostensible apparent agency*.

64. That all Defendants are jointly and severally liable for the injuries sustained by the Plaintiff.

## <u>FOR A FIRST CAUSE OF ACTION AS TO ALL DEFENDANTS</u>
### (Defamation)

65. Plaintiff restates and re-alleges every allegation set forth above as if stated herein verbatim.

66. That all Defendants did and continue to make false and defamatory statements regarding Plaintiff to third-parties as described above, which harmed the reputation of Plaintiff so as to lower her in the estimation of the community and/or to deter third persons from associating or dealing with her.

67. That upon information and belief, the Defendants' false and defamatory statements regarding Plaintiff to third parties were defamatory *per se* as the comments were clear, obvious, and susceptible of only being defamatory.

68. That upon information and belief, the false and defamatory statements made by Defendants regarding Plaintiff to third-parties are actionable *per se*, as the statements are presumed injurious without proof of malice or special damages.

69. That to the extent that Defendants claim truth as a defense, the burden is on the Defendants to prove the defamatory statements are true.

70. That all Defendants were carelessly and recklessly at fault for the publication of these false and defamatory misrepresentations about Plaintiff, and Defendants made these statements with actual and/or implied malice.

71. That Defendants were careless and reckless for the publication of these false and defamatory statements about Plaintiff and published these false and defamatory statements without consideration of the truth and consequences of the same.

72. That Plaintiff suffered actual, special, and consequential damages, including but not limited to embarrassment, humiliation, mental suffering, and bodily injuries, as a result of the publication of these false and defamatory statements made by Defendants.

73. That Plaintiff suffered general damages, including but not limited to injury to her reputation, mental suffering and hurt feelings.

74. That the Plaintiff is entitled to an award of damages against all Defendants in the amount of actual damages, consequential damages, punitive damages, attorney's fees, costs of this action, and other damages or remedies available pursuant to existing law, and which a jury deems appropriate and just.

**FOR A SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS**
**(Negligence/Gross Negligence/Negligence *Per Se*)**

75. Plaintiff restates and re-alleges every allegation set forth above as if stated herein verbatim.

76. That Defendants owe a duty to the public at large, and a heightened duty to the Plaintiff, to take reasonable precautions to avoid creating or encouraging any conditions which would put the public in unreasonable danger where the same could be reasonably avoided.

77. That Corporate Defendants knew or should have known of Defendant Ravenel's careless and reckless propensities and irresponsible alcohol consumption.

78. That Corporate Defendants had a duty and undertook the same to investigate, report, and not retaliate against persons who inform Corporate Defendants that they feel harassed by, threatened by, or uncomfortable with the behavior of any individuals connected with the production of "Southern Charm" at any time.

11

79. That Defendants did breach these duties and that the bodily injuries, harms and losses suffered by Plaintiff as alleged in this Complaint were caused directly and proximately by one or more of the following negligent, grossly negligent, careless, reckless, willful, wanton, and unlawful acts and/or omissions of the Defendants in any one or more of the following respects:

As to Corporate Defendants:

    a.  In each and every instance, act, and/or omission heretofore alleged in this Complaint;

    b.  In carelessly and recklessly misrepresenting facts to others, including but not limited to, facts mispresented to Plaintiff and facts misrepresented about Plaintiff;

    c.  In the careless and reckless hiring of employees/agents/servants, including but not limited to Defendant Ravenel and Chaz Morgan;

    d.  In the careless and reckless training of employees/agents/servants, including but not limited to Defendant Ravenel and Chaz Morgan;

    e.  In the careless and reckless supervision of employees/agents/servants, including but not limited to Defendant Ravenel and Chaz Morgan;

    f.  In carelessly and recklessly permitting Defendant Ravenel and Chaz Morgan to remain in their employment;

    g.  In failing to properly vet, research, and ascertain persons appearing and/or working on Corporate Defendants' reality television show;

    h.  In carelessly and recklessly making factually inaccurate statements about the Plaintiff with a reckless disregard of the truth;

i.  In carelessly and recklessly encouraging an atmosphere of overconsumption of alcohol and permitting and allowing to exist the natural and probable consequences of the same;

j.  In carelessly and recklessly violating the applicable standards of care owed to persons appearing on Corporate Defendants' reality television show;

k.  In failing to warn Plaintiff of the propensities of their employees/agents/servants;

l.  In failing to provide adequate security to Plaintiff and other persons appearing on Corporate Defendants' television show;

m. In carelessly and recklessly failing to investigate, report, and not retaliate against persons who inform Corporate Defendants that they feel harassed by, threatened by, or uncomfortable with the behavior of any individuals connected with the production of Corporate Defendants' reality television show;

n.  In each Corporate Defendant violating their individual internal policies and procedures as well as violating the internal policies and procedures of the other Corporate Defendants;

o.  In any other acts or omissions which constitute a violation of the statutes and/or regulations of this state or the United States; and

p.  In any other manner Plaintiff may discover during the course of this action.

As to Defendant Ravenel:

a.  In each and every instance, act, and/or omission heretofore alleged in this Complaint;

b.  In carelessly and recklessly creating a condition of danger;

c.  In carelessly and recklessly making factually inaccurate statements about the Plaintiff with a reckless disregard of the truth;

13

d.  In carelessly and recklessly encouraging an atmosphere of overconsumption of alcohol and sexual deviancy;

e.  In carelessly and recklessly misrepresenting facts to others;

f.  In carelessly and recklessly approaching the Plaintiff in violation of numerous state and federal laws;

g.  In any other acts or omissions which constitute a violation of the statutes and/or regulations of this state or the United States; and

h.  In any other manner Plaintiffs may discover during the course of this action.

80. That as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness, wantonness, and acts and/or omissions of the Defendants, as is set forth more fully above, Plaintiff has suffered bodily injuries, has endured pain and suffering, has suffered mentally and emotionally, and has incurred, and will incur various medical expenses, and has otherwise been damaged and injured.

81. That because of the Defendants' acts and omission and the proximate harm resulting to Plaintiff, Plaintiff should be awarded punitive damages in an amount to be determined by the trier of fact, in order to punish and penalize the Defendants and to deter the Defendants and others from similar behavior.

82. That upon information and belief, Plaintiff is entitled to judgment against the Defendants for actual, compensatory and exemplary or punitive damages for her personal injuries set forth here in an amount that is fair, just and reasonable under the circumstances, plus whatever costs, interest and attorney fees to which he may be entitled to be determined by a jury.

## FOR A THIRD CAUSE OF ACTION AS TO CORPORATE DEFENDANTS
### (Unfair Trade Practices Act Violation)

83. Plaintiff restates and re-alleges every allegation set forth above as if stated herein verbatim.

14

84. That Corporate Defendants were engaged in commerce as defined by the South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-10 *et seq.* (herein referred to as "UTPA").

85. That Corporate Defendants carelessly and recklessly misrepresented facts to others including but not limited to, facts mispresented to Plaintiff and facts misrepresented about Plaintiff.

86. That Corporate Defendants failed to properly vet, research, and ascertain persons appearing and/or working on Corporate Defendants' reality television show.

87. That Corporate Defendants carelessly and recklessly made factually inaccurate statements about the Plaintiff with a reckless disregard of the truth.

88. That Corporate Defendants carelessly and recklessly encouraged an atmosphere of overconsumption of alcohol and permitting and allowing to exist the natural and probable consequences of the same.

89. That Corporate Defendants carelessly and recklessly failed to investigate, report, and not retaliate against persons who inform Corporate Defendant that they feel harassed by, threatened by, or uncomfortable with the behavior of any individuals connected with the production of Corporate Defendants' reality television show.

90. That each Corporate Defendant violated their individual internal policies and procedures as well violated the internal policies and procedures of the other Corporate Defendants.

91. That the aforementioned acts and practices committed by the Corporate Defendants were done for the purpose of preserving and increasing the profitability of the Corporate Defendants' reality television show and television networks.

92. That the aforementioned acts and practices of the Corporate Defendants are unfair and deceptive.

93. That the aforementioned acts and practices of the Corporate Defendants offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to the public.

94. That the aforementioned acts and practices of the Corporate Defendants are against the public interest and these acts and practices are capable of repetition.

95. That the Corporate Defendants' actions were willful or knowing in that the Corporate Defendants knew or should have known that their conduct was unfair and deceptive and, therefore, a violation of the UTPA.

96. That a person of ordinary prudence engaged in trade or commerce, in the exercise of due diligence, would have ascertained the conduct in question by Corporate Defendants violated the UTPA.

97. That as a result of Corporate Defendants' UTPA violation, Plaintiff has incurred actual, consequential, and incidental damages, and has otherwise been aggravated, inconvenienced and embarrassed by the events which have transpired.

98. That Plaintiff has had to hire an attorney to represent her in this matter.

99. That in addition to Plaintiff's actual damages as a result of Corporate Defendants' UTPA violation, the Plaintiff is entitled to treble damages, together with reasonable attorney's fees and costs disbursements of this action.

100. That upon information and belief, Plaintiff is entitled to judgment against the Corporate Defendants for actual, treble, compensatory and exemplary or punitive damages for her personal injuries set forth here in an amount that is fair, just and reasonable under the circumstances, plus whatever costs, interest and attorney fees to which he may be entitled to be determined by a jury.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants for an amount to

16

be ascertained by the jury at the trial of this action for all damages, punitive, actual, and treble, for

the cost and disbursements of this action, and both prejudgment and post judgment interest, and

for such other and further relief, in law or in equity, as this court may deem just and proper.

Respectfully submitted,

**COBB DILL & HAMMETT, LLC**

BY

Ryan C. Andrews, S.C. Bar No.: 101104
Hal E. Cobb, S.C. Bar No.: 100575
222 W. Coleman Blvd. Building 2
Mt. Pleasant, SC 29464
(843) 936-6680 (office)
(843) 279-3177 (facsimile)
randrews@cdhlawfirm.com
hcobb@cdhlawfirm.com

**ATTORNEYS FOR THE PLAINTIFF**

Mt. Pleasant, South Carolina
February 25, 2019



**CD** COBB DILL &
**&H** HAMMETT, LLC

222 WEST COLEMAN BLVD.
MT. PLEASANT, SC 29464
843-936-6680 (P)
843-279-3177 (F)

Ryan C. Andrews, Partner (SC)
Hal E. Cobb, Partner (SC/CO)
Michael H. Dill, Partner (SC)
William S. Hammett III, Partner (SC/GA)

Stefanie L. Huffer, Associate (SC)
Bryan A. Raymond, Associate (SC)
Stephanie M. Richards, Associate (SC)

Sean A. Scapellato, Partner (SC)
David F. Shymansky Jr., Associate (SC/MD)
Jeffrey A. Slocum Jr., Associate (SC)

February 25, 2019

**SENT VIA HAND DELIVERY:**
Charleston County Clerk of Court
100 Broad Street, Suite 106
Charleston, SC 29401

RE:        *Dawn Ledwell v. Thomas Ravenel et al.*
           Case No.:  2018-CP-10-5824

Dear Sir or Madam,

Enclosed please find the original and five (5) copies of the Amended Summons and Complaint regarding the above-referenced case. We would appreciate you filing the original and returning clocked copies in the same envelope via bullet hand delivery.

Thank you very much for your assistane with this matter, and should you have any questions, please do not hesitate to contact my office.

Sincerely,

Kelsey A. McCawley
*Law Clerk for Ryan C. Andrews, Esq.*
Enclosures

# AFFIDAVIT OF SERVICE

State of South Carolina                    County of Charleston                    Common Pleas Court

Case Number: 2018-CP-10-5824

Plaintiff:
**Dawn Ledwell**
vs.
Defendants:
**Thomas Ravenel; Haymaker Content LLC; et al.**

For: Cobb Dill Hammett, LLC

Received by FALCON EXPRESS SERVICES, LLC to be served on **Bravo Media LLC CT Corporation System, Registered Agent, 28 Liberty St., New York, NY 10005.** I, _Ricardo Beloret_, being duly sworn, depose and say that on the _15_ day of _March_, 20_19_ at _12:15_ _m._, executed service by delivering a true copy of the **LETTER, AMENDED SUMMONS, AMENDED COMPLAINT, PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT BRAVO MEDIA PRODUCTIONS, INC., PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT BRAVO MEDIA PRODUCTIONS, INC. and PLAINTIFF'S STANDARD AND FIRST SUPPLEMENTAL INTERROGATORIES TO DEFENDANT BRAVO MEDIA PRODUCTIONS, INC.** in accordance with state statutes in the manner marked below:

(X) CORPORATE SERVICE: By serving _Maria Velasco_ as _Process Specialist_

( ) GOVERNMENT AGENCY: By serving _____ as _____
of the within named agency.

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: _____
_____
_____
_____

Age _38_ Sex M/(F) Race _Hispan_ Height _5'8"_ Weight _170_ Hair _Blnd_ Glasses (Y)/N

Is the place of service the dwelling house or usual place of abode for the party being served? ( ) Yes (X) No

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the _19_ day
of _March_, _2019_ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC
My Commission Expires: _6/29/22_

_____
PROCESS SERVER # _2067114_
Appointed in accordance with State Statutes

**FALCON EXPRESS SERVICES, LLC**
P.O. Box 874
Charleston, SC 29402-0874
(843) 577-9696

Our Job Serial Number: 2019000849

EVAN COHAN
NOTARY PUBLIC & ATTORNEY AT LAW
NO. 02CO4998577
QUALIFIED IN ROCKLAND COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 29, 2022

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.0g

## AFFIDAVIT OF SERVICE

State of South Carolina                    County of Charleston                    Common Pleas Court

Case Number: 2018-CP-10-5824

Plaintiff:
**Dawn Ledwell**
vs.
Defendants:
**Thomas Ravenel; Haymaker Content LLC; et al.**

For: Cobb Dill Hammett, LLC

Received by FALCON EXPRESS SERVICES, LLC to be served on **Haymaker Content LLC c/o Irad Eyal, Registered Agent, 111 North Gardner Street, Los Angeles, CA 90036-2719.** I, CHRIS HUTCHINSON, being duly sworn, depose and say that on the ___12___ day of ___March___, 2019 at _1_:_20_ p.m., executed service by delivering a true copy of the **LETTER, AMENDED SUMMONS, AMENDED COMPLAINT, PLAINTIFF'S STANDARD AND FIRST SET OF SUPPLEMENTAL INTERROGATORIES TO DEFENDANT HAYMAKER CONTENT LLC, PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANT HAYMAKER CONTENT LLC, and PLAINTIFF'S FIRST REQUESTS FOR ADMISSION TO DEFENDANT HAYMAKER CONTENT LLC** in accordance with state statutes in the manner marked below:

(x) CORPORATE SERVICE: By serving ___Irad Eyal___ as ___agent___

( ) GOVERNMENT AGENCY: By serving _____ as _____
of the within named agency.

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: _____
_____
_____
_____

Age _45_  Sex M **F**  Race _Cauc._  Height _6'_  Weight _180_  Hair _black_  Glasses **Y** (N)
                                                                            beard
Is the place of service the dwelling house or usual place of abode for the party being served? (x) Yes  ( ) No

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

_C. Hutchinson (signature)_

Subscribed and Sworn to before me on the _13_ day
of ___March___, _2019_ by the affiant who is
personally known to me.

_Christine Cardaropoli (signature)_
NOTARY PUBLIC
My Commission Expires: ___June 5 2022___

PROCESS SERVER # ___355 LA Co.___
Appointed in accordance with State Statutes

**FALCON EXPRESS SERVICES, LLC**
**P.O. Box 874**
**Charleston, SC 29402-0874**
**(843) 577-9696**

Our Job Serial Number: 2019000798



CHRISTINE CARDAROPOLI
Notary Public - California
Los Angeles County
Commission # 2241593
My Comm. Expires Jun 5, 2022

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.0g

FILED
2019 MAR 29 PM 4: 08
JULIE J. ARMSTRONG
CLERK OF COURT
BY

**AFFIDAVIT OF SERVICE**

State of South Carolina                    County of Charleston

Case Number: 2018-CP-10-5824

Plaintiff:
**Dawn Ledwell**
vs.
Defendants:
**Thomas Ravenel; Haymaker Content LLC; et al.**

For: Cobb Dill Hammett, LLC

Received by FALCON EXPRESS SERVICES, LLC to be served on ~~Comcast Corporation c/o CT Corporation,~~ **Registered Agent, 28 Liberty Street, New York, NY, 10005**. I, _Jashua Lee_, being duly sworn, depose and say that on the _12_ day of _Morn_, 20_18_ at _1:32_ m., executed service by delivering a true copy of the **LETTER, AMENDED SUMMONS, AMENDED COMPLAINT, PLAINTIFF'S STANDARD AND FIRST SET OF SUPPLEMENTAL INTERROGATORIES TO DEFENDANT COMCAST CORPORATION, PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANT COMCAST CORPORATION, and PLAINTIFF'S FIRST REQUESTS FOR ADMISSION TO DEFENDANT COMCAST CORPORATION** in accordance with state statutes in the manner marked below:

( ) CORPORATE SERVICE: By serving _Sattie Jaicam_ as _Process Specialist_

( ) GOVERNMENT AGENCY: By serving _____ as _____
of the within named agency.

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: _____
_____
_____
_____

Age _50_  Sex M/_F_  Race _Indin_  Height _5'7"_  Weight _150_  Hair _Blk/long_  Glasses Y/_N_

Is the place of service the dwelling house or usual place of abode for the party being served? ( ) Yes  ( ) No

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the _12_ day of _Morn_, _20__ by the affiant who is personally known to me.

_____
NOTARY PUBLIC
My Commission Expires: _6/2q/22_

PROCESS SERVER # _2060646_
Appointed in accordance with State Statutes

**FALCON EXPRESS SERVICES, LLC**
**P.O. Box 874**
**Charleston, SC 29402-0874**
**(843) 577-9696**

Our Job Serial Number: 2019000801

EVAN COHAN
NOTARY PUBLIC & ATTORNEY AT LAW
NO. 02CO4998577
QUALIFIED IN ROCKLAND COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 29, 2022

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.0g

## AFFIDAVIT OF SERVICE

State of South Carolina                County of Charleston                **Common Pleas Court**

Case Number: 2018-CP-10-5824

Plaintiff:
**Dawn Ledwell**
vs.
Defendants:
**Thomas Ravenel; Haymaker Content LLC; et al.**

For: Cobb Dill Hammett, LLC

Received by FALCON EXPRESS SERVICES, LLC to be served on **NBCUniversal Media, LLC c/o CT Corporation, Registered Agent, 111 Eighth Avenue, New York, NY 10011.** I, _Joshua Lee_ being duly sworn, depose and say that on the _12_ day of _March_, 20_19_ at _1:07_ pm., executed service by delivering a true copy of the **LETTER, AMENDED SUMMONS, AMENDED COMPLAINT, PLAINTIFF'S STANDARD AND FIRST SET OF SUPPLEMENTAL INTERROGATORIES TO DEFENDANT NBCUNIVERSAL MEDIA, LLC, PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANT NBCUNIVERSAL MEDIA, LLC, and PLAINTIFF'S FIRST REQUESTS FOR ADMISSION TO DEFENDANT NBCUNIVERSAL MEDIA, LLC** in accordance with state statutes in the manner marked below:

(X) CORPORATE SERVICE: By serving _Suttie Jillson_ as _Process Specialist_

( ) GOVERNMENT AGENCY: By serving _____ as _____
of the within named agency.

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: _____
_____
_____
_____

Age _50_ Sex _M/F_ Race _Indian_ Height _5'7"_ Weight _150_ Hair _Blk/Gry_ Glasses _Y/N_

Is the place of service the dwelling house or usual place of abode for the party being served? ( ) Yes  ( ) No

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the _12_ day
of _March_, 20_19_ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC
My Commission Expires: _6/29/22_

PROCESS SERVER # _2060694_
Appointed in accordance with State Statutes

**FALCON EXPRESS SERVICES, LLC**
P.O. Box 874
Charleston, SC 29402-0874
**(843) 577-9696**

Our Job Serial Number: 2019000802

EVAN COHAN
NOTARY PUBLIC & ATTORNEY AT LAW
NO. 02CO4998577
QUALIFIED IN ROCKLAND COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 29, 2022

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.0g



COBB DILL & HAMMETT, LLC

222 WEST COLEMAN BLVD.
MT. PLEASANT, SC 29464
843-936-6680 (P)
843-279-3177 (F)

Ryan C. Andrews, Partner (SC)
Hal E. Cobb, Partner (SC/CO)
Michael H. Dill, Partner (SC)
William S. Hammett III, Partner (SC/GA)

Stefanie L. Huffer, Associate (SC)
Bryan A. Raymond, Associate (SC)
Stephanie M. Richards, Associate (SC)

Sean A. Scapellato, Partner (SC)
David F. Shymansky Jr., Associate (SC/MD)
Jeffrey A. Slocum Jr., Associate (SC)

March 28, 2019

**SENT VIA HAND DELIVERY:**
Charleston County Court of Common Pleas
Attn: Clerk of Court
100 Broad Street, Suite 106
Charleston, SC 29401

RE:     *Dawn Ledwell v. Thomas Ravenel et al.*
        *Case No.: 2018-CP-10-5824*

Dear Sir or Madam,

Enclosed please find the original and two (2) copies of the Affidavit of Service for Defendant
Bravo Media LLC, the original and two (2) copies of the Affidavit of Service for Defendant
Haymaker Content LLC, the original and two (2) copies of the Affidavit of Service for
Defendant Comcast Corporation, and the original and two (2) copies of the Affidavit of Service
for NBCUniversal Media, LLC regarding the above-referenced case. We would appreciate you
filing the originals and returning clocked copies in the same envelope via bullet delivery.

Thank you for your assistance with this matter. If you should have any questions or concerns,
please do not hesitate to contact our office.

Sincerely,

Kelsey A. McCawley
*Law Clerk for Ryan C. Andrews, Esq.*
Enclosures

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| | ) | |
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| Dawn Ledwell | ) | MOTION AND ORDER INFORMATION FORM |
| | ) | AND COVER SHEET |
| Plaintiff(s) | ) | |
| | ) | C/A No: 2018-CP-10-5824 |
| vs. | ) | |
| | ) | |
| Thomas Ravenel; Haymaker Content, LLC; Bravo | ) | |
| Media Production, Inc.; NBC Universal Media, LLC; | | |
| and Comcast Corporation | | |
| Defendant(s) | ) | |

| Plaintiff's Attorney: | Defendant's Attorney: |
|---|---|
| Ryan C. Andrews, Esquire Bar No. | James D. Smith, Jr. Bar No. 16179 |
| Address: | Address: McAngus, Goudelock & Courie, LLC |
| 222 W. Coleman Boulevard, Suite 106 | Post Office Box 650007 |
| Mt. Pleasant, South Carolina 29464 | 735 Johnnie Dodds Blvd., Suite 200 (29464) |
| phone: (843) 732-1516 fax: (843) 353-2583 | Mt. Pleasant, South Carolina 29465 |
| e-mail: randrews@cdhlawfirm.com other: | Phone (843) 576-2900 Fax: (843) 534-0605 |
| | e-mail: jsmith@mgclaw.com other: |

☒ **MOTION HEARING REQUESTED (attach written motion and complete SECTIONS I and III)**
☐ **FORM MOTION, NO HEARING REQUESTED (complete SECTIONS II and III)**
☐ **PROPOSED ORDER/CONSENT ORDER (complete SECTIONS II and III)**

### SECTION I: Hearing Information

Nature of Motion: Motion to Dismiss
Estimated Time Needed: 30 mins  Court Reporter Needed: ☒ YES / ☐ NO

### SECTION II: Motion/Order Type

☒ Written motion attached
☐ Form Motion/Order
I hereby move for relief or action by the court as set forth in the attached proposed order.

_____        May 13, 2019
Signature of Attorney for ☐ Plaintiff / ☒ Defendant        Date submitted

### SECTION III: Motion Fee

☒ PAID – AMOUNT: $25.00
☐ EXEMPT:        ☐ Rule to Show Cause in Child or Spousal Support
(check reason)    ☐ Domestic Abuse or Abuse and Neglect
        ☐ Indigent Status    ☐ State Agency v. Indigent Party
        ☐ Sexually Violent Predator Act    ☐ Post-Conviction Relief
        ☐ Motion for Stay in Bankruptcy
        ☐ Motion for Publication    ☐ Motion for Execution (Rule 69, SCRCP)
        ☐ Proposed order submitted at request of the court; or,
        reduced to writing from motion made in open court per judge's instructions
        Name of Court Reporter:
        ☐ Other:

| JUDGE'S SECTION | |
|---|---|
| ☐ Motion Fee to be paid upon filing of the attached order. | |
| ☐ Other: | _____ |
| | JUDGE |
| | |
| | CODE: _____ Date: _____ |

### CLERK'S VERIFICATION

Date Filed:

Collected by: _____

☐ MOTION FEE COLLECTED: _____
☐ CONTESTED – AMOUNT DUE: _____

STATE OF SOUTH CAROLINA          )
                                 )     IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON             )
                                 )
DAWN LEDWELL,                    )     Civil Action No. 2018-CP-10-5824
                                 )
          Plaintiff,             )
                                 )
     vs.                         )     **MOTION TO DISMISS PLAINTIFF'S**
                                 )     **AMENDED COMPLAINT**
THOMAS RAVENEL; HAYMAKER         )
CONTENT, LLC; BRAVO MEDIA        )
PRODUCTION, INC.; NBC UNIVERSAL  )
MEDIA, LLC; AND COMCAST          )
CORPORATION,                     )
                                 )
          Defendants.            )

YOU WILL PLEASE TAKE NOTICE that ten (10) days after service hereof, or as soon thereafter as counsel may be heard, Defendants Haymaker Media, Inc. (incorrectly designated in the Amended Complaint as "Haymaker Content, LLC"); Bravo Media Productions LLC (incorrectly designated in the Amended Complaint as "Bravo Media Productions, Inc."); NBCUniversal Media, LLC; and Comcast Corporation, by and through their undersigned attorneys, will move before the Presiding Judge of the Charleston County Court of Common Pleas for an Order dismissing them from the above-captioned action pursuant to Rule 12(b)(1) of the *South Carolina Rules of Civil Procedure* as the Court lacks subject matter jurisdiction over the asserted claims.

On September 13, 2014, and on September 15, 2015, Plaintiff Dawn Ledwell signed written agreements with Defendant Haymaker entitled "Appearance Release Form, Arbitration Provision and Voluntary Participation Agreement." The written agreement signed on September 13, 2014, is referenced as Exhibit 1, and the written agreement signed on

September 15, 2015, is referenced as Exhibit 2 (collectively, the "Agreements").[1]  Pursuant to both Exhibit 1 and Exhibit 2, Plaintiff agreed, on two separate occasions, to serve as an unpaid voluntary participant on the television program *Southern Charm*.  Pursuant to the terms of Exhibit 1 and Exhibit 2, defendants Comcast Corporation, Bravo Media Productions LLC, and NBCUniversal Media, LLC are also parties to the Agreements.  (Exhibits 1-4).

Plaintiff has alleged that she made appearances on Southern Charm at times as a nanny to Defendant Thomas Ravenel's children.  (Amended Complaint).  Plaintiff alleges in her Amended Complaint that she "was working for Defendant Ravenel and/or Corporate Defendants (Haymaker, Bravo, NBCUniversal, and Comcast) at his residence while Defendant Ravenel went out for the evening" in January 2015.  (Amended Complaint).  Plaintiff also alleges that she was only providing nanny services to one of Defendant Ravenel's children on that evening in January 2015.  (Amended Complaint).  Plaintiff alleges that she "was the victim of an unwanted careless and reckless physical act at the hands of an intoxicated Defendant Ravenel" that night when Defendant Ravenel returned to his residence.  (Amended Complaint).  Plaintiff further alleges in her Amended Complaint that Defendants Haymaker, NBCUniversal, Bravo, and Comcast were negligent and grossly negligent in numerous ways, including the following: (1) by violating applicable standards of care owed to persons appearing on *Southern Charm*, (2) in failing to warn Plaintiff of the purported propensities of their employees/agents/servants; and (3) in failing to provide adequate security to Plaintiff and other persons appearing on *Southern Charm*.

---

[1] These two written agreements contain confidential information that was not intended to be disclosed to third parties when executed.  As a result, Exhibits 1 and 2 will be provided to the Court for *in camera* review prior to the hearing.

Based on these allegations in the Amended Complaint, Plaintiff is clearly alleging that the "unwanted careless and reckless physical act at the hands of an intoxicated Defendant Ravenel" and these Defendants' actions before and after this alleged incident between Plaintiff and Defendant Ravenel occurred in connection with Plaintiff's participation on *Southern Charm*. As a result, the terms of Exhibit 1 and Exhibit 2 signed by Plaintiff apply to this lawsuit.

Paragraph 13 of Exhibit 1 entitled "Mediation & Arbitration" states as follows:

> [T]he parties agree that the controversy or claim, including the scope or applicability of this agreement to arbitrate, **shall be resolved by final and binding confidential arbitration**…all proceedings brought pursuant to this paragraph **will be conducted in The City of New York**. (emphasis added).

Paragraph 14 of Exhibit 1 states as follows:

> To the extent that the arbitration provisions of this Agreement are not enforced or court proceedings are otherwise required, commenced or maintained, the parties submit to ***in personam* jurisdiction of the Supreme Court of the State of New York located in the City of New York and the United States District Court for the Southern District of New York, and waive any objections that they may have as to jurisdiction or venue of any such courts**. (emphasis added).

Paragraph 22 of the Exhibit 2 entitled "Mediation & Arbitration" states as follows:

> **WHERE A CONTROVERSY, DISPUTE, OR CLAIM ARISES BETWEEN ME, ON THE ONE HAND, AND ONE OR MORE OF THE RELEASED PARTIES, ON THE OTHER HAND, IN CONNECTION WITH MY PARTICIPATION IN THE PROGRAM…SUCH DISPUTE SHALL BE RESOLVED BY WAY OF CONFIDENTIAL MEDIATION AND/OR ARBITRATION PURSUANT TO THE PROCEDURES OF JAMS…THE PARTIES TO ANY DISPUTE SHALL FIRST ENDEAVOR TO RESOLVE EACH DISPUTE THROUGH MEDIATION ADMINISTERED BY JAMS BEFORE COMMENCING ANY ARBITRATION. MEDIATION AND ARBITRATION SHALL BE CONDUCTED IN NEW YORK COUNTY.**

Paragraph 23 of Exhibit 2 entitled "Governing Law" states as follows:

> To the extent that the arbitration provisions of this Agreement are not enforced or court proceedings are otherwise required, commenced or maintained, the parties submit to the ***in personam jurisdiction*** of the **Supreme Court of the State of New York in New York County and the United States District Court for the Southern District of New York**. The **exclusive venue** of any court proceedings shall be the appropriate **state and federal courts in the State of New York**. The parties hereto waive any and all objections that they may have as to jurisdiction or venue in any of the above-referenced courts. (emphasis added).

Plaintiff voluntarily entered into Exhibit 1 and Exhibit 2 with these Defendants to serve as a participant on *Southern Charm* and has alleged that this lawsuit arises out of or results from her participation on the show. Exhibit 1 (executed prior to the alleged incident between Plaintiff and Defendant Ravenel) and Exhibit 2 (executed after the alleged incident between Plaintiff and Defendant Ravenel,) both require this lawsuit to be mediated, and if necessary, arbitrated in New York. Even if the arbitration provision is not binding, both executed Agreements further require exclusive venue in the appropriate New York state or federal court only. Under both Exhibits 1 and 2, Plaintiff has expressly waived her right to file this lawsuit in South Carolina state court.

Because Plaintiff agreed to arbitrate all claims in New York and agreed to exclusive jurisdiction of all court proceedings in the appropriate state and federal courts in New York, this Court lacks subject matter jurisdiction over the claims. Therefore, these Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiff's Amended Complaint.

This motion is based on the referenced exhibits and may be based on such memoranda in support or affidavits that may be served on counsel for the Plaintiff prior to the date of the hearing on this motion.

4

McANGUS GOUDELOCK & COURIE, LLC

James D. Smith, Jr.
Bar No: 16179
Amy Y. Jenkins
Bar No.: 12239
Danielle F. Payne
Bar No.:  73142
Post Office Box 650007
735 Johnnie Dodds Blvd, Suite 200 (29464)
Mt. Pleasant, South Carolina 29465
(843) 576-2900

ATTORNEYS FOR DEFENDANTS
HAYMAKER CONTENT, LLC; BRAVO
MEDIA PRODUCTION, INC.; NBC
UNIVERSAL MEDIA, LLC; AND COMCAST
CORPORATION

May *13*, 2019

5

STATE OF SOUTH CAROLINA )
)                                               IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON )

DAWN LEDWELL, )
)                                               Civil Action No. 2018-CP-10-5824
          Plaintiff, )
)
     vs. )                                      **AFFIDAVIT OF AARON ROTHMAN**
)
THOMAS RAVENEL; HAYMAKER )
CONTENT, LLC; BRAVO MEDIA )
PRODUCTION, INC.; NBC UNIVERSAL )
MEDIA, LLC; AND COMCAST )
CORPORATION, )
)
          Defendants. )

PERSONALLY APPEARED BEFORE ME, the undersigned, Aaron Rothman, who,
after being duly sworn, deposes and states:

1.     I am over the age of eighteen (18) and competent to testify about the information
contained in this Affidavit.

2.     I have a fifty percent (50%) ownership interest in Haymaker Media, Inc.
("Haymaker")(incorrectly designated in the Amended Complaint as Haymaker Content, LLC),
and I had this same ownership interest in Haymaker when Dawn Ledwell signed an Appearance
Release Form, Arbitration Provision and Voluntary Participation Agreement ("Participation
Agreements") on or about September 13, 2014, and on or about September 15, 2015, which are
referenced as Exhibit 1 and Exhibit 2.

3.     Haymaker Media, Inc. was the producer of *Southern Charm* at the time Plaintiff
signed Exhibit 1 and Exhibit 2.

4.     Although Exhibit 2 references Haymaker Content, Inc. as the producer, this entity
is not an existing corporation and has never been an existing corporation to my knowledge.



Haymaker Content, Inc. had no role in the production of *Southern Charm*. The inclusion of this name in Exhibit 2 was a scrivener's error. The typist put Haymaker *Content*, Inc. when what was intended was Haymaker *Media*, Inc.

5.     Exhibit 1 and Exhibit 2 are true and correct copies of the Participation Agreements, are kept in Haymaker's ordinary course of business, and are in the same or substantially same condition as they were in when Plaintiff Dawn Ledwell signed them.

FURTHER, AFFIANT SAYETH NAUGHT.

_____
Aaron Rothman

SWORN TO AND SUBSCRIBED BEFORE ME

This 8 day of April, 2019.

_____
Notary Public for New York

My Commission Expires: 9/21/21

┌─────────────────────────────────────────┐
│          MARISOL PALACIOS                 │
│   NOTARY PUBLIC, STATE OF NEW YORK        │
│      Registration No. 01PA6211784         │
│        Qualified in Queens County         │
│  Commission Expires September 21, 2021    │
└─────────────────────────────────────────┘

2

STATE OF SOUTH CAROLINA    )

COUNTY OF CHARLESTON     )

IN THE COURT OF COMMON PLEAS

DAWN LEDWELL,         )

        Plaintiff,     )

       vs.       )

THOMAS RAVENEL; HAYMAKER
CONTENT, LLC; BRAVO MEDIA
PRODUCTION, INC.; NBC UNIVERSAL
MEDIA, LLC; AND COMCAST
CORPORATION,

       Defendants.    )

Civil Action No. 2018-CP-10-5824

**AFFIDAVIT OF
SAMANTHA H. DAVENPORT**

PERSONALLY APPEARED BEFORE ME, the undersigned, Samantha H. Davenport, who, after being duly sworn, deposes and states:

1.    I am over the age of eighteen (18) and competent to testify about the information contained in this Affidavit.

2.    I am Senior Vice President, Legal Affairs for NBCUniversal Media, LLC. I have been employed by NBCUniversal Media, LLC for more than nine years. I am responsible for legal advice and counsel in connection with the development, production and exhibition of *Southern Charm.*

3.    I understand that Plaintiff Dawn Ledwell signed an <u>Appearance Release Form,</u> <u>Arbitration Provision and Voluntary Participation Agreement</u> on or about September 13, 2014, and signed a substantially similar agreement and release on or about September 15, 2015, which are referenced as Exhibit 1 and Exhibit 2 (the "Participation Agreements").

3.    NBCUniversal Media, LLC is expressly defined as a "Released Party" in Exhibit 1 and Exhibit 2.


EXHIBIT
4

4.    NBCUniversal Media, LLC is indirectly owned by Comcast Corporation, a publicly held corporation and a defendant in this case. Thus, as NBCUniversal Media, LLC's parent company, Comcast Corporation is defined as a "Released Party" in Exhibit 1 and Exhibit 2.

5.    Bravo Media Productions LLC (incorrectly designated in the Amended Complaint as "Bravo Media Productions, Inc.") is a defendant in this case and is party to a production services agreement with Haymaker Media Inc., dated March 12, 2013 relating to the production of *Southern Charm*. Bravo Media Productions LLC is indirectly owned by NBCUniversal Media, LLC. Thus, as a subsidiary of NBCUniversal Media, LLC, Bravo Media Productions LLC is defined as a "Released Party" in Exhibit 1 and Exhibit 2.

FURTHER, AFFIANT SAYETH NAUGHT.

_____
Samantha H. Davenport

SWORN TO AND SUBSCRIBED BEFORE ME

This 8ᵀᴴ day of  April  , 2019.

_____
Notary Public for New York

My Commission Expires: 2/5/21

HEATHER RENEE MONTMINY
NOTARY PUBLIC-STATE OF NEW YORK
No. 02MO6191055
Qualified in New York County
My Commission Expires 02-05-2021

2



**Reply To**
JAMES D. SMITH, JR.
Direct Dial: (843) 576-2904
jsmith@mgclaw.com

May 13, 2019

## VIA HAND DELIVERY

The Honorable Julie J. Armstrong
Charleston County Clerk of Court
100 Broad Street, Suite 106
Charleston, South Carolina   29401-2210

> RE:   Dawn Ledwell v. Thomas Ravenel; Haymaker Content, LLC; Bravo
> Media Production, Inc.; NBC Universal Media, LLC; and Comcast
> Corporation
> Civil Action No.:      2018-CP-10-5824 (Charleston)
> Carrier Claim No.:     00518345926-001
> MGC File No.:          20595.19024

Dear Ms. Armstrong:

Please find enclosed for filing the original and one (1) copy of **Defendants Haymaker Media, Inc. (incorrectly designated in the Amended Complaint as Haymaker Content, LLC"); Bravo Media Productions LLC (incorrectly designated in the Amended Complaint as "Bravo Media Productions, Inc."); NBCUniversal Media, LLC; and Comcast Corporation's Motion to Dismiss Plaintiff's Amended Complaint** in the above-captioned case.  I would appreciate your returning a clocked-in copy of the same to me in the envelope provided.

By copy of this letter, I am serving counsel of record with the above-referenced Motion to Dismiss.

Thanking you in advance for your assistance, I am

Very truly yours,

James D. Smith, Jr.

JDS/caz
Enclosures
cc:   Ryan C. Andrews, Esquire (w/encl. via e-mail and U.S. Mail)
      Hal E. Cobb, Esquire (w/encl. via e-mail and U.S. Mail)

STATE OF SOUTH CAROLINA           )        IN THE COURT OF COMMON PLEAS
                                  )              NINTH JUDICIAL CIRCUIT
COUNTY OF CHARLESTON              )              2018
                                  )        CASE NO.: 2019 -CP-10-5824
                                  )
Dawn Ledwell                      )        **MOTION AND ORDER INFORMATION**
                      Plaintiff,  )            **FORM AND COVERSHEET**
            vs.                   )
                                  )
Thomas Ravenel et al.             )
                      Defendant.  )

| Plaintiff's Attorney: | Defendant's Attorney: |
|---|---|
| Ryan C. Andrews, Bar No. 101104 | James D. Smith, Jr., Bar No. _____ |
| Address: | Address: |
| 222 W. Coleman Blvd., Mt. Pleasant, SC | PO Box 650007 |
| Phone: 843-936-6680 Fax 843-279-3177 | Phone: 843-576-2900 Fax_____ |
| E-mail: randrews@cdhlawfirm.com Other: | E-mail: jsmith@mgclaw.com Other: _____ |

☒**MOTION HEARING REQUESTED (attach written motion and complete SECTIONS I and III)**
☐**FORM MOTION, NO HEARING REQUESTED (complete SECTIONS II and III)**
☐**PROPOSED ORDER/CONSENT ORDER (complete SECTIONS II and III)**

**SECTION I: Hearing Information**

Nature of Motion: Motion to Amend
Estimated Time Needed: 15 minutes          Court Reporter Needed:  ☒YES/☐ NO

**SECTION II: Motion/Order Type**

☒Written motion attached
☐Form Motion/Order
        I hereby move for relief or action by the court as set forth in the attached proposed order.

_____                    6/4/2019
Signature of Attorney for ☒ Plaintiff /☐ Defendant          Date submitted

**SECTION III: Motion Fee**

☒ PAID – AMOUNT: $ 25 00
☐ EXEMPT:        ☐ Rule to Show Cause in Child or Spousal Support
    (check reason)  ☐ Domestic Abuse or Abuse and Neglect
                 ☐ Indigent Status  ☐ State Agency v. Indigent Party
                 ☐ Sexually Violent Predator Act  ☐ Post-Conviction Relief
                 ☐ Motion for Stay in Bankruptcy
                 ☐ Motion for Publication  ☐ Motion for Execution (Rule 69, SCRCP)
                 ☐ Proposed order submitted at request of the court; or,
                   reduced to writing from motion made in open court per judge's instructions
                   Name of Court Reporter: _____
                 ☐ Other: _____

**JUDGE'S SECTION**

☐ Motion Fee to be paid upon filing of the attached   JUDGE CODE _____
order.
☐ Other:                                            Date: _____

**CLERK'S VERIFICATION**

Collected by:_____    Date Filed: _____
☐ MOTION FEE COLLECTED: $ _____
☐ CONTESTED – AMOUNT DUE: $ _____

SCCA 233 (11/2003)

IN THE STATE OF SOUTH CAROLINA  )
COUNTY OF CHARLESTON             )

Dawn Ledwell,

                   Plaintiff(s),

       v.

Thomas Ravenel; Haymaker Content LLC;
Bravo Media Productions, Inc.;
NBCUniversal Media, LLC; Comcast
Corporation,

                 Defendant(s).

IN THE COURT OF COMMON PLEAS
FOR THE 9TH JUDICIAL CIRCUIT
CASE NO: 2018-CP-10-5824

**PLAINTIFF'S NOTICE OF MOTION
AND MOTION TO AMEND CAPTION
AND CORRECTLY DESIGNATE
CERTAIN PARTIES**

**TO:**   **JAMES D. SMITH, JR., ESQ., AMY Y. JENKINS, ESQ., DANIELLE F. PAYNE, ESQ., AND CAMERON BLAZER, ESQ., ATTORNEYS FOR DEFENDANTS:**

PLEASE TAKE NOTICE that the Plaintiff Dawn Ledwell (herein referred to as Plaintiff") by and through undersigned counsel, will move before the Presiding Judge in the Court of Common Pleas in Charleston County on the tenth (10th) day after service hereof or at such other time and place as is convenient to the Court, for an Order granting Plaintiff leave to Amend the Caption and to correctly designate certain parties pursuant to South Carolina Rule of Civil Procedure Rule 15. In support of this motion, Plaintiff would show the Court as follows:

1.   That prior to serving Defendants in the underlying action, Plaintiff amended her Complaint.

2.   That prior to perfection of service of process of the Defendants and subsequent to Plaintiff's amendment of her original Complaint, Plaintiff was informed that the designations of Defendants Haymaker Content LLC and Bravo Media Productions, Inc. were incorrect. Plaintiff discovered that the correct designation for the Defendants should be Defendant Haymaker Media, Inc. and Bravo Media Productions LLC, respectively.

3.   That Plaintiff served the registered agents of Haymaker Media, Inc. and Bravo Media Productions LLC.

1

4. That the Defendants Haymaker Content LLC; Bravo Media Productions, Inc.; NBCUniversal Media, LLC; and Comcast Corporation (herein collectively referred to as "Corporate Defendants"), by and through counsel, submitted a Motion to Dismiss Plaintiff's Amended Complaint and confirmed the correct designations of the Corporate Defendants through the same.

5. That justice so requires that, given the Corporate Defendants' notice of the underlying lawsuit and confirmation of the correct designations, Plaintiff should be permitted to Amend the Caption of the Amended Summons and Complaint and to correctly designate Defendants Haymaker Media Inc. and Bravo Media Productions LLC, respectively in the underlying action.

6. That upon information and belief, no other parties would be prejudiced by the amendments, and therefore, leave should be freely given by the Court in accordance with Rule 15, S.C.R.C.P.

Plaintiff respectfully requests this Honorable Court to Grant her Motion for Leave to Amend the Caption and to correctly designate Defendants Haymaker Media Inc. and Bravo Media Productions LLC.

## **Rule 11 Certification**

The undersigned counsel would show that he has complied with the consultation requirements of Rule 11 by communicating with counsel for Defendants.

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted,

**COBB DILL & HAMMETT, LLC**

BY

Ryan C. Andrews
S.C. Bar No.: 101104
Cobb Dill & Hammett, LLC
222 W. Coleman Blvd.
Mt. Pleasant, SC 29464
(843) 936-6680 (p)
(843) 279-3177 (f)
randrews@cdhlawfirm.com

**ATTORNEY FOR THE PLAINTIFF**

Mt. Pleasant, South Carolina
June 4            , 2019

IN THE STATE OF SOUTH CAROLINA   )
COUNTY OF CHARLESTON            )

IN THE COURT OF COMMON PLEAS
FOR THE 9TH JUDICIAL CIRCUIT
CASE NO: 2018-CP-10-5824

Dawn Ledwell,

                Plaintiff(s),

v.

Thomas Ravenel; Haymaker Content LLC;
Bravo Media Productions, Inc.;
NBCUniversal Media, LLC; Comcast
Corporation,

                Defendant(s).

**CERTIFICATE OF MAILING**



I certify that I have served a copy of the following document(s) on the individuals below named by hand delivery, electronic mail and/or first class postage pre-paid envelope in the United States mail at Mount Pleasant, South Carolina and addressed as follows:

James D. Smith, Jr., Esq.
Amy Y. Jenkins, Esq.
Danielle F. Payne, Esq.
McAngus Goudelock & Courie, LLC
PO Box 650007
Mt. Pleasant, SC 29465

Cameron Blazer, Esq.
Blazer Law Firm
1037 Chuck Dawley Blvd., D100
Mt. Pleasant, SC 29464

**Documents Served**

Plaintiff's Notice of Motion and Motion to Amend and Correctly Designate Certain Parties

This 4th day of June, 2019

Ryan C. Andrews

1



**CD** COBB DILL &
**&H** HAMMETT, LLC

222 WEST COLEMAN BLVD.
MT. PLEASANT, SC 29464
843-936-6680 (P)
843-279-3177 (F)

Ryan C. Andrews, Partner (SC)
Hal E. Cobb, Partner (SC/CO)
Michael H. Dill, Partner (SC)
William S. Hammett III, Partner (SC/GA)

Stefanie L. Huffer, Associate (SC)
Bryan A. Raymond, Associate (SC)
Stephanie M. Richards, Associate (SC)

Sean A. Scapellato, Partner (SC)
David F. Shymansky Jr., Associate (SC/MD)
Jeffrey A. Slocum Jr., Associate (SC)

June 4, 2019

**SENT VIA HAND DELIVERY**
Charleston County Clerk of Court
100 Broad Street, Suite 106
Charleston, SC 29401

RE:     *Dawn Ledwell v. Thomas Ravenel et al.*
        Case No.:  2018-CP-10-5824

Dear Sir or Madam,

Enclosed please find the original and two (2) copies of the Plaintiff's Notice of Motion and
Motion to Amend and Correctly Designate Certain Parties regarding the above-referenced case.
We would appreciate you filing the original and returning clocked copies in the same envelope
via bullet hand delivery.

Thank you very much for your assistane with this matter, and should you have any questions,
please do not hesitate to contact my office.

Sincerely,

Ryan C. Andrews, Esq.
Enclosures

Cc:     James D. Smith, Jr., Esq. (w/ enclosures)
        Amy Y. Jenkins, Esq. (w/ enclosures)
        Danielle F. Payne, Esq. (w/ enclosures)
        Cameron Blazer, Esq. (w/ enclosures)

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| Dawn Ledwell | ) | MOTION AND ORDER INFORMATION FORM |
| | ) | AND COVER SHEET |
| Plaintiff(s) | ) | |
| | ) | C/A No: 2018-CP-10-5824 |
| vs. | ) | |
| | ) | |
| Thomas Ravenel; Haymaker Content, LLC; Bravo Media Production, Inc.; NBC Universal Media, LLC; and Comcast Corporation | ) | |
| Defendant(s) | ) | |

| Plaintiff's Attorney: | Defendant's Attorney: |
|---|---|
| Ryan C. Andrews, Esquire Bar No. | James D. Smith, Jr. Bar No. 16179 |
| Address: | Danielle F. Payne, Bar No. 73142 |
| 222 W. Coleman Boulevard, Suite 106 | Amy Y. Jenkins, Bar No. 12239 |
| Mt. Pleasant, South Carolina 29464 | Address: McAngus, Goudelock & Courie, LLC |
| phone: (843) 732-1516 fax: (843) 353-2583 | Post Office Box 650007 |
| e-mail: randrews@cdhlawfirm.com other: | 735 Johnnie Dodds Blvd., Suite 200 (29464) |
| | Mt. Pleasant, South Carolina 29465 |
| | Phone (843) 576-2900 Fax: (843) 534-0605 |
| | e-mail: jsmith@mgclaw.com other: |

☒ **MOTION HEARING REQUESTED (attach written motion and complete SECTIONS I and III)**
☐ **FORM MOTION, NO HEARING REQUESTED (complete SECTIONS II and III)**
☐ **PROPOSED ORDER/CONSENT ORDER (complete SECTIONS II and III)**

### SECTION I: Hearing Information

Nature of Motion:
Estimated Time Needed:    Court Reporter Needed: ☐ YES / ☐ NO

### SECTION II: Motion/Order Type

☐ Written motion attached
☒ Form Motion/Order
    I hereby move for relief or action by the court as set forth in the attached proposed order:

_____    7/2/18
Signature of Attorney for ☐ Plaintiff / ☒ Defendant    Date submitted

### SECTION III: Motion Fee

☒ PAID – AMOUNT: $25.00
☐ EXEMPT:    ☐ Rule to Show Cause in Child or Spousal Support
(check reason)    ☐ Domestic Abuse or Abuse and Neglect
        ☐ Indigent Status    ☐ State Agency v. Indigent Party
        ☐ Sexually Violent Predator Act    ☐ Post-Conviction Relief
        ☐ Motion for Stay in Bankruptcy
        ☐ Motion for Publication    ☐ Motion for Execution (Rule 69, SCRCP)
        ☐ Proposed order submitted at request of the court; or,
        reduced to writing from motion made in open court per judge's instructions
    Name of Court Reporter:
    ☐ Other:

### JUDGE'S SECTION

☐ Motion Fee to be paid upon filing of the attached order.
☐ Other:

_____
JUDGE

CODE: _____ Date: _____

### CLERK'S VERIFICATION

Date Filed: _____

Collected by: _____

☐ MOTION FEE COLLECTED: _____
☐ CONTESTED – AMOUNT DUE: _____

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS

COUNTY OF CHARLESTON )

DAWN LEDWELL, ) Civil Action No. 2018-CP-10-05824

Plaintiff,

v. **CONSENT ORDER TO REFER PENDING MOTIONS TO MASTER-IN-EQUITY**

THOMAS RAVENEL; HAYMAKER CONTENT, LLC; BRAVO MEDIA PRODUCTIONS, INC.; NBCUNIVERSAL MEDIA, LLC; AND COMCAST CORPORATION,

Defendants.

The parties hereby request the entry of the following Consent Order in order to refer pending motions of Defendants, Haymaker Media, Inc. (incorrectly designated in the Amended Complaint as "Haymaker Content, LLC"); Bravo Media Productions LLC (incorrectly designated in the Amended Complaint as "Bravo Media Productions, Inc."); NBCUniversal Media, LLC; and Comcast Corporation, Motion to Dismiss Plaintiff's Amended Complaint, and Plaintiff's Motion to Amend Caption and Correctly Designate Certain Parties in the above-referenced matter to the Charleston County Master-in-Equity. The Parties request that the motions be referred to the Master-in-Equity due to the length of time needed to argue these motions and the complexity of said motions. Consent of all parties having been given, the Court finds that the Consent Order as proposed is reasonable and in the interest of all parties.

**ACCORDINGLY, IT IS ORDERED AS FOLLOWS:**

The above-referenced motions are hereby referred to the Charleston County Master-in-Equity to be heard at a time convenient for all parties.



**AND IT IS SO ORDERED!**

_____
The Honorable Roger M. Young, Sr.
Chief Administrative Judge

_____, 2019

Charleston, South Carolina

**WE CONSENT:**

COBB DILL & HAMMETT LAW FIRM, LLC

_____ with pers ___

Ryan C. Andrews, Esquire
Bar No. 101104
Hal E. Cobb, Esquire
Bar No. 100575
222 W. Coleman Boulevard, Suite 106
Mt. Pleasant, South Carolina  29464
(843) 732-1516

ATTORNEYS FOR PLAINTIFF DAWN
LEDWELL

**WE CONSENT:**

McANGUS GOUDELOCK & COURIE, LLC

_____

James D. Smith, Jr.
Bar No: 16179
Amy Y. Jenkins
Bar No.: 12239
Danielle F. Payne
Bar No.:  73142
Post Office Box 650007
735 Johnnie Dodds Blvd, Suite 200 (29464)
Mt. Pleasant, South Carolina 29465
(843) 576-2900

ATTORNEYS FOR DEFENDANTS
HAYMAKER CONTENT, LLC; BRAVO
MEDIA PRODUCTION, INC.; NBC
UNIVERSAL MEDIA, LLC; AND
COMCAST CORPORATION



**Reply To**
DANIELLE F. PAYNE
Direct Dial: (843) 576-2921
danielle.payne@mgclaw.com

July 2, 2019

The Honorable Roger M. Young, Sr.
Administrative Judge
Charleston County Court of Common Pleas
100 Broad Street, Suite 368
Charleston, South Carolina  29401

      RE:      Dawn Ledwell v. Thomas Ravenel; Haymaker Content, LLC; Bravo
              Media Productions, Inc.; NBCUniversal Media, LLC; and Comcast
              Corporation
              Civil Action No.:     2018-CP-10-05824 (Charleston)
              Carrier Claim No.:    00518345926-001
              MGC File No.:       20595.19024

Dear Judge Young:

      Enclosed please find a proposed **Consent Order to Refer Pending Motions to Master-in-Equity** in the above-captioned case which has been approved by all counsel.  We are submitting this Order to you for your signature.  If this Order meets with your approval please sign the Order and kindly forward it on to the Clerk for filing. We have enclosed our letter to the Clerk, along with the Motion Coversheet, check for the filing fee and self-addressed, stamped envelope for returning a copy of the court clocked Order to our office.  We appreciate your attention to this request and should you require anything further please let us know.

                            Very truly yours,

                            Danielle F. Payne

DFP/caz
Enclosure
cc:    Ryan C. Andrews, Esquire (w/encl. via e-mail only)
       Hal E. Cobb, Esquire (w/encl. via e-mail only)
       James D. Smith, Jr., Esquire (w/encl. via e-mail only)
       Amy Y. Jenkins, Esquire (w/encl. via e-mail only)

735 JOHNNIE DODDS BLVD, STE 200    843.576.2900 PHONE
POST OFFICE BOX 650007    843.534.0605 FAX
MT. PLEASANT, SC 29465    WWW.MGCLAW.COM

McANGUS GOUDELOCK & COURIE LLC



**Reply To**
DANIELLE F. PAYNE
Direct Dial: (843) 576-2921
danielle.payne@mgclaw.com

July 2, 2019

The Honorable Julie J. Armstrong
Charleston County Clerk of Court
100 Broad Street, Suite 106
Charleston, South Carolina   29401-2210

RE:    Dawn Ledwell v. Thomas Ravenel; Haymaker Content, LLC; Bravo
       Media Productions, Inc.; NBCUniversal Media, LLC; and Comcast
       Corporation
       Civil Action No.:    2018-CP-10-05824 (Charleston)
       Carrier Claim No.:   00518345926-001
       MGC File No.:        20595.19024

Dear Ms. Armstrong:

    Please find enclosed for filing the original and one (1) copy of a **Consent Order
to Refer Pending Motions to Master-in-Equity** in the above-captioned case.    I
would appreciate your returning a clocked-in copy of the same to me in the envelope
provided.

    Thanking you in advance for your assistance, I am

                        Very truly yours,

                        Danielle F. Payne

DFP/caz
Enclosures
cc:    Ryan C. Andrews, Esquire (w/encl. via e-mail only)
       Hal E. Cobb, Esquire (w/encl. via e-mail only)
       James D. Smith, Jr., Esquire (w/encl. via e-mail only)
       Amy Y. Jenkins, Esquire (w/encl. via e-mail only)

IN THE STATE OF SOUTH CAROLINA )
COUNTY OF CHARLESTON )

Dawn Ledwell,

Plaintiff(s),

v.

Thomas Ravenel; Haymaker Content LLC;
Bravo Media Productions, Inc.;
NBCUniversal Media, LLC; Comcast
Corporation,

Defendant(s).

IN THE COURT OF COMMON PLEAS
FOR THE 9TH JUDICIAL CIRCUIT
CASE NO: 2018-CP-10-5824

**PLAINTIFF'S MEMORANDUM OF
LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO AMEND THE CAPTION
AND CORRECTLY DESIGNATE
CERTAIN PARTIES**

**TO:  JAMES D. SMITH, JR., ESQ., AMY Y. JENKINS, ESQ., DANIELLE F. PAYNE,
ESQ., AND CAMERON BLAZER, ESQ., ATTORNEYS FOR DEFENDANTS:**

Plaintiff Dawn Ledwell (herein referred to as "Plaintiff"), by and through undersigned

counsel, hereby submits this memorandum of law in support of Plaintiff's Motion to Amend the

Caption and Correctly Designate Certain Parties.

## STATEMENT OF FACTS

Plaintiff filed her Complaint against all Defendants in this action on December 7, 2018.

Prior to serving any Defendants, Plaintiff amended her Complaint.  After filing her Amended

Complaint, and prior to the perfection of service on all Defendants, Plaintiff was informed that the

designations of Defendants Haymaker Content LLC and Bravo Media Productions, Inc. were

incorrect.  Plaintiff discovered that the correct designation for the Defendants should be Defendant

Haymaker Media, Inc. (herein referred to as Defendant Haymaker) and Bravo Media Productions

LLC (herein referred to as Defendant Bravo), respectively.  Plaintiff subsequently served the

correct registered agents for the correctly designated parties.[1]  She then requested that consent be

---

[1]     It is Important to note that the South Carolina Secretary of State's business search with the correctly named
parties reveal that the parties may not be registered within the state. *See* Exhibits 1 and 2 to this memorandum.

1

given to correct the designated parties; however, it was not provided.  For the following reasons, this Court should grant Plaintiff's Motion to Amend the Caption and Correctly Designate Certain Parties.

## ARGUMENT

Plaintiff's Motion to Amend should be granted as leave to amend pleadings "shall be freely granted when justice so requires and does not prejudice any other party."  S.C.R.C.P. 15.  This Court has discretion to amend the pleadings, and the burden of establishing prejudice rests on the opposing party.  *See Hardaway Concrete Co. v. Hall Contracting Corp.*, 374 S.C. 216, 227, 647 S.E.2d 488, 493-94 (Ct. App. 2007).  Further, "[t]he prejudice Rule 15 envisions is a lack of notice that the new issue is going to be tried, and a lack of opportunity to refute it."  *Parker v. Spartanburg Sanitary Sewer Dist.*, 362 S.C. 276, 286, 607 S.E.2d 711, 716-17 (Ct. App. 2005) (citations omitted).  Moreover, it is the burden of the parties opposing amendments to establish prejudice.  *Id.* (citations omitted).  Rule 15 "strongly favors amendments and the court *is encouraged to freely grant leave to amend.*"  *Id.* (emphasis added).

While this current action was initially filed over eight (8) months ago, this lawsuit is still in the early phases procedurally, as Defendants are making their "pre-Answer" motions.  In fact, although discovery has been served in this action, no responses have been provided other than Defendants responding to Plaintiff's Requests for Admissions out of an abundance of caution.  Even though Defendants Haymaker and Bravo were incorrectly designated in the Amended Complaint, both parties received notice of the claims against them as both parties have initiated a pre-trial motion to dismiss.  Accordingly, Defendants Haymaker and Bravo cannot establish any prejudice.

2

Further, Defendant Haymaker confirms in the affidavit filed as exhibit 3 in its' motion to dismiss, that the entity itself confused and incorrectly designated the entity's own name in the purported agreement at issue with Plaintiff. It confirms it was a "scrivener's error," and essentially requests this Court to disregard their error without consenting to Plaintiff's request for the same. In any event, justice would require the amendments, as, depending on the outcome of Defendants Haymaker's and Bravo's motion to dismiss, the Plaintiff should be able to proceed, whether it be through verdict or appeal, against the correctly designated entities. Because Defendants Haymaker and Bravo cannot prove prejudice would arise out of amending the caption and correcting the party designations, and justice would require the same, this Court should grant Plaintiff's Motion.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to grant Plaintiff's Motion and order that the caption and correct party designations are amended.

Respectfully submitted,

**COBB DILL & HAMMETT, LLC**

BY _____
Ryan C. Andrews
S.C. Bar No.: 101104
Cobb Dill & Hammett, LLC
222 W. Coleman Blvd.
Mt. Pleasant, SC 29464
(843) 936-6680 (p)
(843) 279-3177 (f)
randrews@cdhlawfirm.com

**ATTORNEY FOR THE PLAINTIFF**

Mt. Pleasant, South Carolina
Aug. 23 , 2019

3

# EXHIBIT 1
# (Business Search of Haymaker Media, Inc.)

**South Carolina Secretary of State**

# Business Entities Online

File, Search, and Retrieve Documents Electronically

---

## Business Name Search

### To Search
Enter the business name of the company you wish to view and click "Search." Find the business in the results below and click to view the official business profile and relevant information.

### To File for an Existing Business
Enter the business name of the company for which you wish to file documents and click search. Find the business in the results below and click to view the official business profile. From your business's profile click the "Add Filing" button.

Results displayed will show entities that contain your search criteria.

---

### Search by Business Name

| Begins With ⏷ | Haymaker Media, Inc. |
|---|---|

This name is available

## *No Results*

---

# EXHIBIT 2
# (Business Search of Bravo Media Productions LLC)

# Business Entities Online

File, Search, and Retrieve Documents Electronically

---

# Business Name Search

## To Search

Enter the business name of the company you wish to view and click "Search." Find the business in the results below and click to view the official business profile and relevant information.

## To File for an Existing Business

Enter the business name of the company for which you wish to file documents and click search. Find the business in the results below and click to view the official business profile. From your business's profile click the "Add Filing" button.

Results displayed will show entities that contain your search criteria.

### Search by Business Name

| Begins With ⬍ | Bravo Media Productions LLC |
|---|---|

This name is available

# *No Results*

---

IN THE STATE OF SOUTH CAROLINA )     IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON           )     FOR THE 9TH JUDICIAL CIRCUIT
                                     CASE NO: 2018-CP-10-5824

Dawn Ledwell,

                       Plaintiff(s),        **CERTIFICATE OF MAILING**

              v.

Thomas Ravenel; Haymaker Content LLC;
Bravo Media Productions, Inc.;
NBCUniversal Media, LLC; Comcast
Corporation,

                       Defendant(s).

I certify that I have served a copy of the following document(s) on the individuals below named
by hand delivery, electronic mail and/or first class postage pre-paid envelope in the United States
mail at Mount Pleasant, South Carolina and addressed as follows:

James D. Smith, Jr., Esq.
Amy Y. Jenkins, Esq.
Danielle F. Payne, Esq.
McAngus Goudelock & Courie, LLC
PO Box 650007
Mt. Pleasant, SC 29465

Cameron Blazer, Esq.
Blazer Law Firm
1037 Chuck Dawley Blvd., D100
Mt. Pleasant, SC 29464

**Documents Served**

Plaintiff's Memorandum of Law in Opposition of Defendant's Motion to Dismiss
Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Amend and Correctly
              Designate Certain Parties

This 23rd day of August, 2019

_Kelsey A. M Cawley_
Kelsey A. McCawley

1

IN THE STATE OF SOUTH CAROLINA   )
COUNTY OF CHARLESTON               )

Dawn Ledwell,

                      Plaintiff(s),

      v.

Thomas Ravenel; Haymaker Content LLC;
Bravo Media Productions, Inc.;
NBCUniversal Media, LLC; Comcast
Corporation,

                      Defendant(s).

IN THE COURT OF COMMON PLEAS
FOR THE 9TH JUDICIAL CIRCUIT
CASE NO: 2018-CP-10-5824

**PLAINTIFF'S MEMORANDUM OF
LAW IN OPPOSITION OF
DEFENDANTS' MOTION TO DISMISS**

**TO:**   **JAMES D. SMITH, JR., ESQ., AMY Y. JENKINS, ESQ., DANIELLE F. PAYNE, ESQ., AND CAMERON BLAZER, ESQ., ATTORNEYS FOR DEFENDANTS:**

Plaintiff Dawn Ledwell (herein referred to as "Plaintiff"), by and through undersigned counsel, hereby submits this memorandum of law in opposition of Defendants Haymaker Content LLC's, Bravo Media Productions, Inc.'s, NBCUniversal Media, LLC's, and Comcast Corporation's (herein referred to as "Corporate Defendants") Motion to Dismiss.

<u>**STATEMENT OF FACTS**</u>

Plaintiff initiated this current action against Corporate Defendants based upon an unwanted careless and reckless act committed by Corporate Defendants' employee/agent, Defendant Thomas Ravenel (herein referred to as "Defendant Ravenel"), which was committed while Plaintiff was employed as a nanny for Defendant Ravenel's young child. *See* Amended Complaint. Plaintiff alleges that Corporate Defendants were negligent, defamed her, and committed a violation of the South Carolina Unfair Trade Practices Act due to their failure to warn and investigate the actions of Defendant Ravenel.

Corporate Defendants own, produce, and otherwise broadcast the television show "Southern Charm." Plaintiff admits in her Amended Complaint that she made several appearances

1

on the television show in her role as Defendant Ravenel's nanny. *See* Amended Complaint ¶ 29. However, Plaintiff explicitly states that such appearances were "*incidental to the services she provided to Defendant Ravenel* and/or at the request of Corporate Defendants." Amended Complaint ¶ 30 (emphasis added).

Corporate Defendants have alleged that Plaintiff entered into a mediation/arbitration agreement and subjected herself to the personal jurisdiction in the State of New York for claims that "occurred in connection with Plaintiff's participation on *Southern Charm*."[1] Corporate Defendants' Motion to Dismiss Plaintiff's Amended Complaint p. 2. However, Plaintiff disputes that she entered into any agreement for the same. Further, Plaintiff's causes of action are not based upon her participation on the television show, as her causes of action are based upon her role as a nanny for Defendant Ravenel. For the following reasons this Court should deny the Corporate Defendants' motion and permit Plaintiff's claims to proceed in this jurisdiction.

## **ARGUMENT**

Plaintiff respectfully requests that this Court deny Corporate Defendants' Motion to Dismiss. The following argument pertains to the entire alleged agreements Corporate Defendants' state they executed with Plaintiff. Corporate Defendants' Motion is based upon an alleged contract with Plaintiff which contains releases, agrees to mediate and arbitrate in New York, and also has a New York choice-of-law/venue provisions that was allegedly signed by the Plaintiff. It is well established that the "elements of a contract are an offer, acceptance, and valuable consideration." *Roberts v. Gaskins*, 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct. App. 1997).

---

[1]     Plaintiff is unable to completely address such agreements as Corporate Defendants have stated that the alleged agreements would "be provided to the Court for *in camera* review prior to the hearing" and counsel has not been provided the same. *See* Corporate Defendants' Motion to Dismiss Plaintiff's Amended Complaint p. 2 n. 1. While Plaintiff does not have a copy of the alleged agreements, Plaintiff's counsel has obtained an unsigned "Appearance Release Form, Arbitration Provision and Voluntary Participation Agreement" (herein referred to as "Unsigned Arbitration Form" and attached herewith as Exhibit 2), upon information and belief, which is substantially similar to the ones Corporate Defendants allege Plaintiff signed.

Moreover, the same contract principles in South Carolina apply with this Court's "evaluation of the enforceability of an arbitration clause." *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 24-25, 644 S.E.2d 663, 668 (2007) (citations omitted). Further, when contract provisions are deemed unconscionable, courts are given the power to fashion appropriate relief. *See Lackey v. Green Tree Financial Corp.*, 330 S.C. 388, 498 S.E.2d 898 (Ct. App. 1998) (holding that "[i]f the court finds that a contract clause was unconscionable at the time it was made, the court may refuse to enforce the contract clause or limit the application of the unconscionable clause to avoid any unconscionable result."). In addition, duress is an applicable contract defense which could negate the enforceability of arbitration clauses. *See Simpson* at 24, 644 S.E.2d at 668.

Here, none of the agreements allegedly signed by Plaintiff were supported by any consideration from the Corporate Defendants and, therefore, are not legally binding contracts. In the alternative, should this Court find a valid contract existed, any agreements sought to be enforced by Corporate Defendants were unconscionable and made under duress thus rendering such clauses and contracts unenforceable.

## I.     No consideration was exchanged for any of the agreements purported to be signed by Plaintiff.

In any alleged contract with Corporate Defendants (none of which have been produced to date to Plaintiff, her counsel, or the Court), Corporate Defendants have no evidence nor alleged that any consideration was exchanged and therefore, under basic contract principles, no contract could exist from the outset. It is well established that "[v]aluable consideration to support a contract may consist of some right, interest, profit, or benefit accruing to one party or some forbearance, detriment, loss of responsibility given, suffered or undertaken by the other." *Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship*, 331 S.C. 385, 389, 503 S.E.2d 184, 186 (Ct.

3

App. 1998). As Plaintiff received no benefit of any kind in exchange with any alleged agreement with Corporate Defendants, this motion should be denied.

South Carolina's law regarding employment and non-compete contracts are instructional and analogous with the present case. For example, in the at-will employment context, Courts require *new and additional consideration* when covenants not to compete are entered into *after* the beginning of employment. *Poole v. Incentives Unlimited, Inc.*, 345 S.C. 378, 382, 548 S.E.2d 207, 209 (2001) (emphasis added). Moreover, "there is no consideration when the contract containing" the new agreement is made for some period of time after employment initially begins and the "employee's duties and position are left unchanged." *Id.* In the present case, the Corporate Defendants have not presented any evidence nor alleged that any consideration was given to the Plaintiff for any of the purported agreements signed by her.

As Plaintiff had been employed by Defendant Ravenel and Kathryn Dennis well in advance of entering any possible agreement with Corporate Defendants, new and additional consideration—beyond her compensation as a nanny—would be required for this alleged new agreement with Corporate Defendants, given the implication that her continued employment depended on making an appearance release. While Plaintiff pled in her Amended Complaint that one of the Corporate Defendants paid her, she specifically states it was "for a portion of her nanny services provided to the Ravenel family." Amended Complaint ¶ 31. Moreover, Plaintiff attested that "[a]ny compensation [she] received by any of the [Corporate Defendants] . . . was compensation solely for the purpose of providing nannying services for [Defendant Ravenel] and Kathryn Dennis." Exhibit 1. Thus, while the source of funds for her employment appears to have shifted at some point during the course of her employment, there was no new job and no *new* consideration paid. Indeed, the Corporate Defendants' own motion admits that Plaintiff agreed

"to serve as an *unpaid voluntary* participant on ['Southern Charm']." Corporate Defendants' Motion to Dismiss Plaintiff's Amended Complaint p. 2 (emphasis added).

Plaintiff has also not made any allegations that any of her job duties as nanny for Defendant Ravenel or Kathryn Dennis changed as a result of her entering into these alleged agreements. Rather, she maintains that she "appeared on the show because the constant presence of the cameras during filming meant that it was almost inevitable that [she] would be captured on film at some point during the execution of [her] duties as a nanny." Exhibit 1. Further, she maintains she was approached about appearing on "Southern Charm" in "her role *as a nanny for Thomas Ravenel's and Kathryn Dennis' children.*" *Id.* (emphasis added). Because of Plaintiff's allegations and her sworn statement, and Corporate Defendants' own admission that she was an "unpaid volun[teer]" on "Southern Charm," no contract existed between Plaintiff and Corporate Defendants, and therefore, Corporate Defendants' Motion to Dismiss should be denied.

II.   **Should the court find a contract existed between Plaintiff and the Corporate Defendants, the contract does not apply to Plaintiff's allegations and causes of action; additionally such terms regarding mediation, arbitration, and subjecting Plaintiff to the jurisdiction of the State of New York are unconscionable and were made under duress making them unenforceable.**

If the Court determines a contract existed between the Plaintiff and Corporate Defendants—which Plaintiff vehemently denies—the matters alleged by the Plaintiff are not based upon her participation on "Southern Charm" and the terms the Corporate Defendants are attempting to enforce are unconscionable and made under duress.

A. **Plaintiff's claims against Corporate Defendants were not premised on the matters contemplated by any alleged contract.**

While public policy generally favors arbitration of disputes, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [s]he has not agreed to submit." *Aiken v. World Fin. Corp. of S.C.*, 373 S.C. 144, 149, 644 S.E.2d 705, 708

(2007) (citations omitted). It is this court's responsibility to rule on the threshold validity of an arbitration agreement. *See Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001) (finding "[t]he question of the arbitrability of a claim is an issue for judicial determination, unless the parties provide otherwise.") (citations omitted); *see also The Hous. Auth. Of City of Columbia v. Cornerstone Hous., LLC*, 356 S.C. 328, 334, 588 S.E.2d 617, 620 (Ct. App. 2003) (recognizing that "[t]he initial inquiry to be made by the trial court is whether an arbitration agreement exists between the parties."). Accordingly, it is in the trial court's discretion to determine if an arbitration clause applies to a certain type of controversy. *Simpson* at 23, 644 S.E.2d at 667. "[I]n limited circumstances, a court should assume that the parties intended the court to decide certain arbitration issues in the absence of 'clear and unmistakable' evidence to the contrary." *Id.* (citations omitted). These circumstances usually involve certain "gateway matters," including whether the parties have an enforceable arbitration contract, "or whether an arbitration clause applies to a certain type of controversy." *Id.*

To determine if an arbitration agreement encompasses a certain type of controversy, "a court must determine whether the factual allegations underlying the claim are within the scope of the broad arbitration clause, regardless of the label assigned to the claim." *Zabinski* at 597, 553 S.E.2d at 118. "[U]nless the court can say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute, arbitration should be ordered." *Id.*

In the present case, there is no agreement to mediate or arbitrate the issues upon which this case was filed. Plaintiff's Amended Complaint does not allege any wrongdoing out of her participation on the television show "Southern Charm." Instead, Plaintiff's Amended Complaint confirms that the controversy was due to her job and occupation as a nanny for Defendant Ravenel.

6

The Corporate Defendants' own motion states that Paragraph 22 in the alleged agreement that Mediation and Arbitration Agreement applies:

> **WHERE A CONTROVERSY, DISPUTE, OR CLAIM ARISES BETWEEN [PLAINTIFF], ON THE ONE HAND, AND ONE OR MORE OF THE [CORPORATE DEFENDANTS], ON THE OTHER HAND, IN CONNECTION WITH [PLAINTIFF'S] PARTICIPATION [ON] ["SOUTHERN CHARM"]. . . .**

Corporate Defendants' Motion to Dismiss Plaintiff's Amended Complaint p. 3 (emphasis in the original).

Nothing in Plaintiff's Amended Complaint can be construed that her claims against Corporate Defendant were based upon her personal participation on "Southern Charm." Her claims are that she was carelessly and recklessly accosted by Defendant Ravenel, for whom she served as a nanny for his children prior to any alleged agreement in which she entered into. The mere fact that her allegations against Corporate Defendants include the conducive environment they created and their failure to respond to, warn or, and investigate Defendant Ravenel's actions, do not rise to the level of Plaintiff making a claim based upon her participation in the program. The claims instead have nothing to do with her limited participation on "Southern Charm" and focus solely on the actions of Corporate Defendants' employees/agents. Accordingly, agreements should be found to be inapplicable to this case.

**B.     The terms of any alleged agreements that Corporate Defendants wish to exercise are unconscionable and therefore not enforceable.**

The alleged mediation, arbitration, and choice-of-law/venue clauses in any purported agreements with Corporate Defendants are unconscionable. The South Carolina Supreme Court held that unconscionability is the absence of meaningful choice on the part of one party due to one-sided contract provisions together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them. *See Munoz v. Green Tree*

*Financial Corp.*, 343 S.C. 531, 542 S.E.2d 360 (2001); *Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc.*, 322 S.C. 399, 472 S.E.2d 242 (1996). Moreover, when the Court finds a contract or a clause in the contract to have been unconscionable at the time the contract was made, the Court "may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." S.C. Code Ann. § 36-2-302(1) (2003).

"In analyzing claims of unconscionability in the context of arbitration agreements, the Fourth Circuit has instructed courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." *Simpson* at 25, 644 S.E.2d at 668-69 (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)). The South Carolina Supreme Court has used this "general rubric" to "determine whether a contract provision is unconscionable due to both an absence of meaningful choice and oppressive, one-sided terms." *Simpson* at 25, 664 S.E.2d at 669. Here, there is an absence of a meaningful choice in any alleged agreements as well as oppressive terms which render the provisions unconscionable and unenforceable.

**1.    Corporate Defendants' alleged agreements were contracts of adhesion in which Plaintiff lacked a meaningful choice to enter into the same.**

In the present case, if Plaintiff did enter into any agreement with the Corporate Defendants, she lacked a meaningful choice to do so. Under state contract law, the finding of an adhesion contract, also known as a "take-it-or-leave-it" contract, is the starting point of an unconscionable contract analysis. *Id.* at 26-27, 664 S.E.2d at 669 (citations omitted). In addition, when deciding whether a lack of a meaningful choice Courts "should take into account the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an

element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause." *Id.* at 25, 664 S.E.2d at 669 (citing *Carlson v. General Motors Corp.*, 883 F.2d 287, 295 (4th Cir. 1989)).

In *Simpson*, the court found a plaintiff lacked a meaningful choice to enter into a contract of adhesion which contained an arbitration clause when trading in her vehicle with an automobile dealership. *Simpson* at 27-28, 664 S.E. 2d at 669-70. The court came to this conclusion while emphasizing the importance in modern day society of primary transportation, as well as taking into account that the plaintiff lacked "the business judgment necessary to make her aware of the implications" of the agreement. *Id.* The plaintiff additionally entered into said agreement without a lawyer present to provide assistance. *Id.* Further, the Court also recognized that the plaintiff was presented with the contract "hastily" for her signature. *Id.*

In the present case, Plaintiff asserts that she was "caught off guard" about the filming of "Southern Charm" and sudden request to enter into an agreement with Corporate Defendants. Exhibit 1. Like *Simpson*, she did not have the legal background and sophistication to inform her of potential ramifications for the signing of any agreements. Because she "was concerned solely for Thomas Ravenel's and Kathryn Dennis' children as it was [her] occupation at the time and what [she] was hired to do" she "hastily signed" documents for the Corporate Defendants. *Id.* Upon information and belief, any purported agreement containing arbitration, mediation, and choice-of-law/venue provisions would be a contract of adhesion in that Plaintiff was not given any option to otherwise further negotiate said terms.

The Corporate Defendants have not presented any evidence or testimony to dispute Plaintiff's testimony. Further, this Court should consider that the Corporate Defendants, especially taken as a whole, are multi-billion dollar corporations and entities with obvious unequal bargaining

power and legal maneuvering at their disposal. *See Smith v. D.R. Horton, Inc.*, 403 S.C. 10, 16, 742 S.E.2d 37, 41 (Ct. App. 2013), *aff'd*, 417 S.C. 42, 790 S.E.2d 1 (2016) (finding that, in entering a contract and arbitration agreement with a corporate homebuilder, a single unrepresented homebuyer lacked a meaningful choice because he was not a substantial business concern and had unequal bargaining power).   As such, this Court should find that the Plaintiff lacked a meaningful choice to enter any of the alleged Corporate Defendants' contracts of adhesion.

>           **2.      Any alleged agreements between Corporate Defendants and Plaintiff
>                     were oppressive and one-sided.**

The terms in Corporate Defendants' purported contract clauses cited in their Motion together with the terms in Plaintiff's Counsel's Unsigned Arbitration Form are clearly oppressive and one-sided to render such clauses unenforceable.   Indeed, "[t]he general rule is that courts will not enforce a contract which is violative of public policy, statutory law, or provisions of the Constitution." *Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 555, 606 S.E.2d 752, 758 (2004).

Initially, Corporate Defendants' clauses cited in their Motion disregards South Carolina law.   As an example, Paragraph 13 referred to in Corporate Defendants' Motion concedes that the "parties agree that the controversy or claim, including the scope or applicability of this agreement to arbitrate, shall be resolved by final and binding confidential arbitration. . . ."   Corporate Defendants' Motion to Dismiss Plaintiff's Amended Complaint p. 3.   This circular statement completely disregards South Carolina law in that Courts in this state do have the authority to evaluate and determine the enforceability of arbitration clauses both statutorily and under the common law. *See* S.C. Code Ann. § 36-2-302(1) (2003) (statute giving power to the Courts to alter unconscionable contracts); *see also Simpson* at 24-25, 644 S.E.2d at 668.

Moreover, paragraph 22 of Plaintiff's counsel's Unsigned Arbitration Form, entitled "Mediation & Arbitration" purports to waive the right to hold Corporate Defendants liable for punitive or exemplary damages, and limits Plaintiff's recovery, should the matter proceed to arbitration, to only actual damages. *See* Exhibit 2. This, again, runs afoul South Carolina law as Plaintiff has made claims that Corporate Defendants violated the South Carolina Unfair Trade Practices Act. This clause prohibits Plaintiff from obtaining "mandatory statutory remedies to which she may be entitled." *Simpson* at 30, 644 S.E.2d at 671; *see also* S.C. Code Ann. § 39-5-140(a) (providing that a "court *shall* award three times the actual damages sustained and may provide such other relief as it deems necessary or proper" (emphasis added)).

In addition, Corporate Defendants' choice-of-law/venue provisions regarding Plaintiff subjecting herself to the jurisdiction of the State of New York, whether it be through litigation, arbitration, and mediation, is very one-sided. For instance, Plaintiff has only been to New York on two (2) occasions: once as a minor and once with her mother. Exhibit 1. Neither visit had anything to do with her appearance on "Southern Charm" or for that matter her role as Thomas Ravenel's and Kathryn Dennis' nanny. *Id.* Moreover, "Southern Charm" is a "reality" television show with the main setting of Charleston, South Carolina. *See* Amended Complaint ¶ 16. While some of the Corporate Defendants may be based or do business in New York, the crux of Plaintiff's allegations in her Amended Complaint involve actions occurring only in the State of South Carolina. Because the choice-of-law/venue provisions included in the alleged agreements are oppressive and obviously one-sided in favor of the Corporate Defendants, the Court should find such clauses unconscionable and unenforceable. In addition, because the Corporate Defendants require "mediation and/or arbitration pursuant to the procedures of JAMS" in the State of New York, any clause containing the same should be unenforceable for the reasons stated above.

3.    **The unconscionable mediation, arbitration, and choice-of-law/venue provisions, when taken as a whole, are not severable and require complete invalidation.**

Because of the sheer numbers of unconscionable terms and clauses contained Corporate Defendants' purported mediation, arbitration, choice-of-law/venue agreements, all paragraphs reflecting the same should be invalidated rather than the individual unconscionable terms severed. In *Simpson*, the Supreme Court upheld the invalidation of an entire arbitration clause "based on the cumulative effect of [three] oppressive and one-sided provisions contained within the [arbitration] clause." *Simpson* at 34, 644 S.E.2d at 674. As stated above, the Corporate Defendants rely on numerous one sided terms in their purported agreement with Plaintiff, and therefore, the entirety of the mediation, arbitration, and choice-of-law/venue provisions should be invalidated.

It is important for the court to also consider that the Unsigned Arbitration Form, if containing the same or substantially similar language as Corporate Defendants' purported agreements with Plaintiff, is plagued with numerous oppressive and unconscionable terms. Paragraphs 1 and 2 of the Unsigned Arbitration Form, for example, contains the following clause:

production (the "Advertisements"). The Footage and Materials, the Program, and the Advertisements may be exploited throughout the universe at any time, in perpetuity, in any and all media, now known and hereafter devised, without any monetary compensation to me whatsoever. The rights granted herein shall also include the right to edit, delete, dub and fictionalize the Footage and Materials, the Program, and the Advertisements as Producer sees fit in Producer's sole discretion.

(Paragraph 1)

in any jurisdiction of the world, which I have. To the extent I retain any interest in the Footage and Materials, I hereby grant and assign to Producer all rights of any nature in and to all such Footage and Materials. Furthermore, the rights granted to Producer include any so-called "rental and lending" or similar rights and any and all allied, ancillary and subsidiary rights (including, without limitation, remake, sequel, theatrical, digital, television, radio, publishing, merchandising, soundtrack album and other similar rights) for any purpose, by and in any media whether now known or hereafter devised, throughout the universe, in perpetuity, as part of the Program or otherwise.

(Paragraph 2).    In both paragraphs, the Corporate Defendants' oppressive terms include perpetually profiting off any purported signee without that signee receiving any compensation; the Corporate Defendants' right to "fictionalize" the signee's footage and materials "as Producer sees

12

fit in Producer's sole discretion"; and forever assigns any potential rights of that signee's footage to Producers.

Further, Corporate Defendants effectively admit its' entire contractual clauses with any signees are one sided in Paragraph 4 of the Unsigned Arbitration Agreement:

> 4.    I represent and warrant the following: (a) I am not currently, and during one (1) year from today do not intend to be, a candidate for any public office; (b) my appearance in the Program is not a performance and is not employment and is not subject to any union or guild collective bargaining agreement, and does not entitle me to wages, salary, corporate benefits, unemployment or workers' compensation benefits, or other compensation under any such collective bargaining agreement or otherwise; (c) I am not under any obligation to any television network, producer, or

Indeed, Paragraph 4 states that, whatever participant signs the form, he/she is not entitled to any benefits whatsoever, including but not limited to compensation, the right to collectively bargain, and also workers compensation should an injury occur on set. Further, Paragraph 5 essentially attempts to undercut any potential liability of the Corporate Defendants for injuries or events occurring as a result of Corporate Defendants providing alcohol for consumption:

> 5.    I acknowledge that during certain events and activities in connection with the Program alcohol may be available for consumption. I agree that if I partake in the consumption of alcohol at any time during my participation in the Program, that I will do so only if I am at least 21 years of age and only in moderation. Further, I represent and warrant that I will not drive a car after I have consumed alcohol until such time as my blood-alcohol level is deemed lawful. In addition, I agree that I assume any and all risk associated with my consumption of alcohol and being in the presence of others who may have consumed alcohol. I expressly agree and affirm that the waivers, releases and indemnities in this Agreement and any other agreement that I have executed or that I may execute in connection with the Program expressly apply to any act or occurrence of any nature resulting from my consumption of alcohol during my participation in the Program.

Moreover, Paragraph 8 contains a non-compete agreement with the signee for any "reality-based" program for six months unless consent is obtained from the Corporate Defendants. Exhibit 2.

Additionally, and perhaps most shocking, Paragraphs 9 and 10 contain the following:

9.      To the maximum extent permitted by law, Producer and Network shall have the right to use all information obtained about me in connection with the Program or otherwise. Without in any way limiting the foregoing, I understand that in and in connection with the Program, I may reveal or relate, and other parties (including, without limitation, other participants, Producer, the host of the Program (if any), and Network) may reveal or relate information about me of a personal, private, surprising, defamatory, disparaging, embarrassing or unfavorable nature, and that my actions and the actions of others participating in the Program may be embarrassing or of an otherwise unfavorable nature that may be factual or fictional. I further understand that my appearance, depiction, and portrayal in and in connection with the Program or otherwise, and my actions and the actions of others displayed in and in connection with the Program or otherwise, may be disparaging, defamatory, embarrassing or of an otherwise unfavorable nature, may expose me to public ridicule, humiliation or condemnation, and may portray me in a false light. I acknowledge and agree that Producer, Network, and any entity that sponsors, advertises in, exhibits or otherwise exploits the Footage and Materials, the Program or any other production, and any of their licensees, successors and assigns, shall have the right (but not the obligation): (a) to include any such information and any such appearance, depiction, portrayal, actions and statements in the Program or in any other exhibition or exploitation of the Footage and Materials, and in any and all Advertisements; and (b) to exhibit, broadcast and otherwise exploit the Footage and Materials, the Program, and the Advertisements containing any such information and any such appearance, depiction, portrayal or actions, to the maximum extent permitted by law. NOTWITHSTANDING ANYTHING CONTAINED IN THIS PARAGRAPH, PRODUCER SHALL NOT DISCLOSE OR INCORPORATE IN THE PROGRAM, ANY MEDICAL INFORMATION OBTAINED ABOUT ME, EXCEPT (i) WHERE SUCH INFORMATION IS DISCLOSED OR INCLUDED IN THE PROGRAM BY ME OR ANY OTHER ON-CAMERA PARTICIPANT IN THE PROGRAM, (ii) AS OTHERWISE PERMITTED IN PARAGRAPH 16 HEREUNDER, (iii) WHERE SUCH INFORMATION IS PUBLICLY AVAILABLE, OR (iv) WITH MY CONSENT OR AS OTHERWISE PERMITTED BY LAW. I understand and acknowledge that, while such conduct might otherwise constitute an actionable tort, I have freely and knowingly consented to such conduct. The waivers, releases and indemnities in this Agreement and any other agreement that I have executed or that I may execute in connection with the Program and any other production expressly apply to any such inclusion and exploitation. Further, my participation in the Program may cause me to be exposed to conversations, banter, and behavior of other participants that may contain explicit references to sex, age, gender, race, religion, sexual orientation, national origin, disability, marital status, violence, and other topics that could be considered offensive. I freely and knowingly consent to being in an environment where such conversations, banter and behavior may take place. However, I will inform Producer immediately if I feel harassed by, threatened by, or uncomfortable with the behavior of any other individual connected with the production of the Program at any time, and I understand that I will not be penalized or retaliated against, in any way, for doing so.

10.      I understand and agree that the nature of the Program is such that, for dramatic effect or other creative purposes, other than with respect to Producer's obligations in this Agreement, Producer and Network may make certain misrepresentations to me and others prior to and during the course of my participation hereunder (including prior to my signing of this Agreement), which misrepresentations may relate to any and all topics of every kind and nature whatsoever. I consent and agree to, and assume all risks of, the foregoing acts and omissions regardless of whether they may infringe my rights or give rise to any Claim (as defined in paragraph 20) in the absence of my express consent and agreement.

Notwithstanding the personal and private information the Unsigned Arbitration Form permits the Corporate Defendants to reveal about the signees, it also permits Corporate Defendants' employees/agents to defame and disparage signees which "may expose [them] to public ridicule, humiliation or condemnation, and may portray [them] in a false light." The clauses acknowledge that their conduct "constitute[s] an actual tort" but requests a waiver and permits Corporate Defendants to "make certain misrepresentations to [the signees] and others prior to and during the course of [their] participation (*including prior to [the signees] signing of this Agreement*)."

Plaintiff's counsel is perplexed as to how any of the above clauses, specifically which permits sophisticated billion dollar entities to make any misrepresentations, including about the contract in which it is requesting a lay person to sign, could be construed as anything but unconscionable.

Additionally, Paragraph 12 permits the Corporate Defendants to record signees with concealed cameras or other devices, "including in areas in which a person under other circumstances might have a reasonable expectation of privacy." Exhibit 2. It further requires the signees' "express, unconditional and irrevocable permission [for the Corporate Defendants] to *fully exploit* all materials made using any type of filming or recording equipment . . . irrespective of whether the making or exhibition of such materials might constitute a breach of any rights of privacy [the signee] otherwise might have. . . ." Exhibit 2 (emphasis added). This agreement seemingly attempts to waive most privacy rights an individual has in favor of the Corporate Defendants. Certainly no reasonable person would agree to these terms nor would a fair and honest person accept them.

Plaintiff's counsel does not concede that the above additional clauses are the only unconscionable clauses contained in the Unsigned Arbitration Form. Instead, for brevity, some of the most prominent and noticeable clauses were included. What the above clauses reflect, however, is a complete unconscionable contract that is unarguably one-sided as it permits the Corporate Defendants to essentially lie, reveal private information regarding signees, and commit illegal acts with hopes that said agreement favors the Corporate Defendants with the already discussed mediation, arbitration, and choice-of-law/venue clauses. Especially taken as a whole, the Court should find this entire agreement unenforceable as it contains numerous, and cumulative unconscionable clauses.

**C.    Plaintiff was under duress if she entered into an agreement with Corporate Defendants.**

If the Court finds that Plaintiff entered into an agreement with Corporate Defendants, Plaintiff was under duress when entering the same and therefore, such agreements should be unenforceable.  Duress is a "a condition of mind produced by improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or form a contract not of his own volition." *Phillips v. Baker*, 284 S.C. 134, 325 S.E.2d 533 (1985) (quoting *Cherry v. Shelby Mut. Plate Glass & Cas. Co.*, 191 S.C. 177, 4 S.E.2d 123 (1939)).  To establish a contract was made through duress, a person must prove they were coerced, put in such a fear that they were deprived of the mind essential to make a contract, and that the contract was obtained as a result of that state of mind.  *See Holler v. Holler*, 364 S.C. 256, 267, 612 S.E.2d 469, 475 (Ct. App. 2005) (citations omitted).

In the present action, Plaintiff's testimony establishes she was under duress when entering into any alleged agreement with Corporate Defendants.   Plaintiff confirms that, in her job and occupation as a nanny for Defendant Ravenel, "it was almost inevitable [she] would be captured on film at some point." Exhibit 1.  Further, she explains being "caught off guard" prior to signing any forms as she "did not know filming would be taking place" at that time "nor did [she] know [her] appearance for filming would be required." *Id.*  Moreover, she "hesitantly" signed forms for Corporate Defendants because she "was concerned for Thomas Ravenel's and Kathryn Dennis' child . . . [and also concerned] that [she] could lose [her] job . . . if [she] refused to sign the same." *Id.*  Her affidavit is clear that she was coerced into entering into any agreements as she was unaware her presence was required.  Further, she was fearful and concerned for Defendant Ravenel's child and the possibility of losing her job, and as a result of such fear and concern, she may have signed forms for the Corporate Defendants.  Moreover, at the time of filing of this document, Corporate

Defendants have not produced any person who allegedly witnessed Plaintiff entering any agreements that could dispute Plaintiff's account. As a result, this Court should find that any agreement Plaintiff entered into with Corporate Defendants was a result of duress, and therefore, Corporate Defendants' Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court deny Corporate Defendants' Motion.

Respectfully submitted,

**COBB DILL & HAMMETT, LLC**

BY _____
Ryan C. Andrews
S.C. Bar No.: 101104
Cobb Dill & Hammett, LLC
222 W. Coleman Blvd.
Mt. Pleasant, SC 29464
(843) 936-6680 (p)
(843) 279-3177 (f)
randrews@cdhlawfirm.com

**ATTORNEY FOR THE PLAINTIFF**

Mt. Pleasant, South Carolina
Aug 23          , 2019

# EXHIBIT 1
# (Affidavit of Dawn Ledwell)

IN THE STATE OF SOUTH CAROLINA   )
COUNTY OF CHARLESTON   )

)

Dawn Ledwell,

                          Plaintiff(s),

          v.

Thomas Ravenel; Haymaker Content LLC;
Bravo Media Productions, Inc.;
NBCUniversal Media, LLC; Comcast
Corporation,

                      Defendant(s).

IN THE COURT OF COMMON PLEAS
FOR THE 9TH JUDICIAL CIRCUIT
CASE NO: 2018-CP-10-5824

**AFFIDAVIT OF DAWN LEDWELL**

Personally appeared before me, Dawn Ledwell, who, after being duly sworn states as follows:

1. My name is Dawn Ledwell and as of the date of signing this affidavit, I am a resident of the State of North Carolina.

2. It is my understanding that the named corporate entities in this lawsuit have alleged that I agreed to mediate, arbitrate, and/or subject myself to the jurisdiction of the State of New York based upon two separate agreements I allegedly signed.

3. It is also my understanding that the named corporate entities have alleged that this lawsuit stems from my participation on the television show, "Southern Charm."

4. Prior to my appearing on the television show "Southern Charm," I was employed by Thomas Ravenel and Kathryn Dennis as a nanny for their infant daughter. I was later a nanny for their infant son after he was born.

5. Prior to my appearing on the television show "Southern Charm," I was paid only by Thomas Ravenel and/or Kathryn Dennis for my nannying services.

6. I was never hired by Thomas Ravenel or Kathryn Dennis to appear on the television show

1

"Southern Charm." My sole job responsibilities were for the care of their children.

7. Given the frequency of filming and my schedule as a nanny for Thomas Ravenel's and Kathryn Dennis' children, it made my appearance on the television show "Southern Charm" almost inevitable.

8. Because of the frequency of filming near my presence, I was approached about appearing on the television show "Southern Charm" in my role as a nanny for Thomas Ravenel's and Kathryn Dennis' children.

9. I was initially uncomfortable with the spotlight cast by participating in the television program "Southern Charm," but appeared on the show because the constant presence of the cameras during filming meant that it was almost inevitable that I would be captured on film at some point during the execution of my duties as a nanny.

10. I recall production crew for the television show "Southern Charm" approaching me on two separate occasions about appearing on the television show and requesting my consent for the same. Both occasions occurred while serving as a nanny for Thomas Ravenel's and Kathryn Dennis' child and while I was caretaking for them at Brookland Plantations.

11. I recall being initially caught off guard as I did not know filming would be taking place at Brookland Plantations at that time nor did I know my appearance for filming would be required. I recall being asked to sign forms for appearing on "Southern Charm" prior to filming by a member of the production crew.

12. I was not given an opportunity to read, consult, or otherwise seek counsel for the forms I was asked to sign.

13. I was present at Brookland Plantations at the time of signing the forms for the sole purpose of taking care of Thomas Ravenel's and Kathryn Dennis' child as that was my occupation

2

and only source of income.

14. I hesitantly signed forms for the production of "Southern Charm" as I was concerned for Thomas Ravenel's and Kathryn Dennis' child; additionally, I was concerned that I could lose my job as a nanny for Thomas Ravenel and Kathryn Dennis if I refused to sign the same.

15. I do not have a legal background of any kind and did not understand any potential ramifications of signing any forms given to me by production crew members of "Southern Charm;" rather, my only concerns were for the wellbeing of Thomas Ravenel's and Kathryn Dennis' child, which was my occupation and what I was hired to do.

16. I have never received any benefit of any kind from any of the corporate entities in this lawsuit in exchange for any document I allegedly signed.

17. Any compensation I received by any of the named Defendants in this matter at any time was compensation solely for the purpose of providing nannying services for Thomas Ravenel and Kathryn Dennis.

18. While I do recall signing some sort of document presented to me by one of the members of the crew on one or more occasions, I was not given a copy of any documents I allegedly signed and therefore am unable to verify whether it is my signature or initials on any forms any of the corporate entities purport to have. It is also my understanding that any fully executed documents purporting to bear my signature or initials have not been shared with my counsel or the court.

19. Any documents that I allegedly signed for the named corporate entities was hastily signed as I was concerned solely for Thomas Ravenel's and Kathryn Dennis' children as it was my occupation at the time and what I was hired to do.

20. I never agreed to mediate, arbitrate, release any parties, or agree to litigate any matters against any Defendant in the State of New York.

21. I have only visited the State of New York two times in my life. Once was when I was a minor. The other visit was with my mother. Neither visit to the State of New York was for anything pertaining in any way to the television show, "Southern Charm," or my employment as the nanny for Thomas Ravenel's and Kathryn Dennis' children.

22. It would be greatly burdensome for me to be required to litigate the matters alleged in this lawsuit in the State of New York as all matters took place in the State of South Carolina.

FURTHER AFFIANT SAY NOT!

_____
Dawn Ledwell

SWORN to before me this

_21st_ day of _August_ , 2019.

_____ (L.S.)
Notary Public for _North Carolina_
My commission expires: _January 31st, 2022_

4

# EXHIBIT 2
# (Unsigned Arbitration Form)

## APPEARANCE RELEASE FORM, ARBITRATION PROVISION AND VOLUNTARY PARTICIPATION AGREEMENT

### THIS IS A LEGAL DOCUMENT AFFECTING YOUR RIGHTS AND RESPONSIBILITIES
### PLEASE READ IT CAREFULLY BEFORE SIGNING

1.      I understand that HAYMAKER CONTENT, INC. ("Producer") is producing the television program tentatively entitled *"Southern Charm"* (the "Program"), and that Producer would like for me to voluntarily participate in the production of the Program and engage in all activities associated with my participation in the Program, including (without limitation) activities that may be hazardous (the "Activity"). In connection with my participation in the Activity, I hereby grant to Producer the right to take motion and still pictures of me and record my voice and any sounds made by me, and to obtain other information about me, including but not limited to my name, likeness, photograph, voice, dialogue, sounds, biographical information, personal characteristics and other personal identification (collectively, the "Footage and Materials"), and to use the Footage and Materials in and in connection with the development, production, distribution and exploitation of the Program and any other production, and in the advertisements, merchandising, publicity, and promotions for the Program and any other production and for any entity that may sponsor, advertise in or exhibit in any manner the Program, the Footage and Materials, or any such other production (the "Advertisements"). The Footage and Materials, the Program, and the Advertisements may be exploited throughout the universe at any time, in perpetuity, in any and all media, now known and hereafter devised, without any monetary compensation to me whatsoever. The rights granted herein shall also include the right to edit, delete, dub and fictionalize the Footage and Materials, the Program, and the Advertisements as Producer sees fit in Producer's sole discretion.

2.      I agree to participate in connection with the production of the Program and related materials as and to the extent requested by Producer on such dates and at such locations as Producer shall designate in its sole discretion, and which dates and locations Producer may change in its sole discretion. The Footage and Materials shall also include any and all material that I may create, write, provide or contribute to in connection with the Program at any time, including, without limitation, personal journals, photographs, webisodes, vlogs, blogs, video diaries, e-mails, text/picture messages, and promotional/advertising spots for the Program, the exhibitor of the Program, its advertisers and sponsors, and any of their respective products and services. Producer shall be the sole and exclusive owner of all rights (including, without limitation, copyrights) in and to the Footage and Materials. Any and all such Footage and Materials shall be deemed "works made for hire" specially ordered as part of a motion picture or other audio-visual work, and I waive the exercise of any "moral rights," *"droit moral,"* and any analogous rights, however denominated, in any jurisdiction of the world, which I have. To the extent I retain any interest in the Footage and Materials, I hereby grant and assign to Producer all rights of any nature in and to all such Footage and Materials. Furthermore, the rights granted to Producer include any so-called "rental and lending" or similar rights and any and all allied, ancillary and subsidiary rights (including, without limitation, remake, sequel, theatrical, digital, television, radio, publishing, merchandising, soundtrack album and other similar rights) for any purpose, by and in any media whether now known or hereafter devised, throughout the universe, in perpetuity, as part of the Program or otherwise.

3.      I acknowledge and agree that Producer is under no obligation to select me to participate in the Activity or to include the Activity or the Footage and Materials in the Program or in any such other production, or in the Advertisements, or to broadcast, exhibit, transmit, distribute or otherwise exploit the Footage and Materials, the Program or the Advertisements in any manner or media.

4.      I represent and warrant the following: (a) I am not currently, and during one (1) year from today do not intend to be, a candidate for any public office; (b) my appearance in the Program is not a performance and is not employment and is not subject to any union or guild collective bargaining agreement, and does not entitle me to wages, salary, corporate benefits, unemployment or workers' compensation benefits, or other compensation under any such collective bargaining agreement or otherwise; (c) I am not under any obligation to any television network, producer, or other party which would in any way prohibit or restrict me from participating in the Program as contemplated hereby or performing any of my obligations herein; (d) my participation in the Program and the use of the Footage and Materials by Producer or anyone else will not violate or infringe upon any rights of any third party and will not cause me to be in

Initial_____

breach or violation of any agreements to which I am a party; (e) I am legally eligible to live in the United States and work in the United States on the Program, or I am in the process of attempting to obtain lawful authorization so that I will be eligible to live in the United States and work in the United States on the Program by the time pre-production begins on or around August 1, 2015 and (f) I will follow and obey all rules made by Producer in connection with the Program. Based on my understanding of the physical, emotional and/or mental requirements for participating in the Program, I represent that I am able to perform the essential functions of a participant in the Program, including without limitation, the Activity, with or without reasonable accommodation. To the extent that I determine during the Program that I am unable to perform the essential functions of a participant, I promise to inform Producer as soon as possible either (i) that I cannot perform the essential functions, or (ii) how I can perform the essential functions with or without reasonable accommodation. I understand that I am solely responsible for determining whether I am physically, emotionally, and mentally able to participate in the Program.

5.      I acknowledge that during certain events and activities in connection with the Program alcohol may be available for consumption. I agree that if I partake in the consumption of alcohol at any time during my participation in the Program, that I will do so only if I am at least 21 years of age and only in moderation. Further, I represent and warrant that I will not drive a car after I have consumed alcohol until such time as my blood-alcohol level is deemed lawful. In addition, I agree that I assume any and all risk associated with my consumption of alcohol and being in the presence of others who may have consumed alcohol. I expressly agree and affirm that the waivers, releases and indemnities in this Agreement and any other agreement that I have executed or that I may execute in connection with the Program expressly apply to any act or occurrence of any nature resulting from my consumption of alcohol during my participation in the Program.

6.      I understand that it may be a federal offense, unless disclosed to Producer prior to the exhibition of the Program, if any, to do any of the following: (a) give or agree to give any member of the production staff and anyone associated in any manner with the Program or any representative of Producer any portion of my compensation (if any) or anything else of value to arrange my appearance in the Program or the Advertisements; or (b) accept or agree to accept anything of value to promote any product, service or venture on the air or to use any prepared material containing such a promotion. I represent and warrant that I gave nothing of value nor did I agree to give anything of value to anyone so I could be in the Program or the Advertisements. I know that Producer does not permit it and that it may be a federal offense not to tell Producer if I had. I shall notify Producer and any network on which the Program will air immediately if any person attempts or has attempted to induce me to do anything in violation of the foregoing or which is in any way dishonest. I shall not mention or "plug" any product, service, venture or thing on the Program whatsoever, except insofar as I may be asked to describe or explain my business as part of the Program. Any references to my business shall be subject to the approval of Producer and one or more television networks or cable platforms of NBCUniversal Media, LLC ("Network") and Producer and Network shall not be obligated to include any such references in the Program.

7.      I understand that I will not be paid for participating in the Activity, for appearing in the Program, in the Advertisements, and in the Footage and Materials, for giving Producer the rights listed in this Agreement, or for Producer's exercise of any and all of the rights listed in this Agreement. I hereby waive any and all rights I may have to any compensation whatsoever. I acknowledge and agree that a significant element of the consideration I am receiving under this Agreement is the opportunity for publicity that I will receive if Producer includes the Footage and Materials in the Program or in the Advertisements. I know Producer will incur significant costs and expenses in reliance upon this Agreement and would suffer significant costs and expenses as a result of any discontinuation of my participation or inability to participate in the Program at any time after the execution of this Agreement, so I will not attempt to cancel it or to revoke any of the rights granted to Producer herein. I acknowledge that I am a volunteer and that I shall not be deemed to be an employee of Producer, nor shall I be entitled to the benefits provided by Producer to its employees. To the extent that I receive anything of value in connection with the Program, including but not limited to goods and services, I shall be responsible for all taxes and other obligations that are or may become due from me.

8.      If I appear in the Program, from the date of this Agreement through six (6) months after the initial exhibition of the final episode of the Program in which I appear, I shall not participate in any unscripted, "reality-based" program in which I appear as myself without Network's written consent. The foregoing shall not apply to any

Initial_____

appearance by me as a Performer. As used herein, the term "Performer" shall be defined to include only those services rendered by performers for which they receive compensation under any applicable guild agreements.

9.      To the maximum extent permitted by law, Producer and Network shall have the right to use all information obtained about me in connection with the Program or otherwise. Without in any way limiting the foregoing, I understand that in and in connection with the Program, I may reveal or relate, and other parties (including, without limitation, other participants, Producer, the host of the Program (if any), and Network) may reveal or relate information about me of a personal, private, surprising, defamatory, disparaging, embarrassing or unfavorable nature, and that my actions and the actions of others participating in the Program may be embarrassing or of an otherwise unfavorable nature that may be factual or fictional. I further understand that my appearance, depiction, and portrayal in and in connection with the Program or otherwise, and my actions and the actions of others displayed in and in connection with the Program or otherwise, may be disparaging, defamatory, embarrassing or of an otherwise unfavorable nature, may expose me to public ridicule, humiliation or condemnation, and may portray me in a false light. I acknowledge and agree that Producer, Network, and any entity that sponsors, advertises in, exhibits or otherwise exploits the Footage and Materials, the Program or any other production, and any of their licensees, successors and assigns, shall have the right (but not the obligation): (a) to include any such information and any such appearance, depiction, portrayal, actions and statements in the Program or in any other exhibition or exploitation of the Footage and Materials, and in any and all Advertisements; and (b) to exhibit, broadcast and otherwise exploit the Footage and Materials, the Program, and the Advertisements containing any such information and any such appearance, depiction, portrayal or actions, to the maximum extent permitted by law. NOTWITHSTANDING ANYTHING CONTAINED IN THIS PARAGRAPH, PRODUCER SHALL NOT DISCLOSE OR INCORPORATE IN THE PROGRAM, ANY MEDICAL INFORMATION OBTAINED ABOUT ME, EXCEPT (i) WHERE SUCH INFORMATION IS DISCLOSED OR INCLUDED IN THE PROGRAM BY ME OR ANY OTHER ON-CAMERA PARTICIPANT IN THE PROGRAM, (ii) AS OTHERWISE PERMITTED IN PARAGRAPH 16 HEREUNDER, (iii) WHERE SUCH INFORMATION IS PUBLICLY AVAILABLE, OR (iv) WITH MY CONSENT OR AS OTHERWISE PERMITTED BY LAW. I understand and acknowledge that, while such conduct might otherwise constitute an actionable tort, I have freely and knowingly consented to such conduct. The waivers, releases and indemnities in this Agreement and any other agreement that I have executed or that I may execute in connection with the Program and any other production expressly apply to any such inclusion and exploitation. Further, my participation in the Program may cause me to be exposed to conversations, banter, and behavior of other participants that may contain explicit references to sex, age, gender, race, religion, sexual orientation, national origin, disability, marital status, violence, and other topics that could be considered offensive. I freely and knowingly consent to being in an environment where such conversations, banter and behavior may take place. However, I will inform Producer immediately if I feel harassed by, threatened by, or uncomfortable with the behavior of any other individual connected with the production of the Program at any time, and I understand that I will not be penalized or retaliated against, in any way, for doing so.

10.      I understand and agree that the nature of the Program is such that, for dramatic effect or other creative purposes, other than with respect to Producer's obligations in this Agreement, Producer and Network may make certain misrepresentations to me and others prior to and during the course of my participation hereunder (including prior to my signing of this Agreement), which misrepresentations may relate to any and all topics of every kind and nature whatsoever. I consent and agree to, and assume all risks of, the foregoing acts and omissions regardless of whether they may infringe my rights or give rise to any Claim (as defined in paragraph 20) in the absence of my express consent and agreement.

11.      If requested by Producer, I agree to execute a location agreement, which shall grant Producer and Network the right (without limitation) to enter upon and use my home for the purpose of photographing, filming and recording the Program, as further detailed in such location agreement. Further, if requested by Producer, I agree to use reasonable, good faith efforts to assist Producer in obtaining appearance releases from my family, friends, employees and any other individuals in my life, in connection with the Program.

12.      **Producer and Network shall have the right to record me using concealed cameras or other devices.** Film, tape, audio, videotape, and other recordings of my actions and statements, and the actions and

Initial_____

statements of the other participants in the Program, may be made using concealed or hidden cameras, and other devices located throughout the filming locations, including in areas in which a person under other circumstances might have a reasonable expectation of privacy. **I consent to any such recordings made using concealed cameras or any other devices. I need not be given any further notice of the use of concealed or hidden cameras and other devices being used to record my actions and statements. In addition, I give my express, unconditional and irrevocable permission to Producer to fully exploit all materials made using any type of filming or recording equipment (including concealed cameras and other devices), irrespective of whether the making or exhibition of such materials might constitute a breach of any rights of privacy I otherwise might have in the absence of this express Agreement, and irrespective of whether such materials violate any rights I otherwise would hold or might hold in the future. NOTWITHSTANDING THE FOREGOING, NEITHER PRODUCER NOR NETWORK SHALL MAKE AUDIO AND/OR VISUAL RECORDINGS OF ME (INCLUDING USING CONCEALED OR HIDDEN RECORDING DEVICES) IN BATHROOMS, LOCKER-ROOMS OR ANY ROOMS DESIGNATED BY PRODUCER FOR CHANGING CLOTHES, WITHOUT MY CONSENT; HOWEVER, TO THE MAXIMUM EXTENT PERMITTED BY LAW, I SHALL BE DEEMED TO HAVE CONSENTED TO THE MAKING OF RECORDINGS IN ANY SUCH LOCATION IF I ALLOW CAMERAS TO FILM ME IN SUCH LOCATION, OR I WEAR OR OTHERWISE CARRY A RECORDING DEVICE WHILE I AM PRESENT IN SUCH LOCATION. (For the avoidance of doubt, all such materials shall constitute "Footage and Materials" as defined above.)**

13.   **CONFIDENTIALITY AND PUBLICITY**.  All publicity in connection with the Program is under the sole control of Network and subject to the following terms and conditions of confidentiality and publicity:

(a)  Except as otherwise permitted by Network, I shall not disclose to any other participant or other third party at any time (i.e., prior to, during, or after the taping or exhibition of the Program), and shall keep in the strictest confidence, any information or materials concerning or relating to the Program, the Program participants, the location(s) of the Program, the events contained in the Program or the outcome of any event in the Program, that I read, hear or otherwise acquire or learn in connection with or as a result of my participation on the Program (collectively, the "Confidential Information") unless and until such Confidential Information is specifically disclosed in the exhibition of the Program, if ever.  I acknowledge and agree that the Confidential Information is confidential and the exclusive property of Producer or Network.  At no time will I ever, directly or indirectly, divulge in any manner, or use or permit others to use, any of the Confidential Information, including without limitation, the terms and conditions of this Agreement. My obligations with respect to confidentiality as set forth in this paragraph shall continue in perpetuity or until terminated by Network in writing.  In no event shall I have the right to terminate my confidentiality obligations under this Agreement.

(b)  Without limiting the foregoing, I agree that without the prior approval of Network in each instance, I shall not: (i) discuss the Program or my participation therein with any third party; (ii) use or render services in connection with any material that uses any names, logos, trade names or trademarks of Producer, Network or any related or affiliated entity of either of the foregoing (including the title of the Program); (iii) make public comment, create or disseminate (or render services in connection with) any content or material that (A) makes negative, derogatory or otherwise unfavorable statements about or otherwise denigrates or disparages any of the Released Parties (as defined in paragraph 20), or (B) parodies the Program or my participation therein; (iv) advertise or promote my participation in the Program (other than as requested by Producer or Network), or receive or generate any monetary advantage in connection with my participation in the Program; or (v) authorize anyone else to do any of the foregoing. Notwithstanding the foregoing, I may make incidental, non-derogatory mention of the Program only in my personal publicity (e.g., "I was on *Southern Charm*") subject to paragraph 13(a); and provided however, that I shall not disclose publicly that I am participating in the Program or any new cycle thereof until after Network has announced or exhibited my appearance in the foregoing.

(c)  I recognize and acknowledge that given the unique nature of the Program, its success depends upon confidentiality.  As a result, any actual or anticipated breach by me of any of the confidentiality and publicity provisions of this Agreement would cause Producer and Network irreparable injury and damage that cannot be reasonably or adequately compensated by damages in an action at law.  I hereby expressly agree that Producer and

Initial_____

Network shall be entitled to injunctive and other equitable relief (without posting any bond) to prevent or cure any breach or threatened breach of the confidentiality provisions of this Agreement by me. I also recognize that proof of damages suffered by Producer and Network in the event that I breach any of these confidentiality and publicity provisions will be costly, difficult, and inconvenient to ascertain. Accordingly, I agree to pay Producer and Network the sum of Five Hundred Thousand Dollars ($500,000) per breach plus disgorgement of any income that I may receive in connection with my breach as liquidated damages in the event that I breach any of the confidentiality provisions of this Agreement. I agree that Five Hundred Thousand Dollars ($500,000) plus disgorgement of any income that I may receive in connection with my breach is a reasonable estimate of the amount of damages that Producer and Network are each likely to suffer in the event that I breach any of these provisions, considering all of the circumstances existing as of the date of this Agreement. Furthermore, I will defend, indemnify and hold harmless Producer, Network, their parent, subsidiary and affiliated companies, and each of their respective officers, directors, agents, representatives and employees, from and against any and all claims, actions, damages, liabilities, losses, costs and expenses (including, without limitation, attorneys' fees) that in any way arise out of or result from my breach of any of the confidentiality and publicity provisions of this Agreement.

14.     I authorize Producer and Network to, in accordance with applicable law, investigate, access and collect information about me and any of the statements made by me in this Agreement or otherwise in connection with my application (if any) to participate in the Program. I authorize Producer and Network to secure information from my current and former employers, associates, family members, educational institutions, government agencies, and any references I have provided or that are developed by or for Producer or Network, and I authorize such parties to provide information concerning me. I unconditionally and irrevocably release and forever discharge all such parties and persons from any and all claims, actions, damages, liabilities and losses arising out of or in connection with such investigations. I specifically authorize investigation of my employment records and government records (including, but not limited to, my motor vehicle records, criminal records, military records and consumer reports). Any information obtained by Producer or Network may be used for (a) evaluation of my application to participate in the Program, (b) selecting participants in the Program, and (c) any other purposes as designated by Producer or Network in their sole discretion to the maximum extent permitted by law. Without in any way limiting the foregoing, any such information may be used, broadcast, exhibited, distributed, advertised, publicized, promoted or otherwise exploited as part of the Program or otherwise to the maximum extent permitted by law. Furthermore, I understand and agree that any such information may be disclosed to other participants in the Program and may be disclosed on-camera, with the exception of medical information obtained during this process, except (i) where such information is disclosed or included in the Program by me or any other on-camera participant in the Program, (ii) where such information is publicly available, or (iii) with my consent or as otherwise permitted by law.

15.     In case of an emergency, I authorize Producer to arrange for or otherwise provide medical assistance to me as Producer may determine to be necessary, pending receipt of a specific consent from me, and to the maximum extent permitted by law, I understand and agree that any injury or health related matter I may suffer and any treatment I may receive is part of the Footage and Materials, and may be filmed and broadcast, exhibited, and otherwise exploited by Producer and Network as with all other Footage and Materials.

16.     In connection with my participation in the Program, I shall not infringe upon or violate the rights of any other person or entity, shall not cause or threaten to cause immediate or future injury or harm to any other person or any property, and shall abide by all applicable laws, rules, regulations, codes and ordinances. I understand that violating any such laws, rules, regulations, codes and ordinances may result in the reporting of such violations to applicable law enforcement entities and the imposition of criminal and civil penalties for which I will be solely responsible. I agree to refrain at all times from all forms of violence against and intimidation of, or immediate or future threats of injury or harm to any other person. I acknowledge and agree that Producer has the right, but not the obligation, to the maximum extent permitted by law, at all times to enter into any part of any location in order to monitor or preserve order or the well-being or safety of participants or others. Further, to the maximum extent permitted by law, I consent to Producer's use of force to restrain me, if my behavior and actions create circumstances that, in the sole judgment of Producer, pose a threat of injury to myself or to anyone else; provided that I understand that Producer has no duty or obligation to restrain me or any other person. I knowingly and voluntarily accept all risks to my person or property arising from my interaction with participants in the Program (including, without limitation,

Initial_____

from my choice to engage in any relationship with any other person or persons) before, during or after my participation in the Program, to the maximum extent permitted by law.

17.    The Program may involve activities that are or may become hazardous and dangerous and that may expose me to risks of physical, emotional, and mental stress or injury whether or not I participate in the activities. I understand the risks of participating in such activities, and while conduct that gives rise to such situations might otherwise constitute an actionable tort or give rise to other claims or causes of action, I have freely consented to such conduct and have assumed the risks thereof. I further understand that Producer does not make any representations or warranties about other participants in the Program or of any other person whom I may encounter in connection with my participation in the Program, including but not limited to, the mental or physical health of any such person. **PRODUCER HAS MADE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND REGARDING MY QUALIFICATIONS, ABILITY OR FITNESS TO PARTICIPATE IN THE PROGRAM OR REGARDING OTHERS' QUALIFICATIONS, ABILITIES OR FITNESS TO PARTICIPATE IN THE PROGRAM, AND THE WAIVERS, RELEASES AND INDEMNITIES CONTAINED IN THIS AGREEMENT AND ANY OTHER AGREEMENT THAT I HAVE EXECUTED OR MAY EXECUTE IN THE FUTURE RELATED TO THE PROGRAM EXPRESSLY APPLY TO MY PARTICIPATION IN OR PRESENCE AROUND ANY SUCH ACTIVITIES OR PERSONS.**

18.    Producer, directly or through others, may provide various services and equipment in connection with the Program. No one has made any warranties whatsoever with respect to any such equipment and services (including, but not limited to, qualifications, certifications or expertise of any individual providing such services), and there are no warranties of any kind from anyone regarding fitness or suitability for use of any such equipment and services for any purpose in connection with the Program. I waive any right I otherwise might have to warnings or instructions regarding any aspect of the Program or any equipment or services utilized in connection with the Program.

19.    The foregoing is not an exhaustive list of the risks, hazards and dangers to which I may be exposed as a result of my participation in the Program. I accept and assume any and all risks, hazards and dangers regardless of whether they are detailed in this Agreement, and the waivers, releases and indemnities that I have executed or may execute apply to all such risks, hazards and dangers.

20.    **RELEASE, AGREEMENT NOT TO SUE AND INDEMNITY. TO THE MAXIMUM EXTENT PERMITTED BY LAW, ON BEHALF OF MYSELF AND MY HEIRS, NEXT OF KIN, SPOUSES, GUARDIANS, EMPLOYEES, AGENTS, CONTRACTORS, REPRESENTATIVES, EXECUTORS, ADMINISTRATORS, SUCCESSORS, LICENSEES AND ASSIGNS (COLLECTIVELY, THE "RELEASING PARTIES"), I HEREBY IRREVOCABLY AND UNCONDITIONALLY RELEASE AND FOREVER DISCHARGE EACH OF THE RELEASED PARTIES (AS DEFINED BELOW) FROM ANY AND ALL CLAIMS, ACTIONS, COMPLAINTS, DAMAGES, DEMANDS, ALLEGATIONS, SUITS, LIABILITIES, LOSSES, LIENS, COSTS, EXPENSES AND INJURIES OF ANY KIND WHATSOEVER, (COLLECTIVELY, "CLAIMS") (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND COSTS AND EXPERT WITNESS FEES) DIRECTLY OR INDIRECTLY CAUSED BY, ARISING OUT OF, RESULTING FROM, OR RELATING TO, THE PROGRAM (INCLUDING, WITHOUT LIMITATION, MY PARTICIPATION THEREIN AND THE DEVELOPMENT, PRODUCTION, DISTRIBUTION OR EXPLOITATION THEREOF), THE ACTIVITIES AND LOCATIONS, FOOTAGE AND MATERIALS, OR THE EXERCISE OF ANY RIGHTS GRANTED HEREIN, ON ANY LEGAL OR EQUITABLE THEORY WHATSOEVER (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE, RIGHTS OF PRIVACY AND PUBLICITY, DEFAMATION, FALSE LIGHT, INFLICTION OF EMOTIONAL DISTRESS, COPYRIGHT AND OTHER INTELLECTUAL PROPERTY INFRINGEMENT) (COLLECTIVELY, THE "RELEASED CLAIMS"). TO THE MAXIMUM EXTENT PERMITTED BY LAW, I SHALL NOT SUE, INSTITUTE ANY OTHER PROCEEDINGS OR MAKE ANY CLAIM, AGAINST ANY OF THE RELEASED PARTIES ON THE BASIS OF ANY OF THE RELEASED CLAIMS. As used herein, the term "Released Parties" shall mean and refer to Producer, Network, all entities and platforms of NBCUniversal Media, LLC, any other licensees or assignees of the Program or the Footage and Materials, all other persons and entities participating in connection with the Program or otherwise connected to the Program, all parent, subsidiary, related and affiliated entities, licensees, successors, assigns, sponsors and advertisers of each of the foregoing, the respective directors, officers, principals, executives, on-air talent, employees, agents, contractors, partners, shareholders, representatives and**

Initial_____

members of each of the foregoing, and the respective heirs, next of kin, spouses, guardians, representatives, executors, administrators, successors, licensees and assigns of each of the foregoing. To the maximum extent permitted by law, I will defend, indemnify and hold the Released Parties harmless from any and all such claims, actions, damages, losses, liabilities, costs, expenses, injuries or causes of action, as well as all those that in any way are caused by, arise out of or result from any breach or alleged breach by me of any of the representations or warranties made by me in this Agreement and my knowingly unlawful, grossly negligent, reckless or other willful misconduct in connection with the Program.

21.     I acknowledge that there is a possibility that subsequent to the execution of this Agreement, I may discover facts or incur or suffer claims which were unknown or unsuspected at the time this Agreement was executed, and which if known by me at that time may have materially affected my decision to execute this Agreement. I acknowledge and agree that by reason of this Agreement, and the releases contained in the preceding paragraphs, I am assuming any risk of such unknown facts and such unknown and unsuspected claims.

22.     **MEDIATION & ARBITRATION. WHERE A CONTROVERSY, DISPUTE OR CLAIM ARISES BETWEEN ME, ON THE ONE HAND, AND ONE OR MORE OF THE RELEASED PARTIES, ON THE OTHER HAND, IN CONNECTION WITH MY PARTICIPATION IN THE PROGRAM (INCLUDING, WITHOUT LIMITATION, THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO MEDIATE AND ARBITRATE) (EACH A "DISPUTE") THAT CANNOT BE RESOLVED THROUGH DIRECT COMMUNICATIONS BETWEEN THE PARTIES TO SUCH DISPUTE, THEN SUBJECT TO THE REMAINDER OF THIS PARAGRAPH, SUCH DISPUTE SHALL BE RESOLVED BY WAY OF CONFIDENTIAL MEDIATION AND/OR ARBITRATION PURSUANT TO THE PROCEDURES OF JAMS AND ADMINISTERED BY JAMS OR ITS SUCCESSOR ("JAMS") IN ACCORDANCE WITH THE COMPREHENSIVE RULES AND PROCEDURES, INCLUDING THE OPTIONAL APPEAL PROCEDURE, OF JAMS OR ANY SUBSEQUENT VERSIONS OF THE FOREGOING (COLLECTIVELY, "JAMS RULES"), INCLUDING, WITHOUT LIMITATION THE RULES PROVIDING FOR LIMITED DISCOVERY AND OTHER EXCHANGE OF INFORMATION AND, TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE RULE PROVIDING THAT EACH PARTY SHALL PAY *PRO RATA* ITS SHARE OF JAMS FEES AND EXPENSES, AS EACH OF THE FOREGOING ARE MODIFIED BY THIS AGREEMENT. THE JAMS RULES ARE AVAILABLE AT WWW.JAMSADR.COM, AND A FURTHER COPY OF THE JAMS RULES SHALL BE PROVIDED TO ME BY PRODUCER UPON REQUEST. THE PARTIES TO ANY DISPUTE SHALL FIRST ENDEAVOR TO RESOLVE EACH DISPUTE THROUGH MEDIATION ADMINISTERED BY JAMS BEFORE COMMENCING ANY ARBITRATION. MEDIATION AND ARBITRATION SHALL BE CONDUCTED IN NEW YORK COUNTY. THE JAMS RULES FOR SELECTION OF MEDIATORS AND ARBITRATORS SHALL BE FOLLOWED, EXCEPT THAT THE MEDIATOR OR ARBITRATOR SHALL BE (i) AN EXPERIENCED MEDIATOR OR ARBITRATOR (AS APPLICABLE) LICENSED TO PRACTICE LAW IN NEW YORK, OR (ii) A RETIRED JUDGE. ANY APPELLATE PANEL SHALL CONSIST OF THREE NEUTRAL MEMBERS WHICH MEET THE FOREGOING REQUIREMENTS.**

**UPON THE CONCLUSION OF ANY ARBITRATION PROCEEDINGS, THE ARBITRATOR SHALL RENDER FINDINGS OF FACT AND CONCLUSIONS OF LAW AND A WRITTEN OPINION SETTING FORTH THE BASIS AND REASONS FOR ANY DECISION REACHED AND SHALL DELIVER SUCH DOCUMENTS TO EACH PARTY TO THE DISPUTE ALONG WITH A SIGNED COPY OF THE AWARD IN ACCORDANCE WITH THE NEW YORK CIVIL PRACTICE LAW AND RULES, § 7507. ANY ARBITRATION AWARD WITH RESPECT TO A DISPUTE SHALL BE FINAL AND BINDING UPON THE PARTIES TO SUCH DISPUTE.**

**THE PARTIES AGREE THAT, TO THE MAXIMUM EXTENT PERMITTED BY LAW, SUBJECT TO THE REMAINDER OF THIS PARAGRAPH, THE DAMAGES RECOVERABLE BY THE PARTIES TO ANY DISPUTE SHALL BE LIMITED TO ACTUAL DAMAGES, AND SUCH PARTIES WAIVE THE RIGHT TO SEEK, AND SHALL IN NO EVENT BE LIABLE FOR, PUNITIVE OR EXEMPLARY DAMAGES. THE ARBITRATOR SHALL NOT HAVE THE AUTHORITY TO GRANT ANY REMEDIES THE PARTIES TO**

Initial_____

ANY DISPUTE HAVE WAIVED HEREIN. FURTHER, I AGREE THAT GIVEN THE UNIQUE NATURE OF THE ENTERTAINMENT INDUSTRY, AND THE IRREPARABLE DAMAGE TO PRODUCER, NETWORK AND THEIR LICENSEES THAT WOULD RESULT FROM DELAYING OR PREVENTING THE EXHIBITION OF ANY PROGRAM PRODUCED HEREUNDER, I MAY NOT SEEK OR OBTAIN ANY INJUNCTIVE RELIEF THAT WOULD PREVENT ANY SUCH PARTIES FROM EXHIBITING, MARKETING, OR OTHERWISE EXPLOITING ANY PROGRAM PRODUCED HEREUNDER, OR OTHERWISE GRANTING ANY THIRD PARTY THE RIGHT TO DO ANY OF THE FOREGOING. NOTWITHSTANDING THE FOREGOING, I RECOGNIZE THAT GIVEN THE UNIQUE NATURE OF THE PROGRAM AND THE COMMERCIAL REALITIES OF THE ENTERTAINMENT INDUSTRY, WHICH RELIES UPON CONFIDENTIALITY AND INTELLECTUAL PROPERTY RIGHTS, ANY BREACH OF MY CONFIDENTIALITY OBLIGATIONS PURSUANT TO THIS AGREEMENT OR ANY INFRINGEMENT BY ME OF PRODUCER'S OR NETWORK'S INTELLECTUAL PROPERTY RIGHTS, WOULD CAUSE PRODUCER AND NETWORK IRREPARABLE INJURY AND DAMAGE THAT CANNOT BE REASONABLY OR ADEQUATELY COMPENSATED BY MONETARY DAMAGES IN AN ACTION AT LAW. ACCORDINGLY, NOTWITHSTANDING ANYTHING CONTAINED HEREIN, I AGREE THAT PRODUCER AND NETWORK SHALL BE ENTITLED TO SEEK AND OBTAIN INJUNCTIVE AND OTHER EQUITABLE RELIEF FROM A COURT OF COMPETENT JURISDICTION FOR ANY SUCH ACTUAL OR ANTICIPATED BREACH OR INFRINGEMENT.

TO THE EXTENT PERMITTED BY LAW (a) EACH PARTY TO A DISPUTE SHALL BE RESPONSIBLE FOR ITS OWN ATTORNEYS' FEES AND COSTS, AND (b) EXCEPT AS PROVIDED HEREIN, THE PREVAILING PARTY SHALL NOT BE ENTITLED TO ANY AWARD OF ANY SUCH FEES OR COSTS FROM THE OTHER PARTY. IF ANY PORTION OF THE DISPUTE RESOLUTION MECHANISM SET FORTH IN THIS PARAGRAPH 22 IS FOUND TO BE INVALID, ILLEGAL OR UNENFORCEABLE FOR ANY REASON, THAT PORTION SHALL BE SEVERED FROM THE REST AND SHALL NOT AFFECT THIS AGREEMENT TO RESOLVE ALL DISPUTES THROUGH MEDIATION AND ARBITRATION.

23.    Governing Law. This Agreement shall be construed and enforced in accordance with the internal, substantive law of the State of New York, applicable to contracts negotiated, executed, and fully performed within that State, regardless of where negotiation, execution and performance of this Agreement may actually occur and without regard to that state's conflict of laws provisions. To the extent that the arbitration provisions of this Agreement are not enforced or court proceedings are otherwise required, commenced or maintained, the parties submit to the *in personam* jurisdiction of the Supreme Court of the State of New York in New York County and the United States District Court for the Southern District of New York. The exclusive venue of any court proceedings shall be the appropriate state and federal courts in the State of New York. The parties hereto waive any and all objections that they may have as to jurisdiction or venue in any of the above-referenced courts. I agree that service by Registered Mail within or outside the State of New York shall constitute effective personal service on me for jurisdictional and appearance purposes.

24.    As used herein, "Producer" shall include Producer, its licensees, successors and assigns, and each of their respective parents, subsidiaries, and affiliates, and each of their respective officers, directors, shareholders, employees, agents, representatives, successors, licensees and assigns. Network is an express intended third party beneficiary of this Agreement, with full standing to enforce each, every, any and all of its provisions as if it was an express party thereto. I agree that Producer may license, assign, and otherwise transfer this Agreement and all rights granted by me to Producer under this Agreement to any person or entity.

25.    This is the complete and binding agreement between Producer and me, and it supersedes all prior understandings and communications, both oral and written, with respect to its subject matter. The illegality, invalidity or unenforceability of any provision of this Agreement shall in no way affect the validity or enforceability of any of the remainder of this Agreement, which shall be enforced to the maximum extent permitted by law. This Agreement cannot be terminated, rescinded or amended, except by a written agreement signed by both Producer and me. I shall execute such documents, and do such other acts and deeds as may be requested by Producer, Network or any licensee, successor or assign, to (a) evidence, effectuate or protect any of the rights granted to Producer and Network hereunder, or (b) evidence or support any of the representations or warranties made by me. This Agreement may be executed by

Initial_____

original, facsimile or electronic signature. Any signed copy of this Agreement delivered by facsimile or electronic transmission shall for all purposes be treated as if it had been delivered containing my original signature, and shall be binding upon me in the same manner as though an original signed copy had been delivered.

**I HAVE HAD AMPLE OPPORTUNITY TO READ, AND HAVE IN FACT READ, THIS ENTIRE AGREEMENT. I HAVE ALSO HAD AN OPPORTUNITY TO REVIEW IT WITH AN ATTORNEY OF MY CHOICE SHOULD I ELECT TO DO SO. I FULLY UNDERSTAND ALL OF MY RIGHTS, OBLIGATIONS, PROMISES AND AGREEMENTS. IN PARTICULAR, I UNDERSTAND THAT I AM GIVING UP CERTAIN LEGAL RIGHTS UNDER THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, MY RIGHT TO FILE A LAWSUIT IN COURT WITH RESPECT TO ANY CLAIM ARISING IN CONNECTION WITH THIS AGREEMENT.**

Signature: _____ Date: _____ Phone: _____

Print Name: _____ Date of Birth·: _____

Address: _____

---

· For verification purposes only pursuant to 18 U.S.C. §§ 2256 et seq.

Initial_____

IN THE STATE OF SOUTH CAROLINA    )
COUNTY OF CHARLESTON    )

Dawn Ledwell,

Plaintiff(s),

v.

Thomas Ravenel; Haymaker Content LLC;
Bravo Media Productions, Inc.;
NBCUniversal Media, LLC; Comcast
Corporation,

Defendant(s).

IN THE COURT OF COMMON PLEAS
FOR THE 9TH JUDICIAL CIRCUIT
CASE NO: 2018-CP-10-5824

**CERTIFICATE OF MAILING**

I certify that I have served a copy of the following document(s) on the individuals below named by hand delivery, electronic mail and/or first class postage pre-paid envelope in the United States mail at Mount Pleasant, South Carolina and addressed as follows:

James D. Smith, Jr., Esq.
Amy Y. Jenkins, Esq.
Danielle F. Payne, Esq.
McAngus Goudelock & Courie, LLC
PO Box 650007
Mt. Pleasant, SC 29465

Cameron Blazer, Esq.
Blazer Law Firm
1037 Chuck Dawley Blvd., D100
Mt. Pleasant, SC 29464

**Documents Served**

Plaintiff's Memorandum of Law in Opposition of Defendant's Motion to Dismiss
Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Amend and Correctly
        Designate Certain Parties

This 23rd day of August, 2019

Kelsey A. McCawley

1