IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| Dawn Ledwell, | CIVIL ACTION NO.: 2:19-cv-2815-RMG |
|---|---|
| Plaintiff(s), | |
| v. | |
| Thomas Ravenel; Haymaker Content LLC; Bravo Media Productions, Inc.; NBCUniversal Media, LLC; Comcast Corporation, | PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND |
| Defendant(s). | |

Plaintiff Dawn Ledwell, by and through undersigned counsel, hereby submits this Memorandum of Law in Support of Plaintiff's Motion to Remand.

## I. Nature of Case

Plaintiff filed this instant action on December 7, 2018, in the Charleston County Court of Common Pleas against Defendants Haymaker Content LLC (herein referred to as "Defendant Haymaker"), Bravo Media Productions, Inc. (herein referred to as "Defendant Bravo"), NBCUniversal Media, LLC (herein referred to as "Defendant NBC"), and Comcast Corporation (herein referred to as "Defendant Comcast"; Defendants Haymaker, Bravo, NBC, and Comcast herein collectively referred to as "Corporate Defendants") based upon a careless and reckless act committed by Corporate Defendants' employee/agent, Defendant Thomas Ravenel (herein referred to as "Defendant Ravenel"). Defendant Ravenel was a cast member of Corporate Defendants' reality television show "Southern Charm" in which Plaintiff also appeared on occasion as she was the nanny for Defendant Ravenel's children. (*See* ECF 6-1, pp. 2-3). Defendant Ravenel was criminally charged in the South Carolina Court of General Sessions for the actions underlying Plaintiff's Complaint, and, as admitted by Corporate Defendants, is a

1

resident of South Carolina. (*See* ECF 1). In Plaintiff's Complaint she admits she is a resident of the State of North Carolina, and asserts it is her belief that Defendants Haymaker and Bravo are incorporated under the laws of the State of New York, Defendant NBC incorporated under the laws of the State of Delaware, and Defendant Comcast incorporated under the laws of the State of Pennsylvania. (*See* ECF 1-2, pp. 5-6).

Prior to serving any Defendants, Plaintiff amended her Complaint on February 26, 2019. Neither the parties nor their residences were amended. (*See* ECF 1-2, pp. 5-6; 21-22). After filing her Amended Complaint, but prior to the perfection of service on all Defendants, Plaintiff was informed that the designations of Defendants Haymaker and Bravo were incorrect. Plaintiff discovered that the correct designation for Defendants Haymaker and Bravo should be Haymaker Media Inc. and Bravo Media Productions LLC, respectively. Plaintiff subsequently served the correct registered agents for Defendants Haymaker, NBC, and Comcast on March 12, 2019 and Defendant Bravo on March 15, 2019. (ECF 1-2, pp. 39-42). Counsel for Defendant Ravenel accepted service on his behalf on March 15, 2019. (*See* Exhibit 1). Pursuant to the South Carolina Rules of Civil Procedure, all proofs of service were filed with the Charleston County Clerk of Court on March 29, 2019. (ECF 1-2, pp. 39-42; Exhibit 1).

Upon Corporate Defendants' request, Plaintiff consented to an extension of time for the Corporate Defendants to answer or other plead and on May 13, 2019, Corporate Defendants filed a Motion to Dismiss in state court based upon alleged voluntary participation signed agreements between Plaintiff and Corporate Defendants. (*See* Exhibit 2; ECF 1-2, pp. 44-53; *see also* ECF 6, 6-1). As Plaintiff and Defendant Ravenel entered into settlement negotiations and reached an agreement in principle, Defendant Ravenel never filed a responsive pleading or motion for an extension of time to answer Plaintiff's Amended Complaint. The Plaintiff agreed upon a

preliminary document exchange in which the Plaintiff provided copies of evidence regarding the matter in her possession to the Corporate Defendants. (*See* Exhibit 3). Nothing provided to the Corporate Defendants included any purported signed agreements between Plaintiff and Corporate Defendants. As Corporate Defendants would not consent to an order to correctly designate Defendants Haymaker and Bravo, Plaintiff filed a Motion to Amend the same pursuant to Rule 15 of the South Carolina Rules of Civil Procedure. (ECF 1-2, pp. 55-58).

On June 17, 2019, counsel for Corporate Defendants inquired whether Plaintiff would consent to the Master-in-Equity, the Honorable Mikell R. Scarborough, hearing and ruling upon the Corporate Defendants' and Plaintiff's pending motions. (Exhibit 4). Plaintiff consented to the Corporate Defendants' request. (*See* ECF 1-2, pp. 61-65). The motions were set to be heard before Judge Scarborough on September 4, 2019. (Exhibit 5). On August 16, 2019, counsel for Corporate Defendants requested dates from Judge Scarborough in which Corporate Defendants' and Plaintiff's memoranda concerning the pending motions were due. (Exhibit 6). Judge Scarborough stated that both Plaintiff's and Corporate Defendants' memoranda be filed no later than August 23, 2019 by 5:00 p.m. (Exhibit 7). On August 20, 2019, Plaintiff requested an extension for both Plaintiff and Corporate Defendants to file their memoranda until August 26, 2019, as counsel for Plaintiff was involved in a trial the week of August 23; however, Judge Scarborough respectfully denied Plaintiff's request and reiterated his previous deadline as he was out of town the following week. (Exhibit 8). Both parties submitted their briefs prior to the deadline. (ECF 1-2, pp. 67-107; Exhibit 9).

Counsel for Corporate Defendants later stated it was unaware that Plaintiff's counsel did not have a copy of the signed purported voluntary participation agreements between Plaintiff and Corporate Defendants at issue in its pending motion to dismiss, despite Corporate Defendants

never receiving a copy from Plaintiff during the aforementioned preliminary document exchange. (Exhibit 10). However, Corporate Defendants stated they would provide Plaintiff a copy of the agreements should Plaintiff enter into a Consent Protective Order. *Id.* Plaintiff would not enter a Consent Protective Order and requested that Corporate Defendants provide such agreements. (Exhibit 11). The Corporate Defendants then provided the alleged agreements on September 4, 2019. (Exhibit 12). Despite Judge Scarborough providing a deadline for all parties' briefs, Corporate Defendants submitted a Reply Memorandum on August 29, 2019, and later an Amended Reply Memorandum on September 11, 2019, as the original hearing was postponed due to Hurricane Dorian. (*See* Exhibit 13). Due to Corporate Defendants providing Plaintiff with the alleged agreements at issue in their motion after the memorandum deadline, and also because Corporate Defendants continued to disregard Judge Scarborough's deadline, Plaintiff requested permission from Judge Scarborough to file a supplemental memorandum. (Exhibit 14). On September 16, 2019, in response to Plaintiff's inquiry, Judge Scarborough's chambers informed counsel for the parties that he would "be unable to make a sufficiently informed decision regarding the motions" and "authorize[d] the parties to engage in limited discovery for the sole purpose of determining the parameters of the execution" of the agreements at issue. (Exhibit 15).

Two days after Judge Scarborough's decision, Corporate Defendants requested dates from Plaintiff "within the next 2-3 weeks" to conduct her deposition. (Exhibit 16). Corporate Defendants additionally called Plaintiff's office for the same. On September 20, 2019, counsel for Plaintiff informed Corporate Defendants he was attempting to secure the Plaintiff's availability, and also requested to schedule the depositions of the individual affiants who the Corporate Defendants included in its multiple Memoranda in support of their Motion to Dismiss. (Exhibit 17). Plaintiff also requested dates for S.C. R. Civ. P. 30(b)(6) depositions of the Corporate

4

Defendants and included topics consistent with Judge Scarborough's limited discovery order. *Id.* Plaintiff's counsel later provided dates in early October of the Plaintiff's availability and requested an update from Corporate Defendants regarding the deponents in which Plaintiff inquired. (Exhibit 18). The Corporate Defendants' counsel's office responded that they would "get back to [Plaintiff's counsel]" after "checking with" counsel. (Exhibit 19). On Thursday, October 3, 2019, Corporate Defendants filed the Notice to Remove this action, alleging for the first time that Defendant Ravenel was a nominal party due to recently learning of the settlement agreement with Plaintiff. (ECF 1-1). They also allege that their removal was timely filed. *Id.*

While the Corporate Defendants' and Plaintiff's counsel were in constant communication, Plaintiff entered into a settlement agreement with Defendant Ravenel. The terms of the agreement include Defendant Ravenel "continuing to be a party in the Lawsuit[,]" assigning certain claims of Defendant Ravenel's against Corporate Defendants and third-parties to Plaintiff, but Defendant Ravenel "retain[ing] *any personal claims* (e.g. emotional distress and punitive damages), . . . against [Corporate Defendants], and any other entities and parties arising from his associations, appearances, and contracts with the television show 'Southern Charm.'" (ECF 1-1, pp. 13-24) (emphasis added). In addition, during the pendency of the instant action, Defendant Ravenel joined Defendants Haymaker and Bravo as third-party defendants in a family court action pending in the Charleston County Family Court, case 2018-DR-10-03671. Upon information and belief, Defendant Ravenel's counsel in the family court action was in continuous communication with counsel for Defendants Haymaker's and Bravo's counsel until their dismissal from that action.

Defendant Ravenel later pled guilty to assault and battery third degree in the Charleston County Court of General Sessions regarding the aforementioned criminal charge on September 11, 2019. The settlement agreement between the Plaintiff and Defendant Ravenel was filed the same

5

day. (*See* ECF 1-1, pp. 13-24). Despite counsel for Plaintiff and Corporate Defendants being in continuous communication since the filing of this action and Defendant Ravenel never filing a responsive pleading or motion to extend the time for filing of the same, Corporate Defendants are alleging that this removal is timely stating it had no knowledge of Defendant Ravenel's settlement. However, because Defendant Ravenel is a resident of the forum state of South Carolina and not a nominal defendant, Corporate Defendants' Notice of Removal is facially defective. Additionally, because Corporate Defendants knew or should have known the parties were completely diverse prior to service of process, their Notice of Removal is untimely. Therefore, this Court must remand the action to state court.

## II. Argument

"Removal of cases from state to federal court is one of the most controversial and contentious aspects of federal jurisdictional law." Paul E. Lund, *The Timeliness of Removal and Multiple-Defendant Lawsuits*, 64 Baylor L. Rev. 50, 52 (2012). While "any civil action brought in a State court of which the district courts of the United State have original jurisdiction, may be removed" to federal court, "[t]he burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chemicals Co.,* 29 F.3d 148, 151 (4th Cir. 1994) (citations omitted). Further, "[b]ecause removal jurisdiction raises significant federalism concerns," federal district courts "must strictly construe removal jurisdiction." *Id.* (citations omitted). This is because federal courts are courts of limited jurisdiction. *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008). Remanding to state court is necessary *"[i]f federal jurisdiction is doubtful."* *Mulcahey*, 29 F.3d at 151. (citations omitted) (emphasis added). Pursuant to 28 U.S.C. § 1447(c), a case "shall be remanded" should the district court determine at any time it lacks subject matter jurisdiction.

In the present action, as Plaintiff is not asserting any federal claims, Corporate Defendants are basing federal jurisdiction upon diversity of citizenship and have asserted that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between Citizens of different States." 28 U.S.C. § 1332(a); *see also* ECF 1-1.  However, removal is precluded under 28 U.S.C. 1441(b)(2) when diversity of citizenship exists but a defendant is a citizen of the state in which the action is brought. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 117 S. Ct. 467 (1996). Moreover, pursuant to 28 U.S.C. § 1446, "notice of removal . . . shall be filed within 30 days . . . after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Additionally, "[a]ll defendants who have been properly joined and served *must* join in or consent to the removal of the action." 28 U.S.C. §1446(b)(2)(A) (emphasis added). In some instances, Defendants can remove actions to federal court without complete diversity and consent if those defendants are nominal parties. *See Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 259 (4th Cir. 2013). Defendant Ravenel, however, is not a nominal forum-defendant, thus making removal facially defective. Additionally, Corporate Defendants did not timely file their notice of removal and failed to obtain consent of Defendant Ravenel making remand appropriate.

**A. Defendant Ravenel is not a nominal forum-defendant.**

Defendant Ravenel is a forum-defendant with an interest in this action and accordingly, this action is not removable. Pursuant to 28 U.S.C. § 1441(b)(2), actions otherwise removable on the basis of diversity jurisdiction, "may not be removed if any of the parties in interest properly joined and served is a citizen of the State in which such action is brought." Known as the "forum defendant rule," it has been explained that it:

> [E]xists due to the basic premise behind diversity jurisdiction itself. Section 1332 jurisdiction is designed as a protection for out-of-state litigants from possible bias in favor of in-state litigants in state court. Removal based upon diversity serves this purpose in that an in-state plaintiff may not utilize her position as master of the case to keep an out-of-state defendant in state court in order to take advantage of local bias. However, the protection upon which removal based upon diversity is premised is not an issue when an out-of-state plaintiff chooses to bring[] a suit in the state where the defendant is a citizen. Therefore, the forum defendant rule exists to allow the plaintiff to retain a certain amount of control over her case when such concerns about local bias in her favor are not at issue.

*Phillips Constr., LLC v. Daniels Law Firm, PLLC*, 93 F. Supp. 3d 544, 548 (S.D.W. Va. 2015).

Upon information and belief, Corporate Defendants are asserting that because Defendant Ravenel is allegedly now a "nominal party," 28 U.S.C. § 1441(b)(2) can be ignored. Upon diligent search, Plaintiff is unable to find many cases which purports to create a "nominal defendant" exception to the mandate and plain language of 28 U.S.C. § 1441(b)(2) as the "nominal defendant" exception generally involves the "rule of unanimity" regarding defendants' consent to removal, thus making Corporate Defendants' Notice of Removal defective on its face. *See* Lund, *supra* at 68. However, some courts have considered this as an exception[1] and should this court determine that an exception exists, Defendant Ravenel is not a nominal defendant as the Fourth Circuit explained that:

> Nominal means simply a party having no immediately apparent stake in the litigation either *prior or subsequent* to the act of removal. In other words, the key inquiry is whether the suit can be resolved without affecting the non-consenting nominal defendant in any reasonably foreseeable way. There are dangers to incorrectly calibrating the scope of the nominal party exception in either direction. If courts broaden the exception so as to disregard too many non-consenting defendants, *there is a possibility not only that the interests of non-consenting parties may be overlooked* but that the *federal courts will confer a basis for removal that the Supreme Court has declared should not exist*.

---

[1] *See Justice v. Halliburton Energy Servs., Inc.*, No. 5:19-CV-201, 2019 WL 3991067, at *3 (N.D.W. Va. Aug;. 23, 2019).

*Hartford Fire Ins. Co.* at 260 (citations omitted) (emphasis added). The Corporate Defendants' Notice of Removal erroneously states that "because there is no reasonable basis for predicting that Defendant Ravenel will be held liable . . . he is a nominal defendant" citing to the Eighth Circuit. (ECF 1, p. 5). However, Courts in the Fourth Circuit, including the District of South Carolina, have looked at the following four factors in considering whether a party has sufficient stake in litigation: "(1) the level of control that party retains over the litigation; (2) the weightiness of the party's interest in the litigation; (3) whether the party has retained counsel; and (4) whether the party has given a statement or deposition." *Smalls v. Credit Acceptance Corp.*, No. 9:16-CV-01954-CWH, 2017 WL 11311516, at *4 (D.S.C. Mar. 23, 2017) (citations omitted). While courts have found that entering into settlement agreements could make defendants nominal, courts will also consider a party's financial risk of litigation, with no risk "weigh[ing] heaviest in favor of finding that a party is a nominal party." *Id.* (citations omitted).

In the present case, should there be a "nominal defendant" exception to 28 U.S.C. § 1441(b)(2), Defendant Ravenel has a stake and interest in the continuing litigation. He certainly had a stake prior to removal as his actions were the basis of this suit and he was charged criminally for such actions. *See Hartford Fire Ins. Co.* at 260; *see also* ECF 1, p. 2-3. Further, Corporate Defendants have never sought his consent for removal. (Exhibit 20). Corporate Defendants are correct that Plaintiff and Defendant Ravenel entered into a settlement agreement. However, the settlement agreement far from releases Defendant Ravenel from any financial risk. As an example, the agreement specifically states that Defendant Ravenel will continue to be a party in the action for purposes of asserting cross-claims and potentially joining of third-party defendants. (ECF 1-1, p. 16). Additionally, while Defendant Ravenel does assign all legally cognizable claims against Corporate Defendants and third-parties to Plaintiff, he retains any personal claims against

Corporate Defendants for emotional and punitive damages. (ECF 1-1, pp. 16-17). Moreover, the settlement agreement specifically includes a cooperation agreement, meaning that Defendant Ravenel would face potential further civil liability should he breach the same, thus making him have an apparent stake in this matter. *Id.*

Perhaps most importantly, upon information and belief, Defendant Ravenel has entered into some sort of contract with Corporate Defendants likely similar to the contracts which Corporate Defendants purport Plaintiff entered into. One of Plaintiff's alleged agreements provided by Corporate Defendants contains an indemnification clause. (*See* Exhibit 21). If Defendant Ravenel previously entered into an indemnification agreement with Corporate Defendants, Corporate Defendants cannot in good faith claim he has no financial stake in this matter as he would obviously have potential liability. Indeed, Judge Bailey's opinion in *Justice v. Halliburton* is instructional to the present matter as he holds that "[i]f there is *any* chance [a defendant] can be held liable, then he has an interest in [the] case." No. 5:19-CV-201, 2019 WL 3991067, at *3 (emphasis added). As Plaintiff is unaware of all contracts or agreements between Corporate Defendants and Defendant Ravenel, limited discovery to determine the same may be appropriate. At the very least, Defendant Ravenel should be served with Notice of Removal and given the opportunity to appear and respond as to his understanding of whether he is a nominal defendant rather than Corporate Defendants simply making a blanket assertion as they are the party bearing the burden of proving removal is proper. However, because Defendant Ravenel continues to have potential liability in this action through a likely indemnification agreement, as well his retained personal claims in which he could not assign, Corporate Defendants cannot overcome this burden and this case should be remanded.

**B. Should the court determine there is a nominal defendant exception to 28 U.S.C. § 1441(b)(2), the Corporate Defendants failed to timely remove this action.**

The Corporate Defendants' Notice of Removal was untimely should the court determine that Defendant Ravenel is a nominal party under 28 U.S.C. § 1441(b)(2). "[N]otice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant[s], through service *or otherwise*, of a copy of *initial pleading* setting forth the claim for relief upon which such action or proceeding is based. . . ." 28 U.S.C. § 1446(b)(1) (emphasis added). The Fourth Circuit has explained that defendants will be bound to file a notice of removal within 30 days "where an initial pleading reveals a ground for removal." *Lovern v. General Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997). Moreover, the district court does not have the authority to extend the 30 day statutory period for removal. *Stone St. Capital, Inc. v. McDonald's Corp.*, 300 F. Supp. 2d 345, 350-51 (D. Md. 2003). Some district courts have permitted forum-defendants removing cases despite 28 U.S.C. § 1441(b)(2) if the forum-defendants remove the action prior to being served. *See, e.g. Phillips Constr., LLC*, 93 F. Supp. 3d at 550-56 (explaining different district courts' approaches regarding forum-defendants removing to federal court prior to service of process to avoid the implications of 28 U.S.C. § 1441(b)(2)).

Here, as Corporate Defendants acknowledge, this action was first commenced on December 7, 2018. (ECF 1). In Plaintiff's original and Amended Complaint, she pled facts that reveal all parties are diverse. (ECF 1-2, pp. 5-6; 21-22). Even though Corporate Defendants and Defendant Ravenel had yet to be served until four (4) months after the initial filing of the Complaint, Corporate Defendants had notice of the suit from various news outlets. (*See* Exhibit 22). Moreover, on December 19, 2018, Plaintiff was deposed in Defendant Ravenel's family court matter—a matter in which Defendants Haymaker and Bravo were a party and served with a copy of Plaintiff's subpoena. (*See* Exhibit 23). At that time, Defendants could have attempted to

remove this action to avoid the implications of the forum-defendant rule of 28 U.S.C. § 1441(b)(2) prior to service, yet chose not to do so. Of course, Corporate Defendants would have had to obtain Defendant Ravenel's consent for removal but never sought or requested it. (Exhibit 20). Indeed, Corporate Defendants' assertion that Defendant Ravenel was "the only non-diverse Defendant" is factually inaccurate because from the beginning of this litigation, diversity of citizenship has existed from the face and plain reading of the Plaintiff's Complaint. Accordingly, because Defendants did not remove the action before service of process, the Notice of Removal is untimely and this action must be remanded to state court.

Moreover, Corporate Defendants cannot argue in good faith that it had no knowledge of Plaintiff's settlement with Defendant Ravenel as a basis for timeliness because an exercise of due diligence would have revealed the settlement. For instance, Corporate Defendants knew that Defendant Ravenel was served on March 15, 2019, as the Acceptance of Service was filed with the Charleston County Clerk of Court. (Exhibit 1). As Defendant Ravenel never answered or otherwise pled within thirty (30) days, Corporate Defendants should have realized that Plaintiff and Defendant Ravenel were involved in some sort of discussions and they could have inquired about the same.

At the very least, Corporate Defendants should have been alerted within sixty (60) days of service of Defendant Ravenel, provided that Plaintiff afforded the same professional courtesy to Defendant Ravenel as she did to Corporate Defendants with an extension to answer or otherwise plead. In addition, counsel for Defendant Ravenel was copied on email communications with Corporate Defense's counsel as well as served with all state court motions and memoranda submitted by Plaintiff well after sixty (60) days of Defendant Ravenel being served. (*See* 1-2, pp. 56-60, 67-107). Corporate Defendants, like Plaintiff, were bound by the Rules of Civil Procedure

in South Carolina during this time. Specifically, Rule 6(b) does not permit an additional extension of time to answer the lawsuit without written motion or court order. Because nothing was filed with the state court, this could lead to only two conclusions: Defendant Ravenel was in default or Defendant Ravenel reached a settlement with the Plaintiff. As Plaintiff never requested a damages hearing regarding Defendant Ravenel being in default and continued to include Defendant Ravenel's counsel copied on all filings, Corporate Defendants knew or should have realized the latter if they exercised any due diligence. Indeed, Corporate Defendants, as an employer of Defendant Ravenel for numerous years, knew or should have known of his legal capabilities and whether he or counsel would permit a case against him to go into default.

Further, with Corporate Defendants' counsel in constant communications with Plaintiff's counsel as illustrated by the numerous attached exhibits, Corporate Defendants could have simply asked Plaintiff's counsel the status of Defendant Ravenel given his lack of response to the lawsuit, and Plaintiff's counsel would have instructed them. Instead, Corporate Defendants sat idle. Corporate Defendants could have also inquired about Defendant Ravenel from his attorney(s) who was copied on all of Plaintiff's filings; however, upon information and belief, they chose not to do so. Because Corporate Defendants' failure to exercise due diligence in determining Defendant Ravenel's status as a party even though something should have alerted them that Defendant Ravenel's status in the pending litigation was questionable, they should not be permitted to now claim that they were first made aware that the action may be removable in September of 2019. Accordingly, this Court should remand this action as, even if Defendant Ravenel is determined to be a nominal forum-defendant, Corporate Defendants did not timely file its Notice for Removal.

### C. Plaintiff is entitled to an award of attorneys' fees and costs.

Plaintiff is entitled to attorneys' fees and costs under 28 U.S.C. § 1447(c). There is no requirement "that fees under § 1447(c) should either usually be granted or usually be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S. Ct. 704 (2005). Rather, the Supreme Court implemented the standard that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Id.* at 136, 126 S. Ct. at 708. Further, it is not necessary to show that the removing party's position was "frivolous, unreasonable or without foundation." *Id.* at 138, 126 S. Ct. at 710. However, when removal is used as an improper litigation strategy "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Id.* at 140, 126 S. Ct. at 704. The Supreme Court has encouraged district courts to "recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party . . . while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140, 126 S. Ct. at 711. In exercising this discretion, the Court must ensure its rationale is "'faithful to the purposes' of awarding fees under § 1447(c)." *Id.* at 141, 126 S. Ct. at 711.

Here, based upon how the case was progressing through state court, the Corporate Defendants are attempting, albeit belatedly and improperly, a "second bite at the jurisdictional apple" when "perceive[ing] that the case is proceeding other than to [their] liking." *Nasco, Inc. v. Norsworthy*, 785 F.Supp. 707, 710 (M.D. Tenn. 1992) (explaining that "[t]he thirty day limitation mandated by § 1446(b) . . . forecloses a defendant from a 'wait and see' approach in the state court . . . [and] minimizes the delay and waste of resources involved in starting a case over in federal

court. . . ."). Corporate Defendants cannot argue that it is a coincidence that they believe the case is removable after Judge Scarborough, the judge in which Corporate Defendants *first* suggested hear and rule upon the parties' motions, ordered that preliminary discovery be conducted, as Corporate Defendants were more than eager to depose Plaintiff, but became obviously hesitant when Plaintiff informed them of the persons and entities she wished to depose. As discussed above, Corporate Defendants knew or should have known Defendant Ravenel's status in the litigation.

Moreover, by the Corporate Defendants' own filings with this Court, it confirms it had documentation—including the Plaintiff's own admissions—that complete diversity existed at all times. Defendant Ravenel's settlement agreement has nothing to do with when the Corporate Defendants had notice this case was potentially removable as a plain reading of the Complaint and Amended Complaint reveals complete diversity prior to service. Further, Corporate Defendants had knowledge of this action four months prior to service of process, and knew or should have known that Defendant Ravenel never filed a responsive pleading or filed for a motion to extend the same after service. The facts as outlined and argued above indicate that Corporate Defendants are merely engaging in gamesmanship and do not have an objectively valid basis for removal. Plaintiff requested Corporate Defendants' consent to remand the action before the filing of this motion but the Corporate Defendants refused. (*See* ECF 11-1[2]). As such, this case should be remanded and the Plaintiff awarded costs and fees pursuant to 28 U.S.C. § 1447(c).

---

[2] The undersigned erroneously claimed complete diversity did not exist in his correspondence with Corporate Defendants' Counsel. He should have asserted that Defendant Ravenel is forum-defendant who is not a nominal party.

15

### III. Conclusion

For the foregoing reasons, Plaintiff respectfully request this court remand this action to the Court of Common Pleas and to award all fees and costs associated with this motion.

        Respectfully submitted,

        **COBB DILL & HAMMETT, LLC**

BY    <u>/s Ryan C. Andrews</u>
        Ryan C. Andrews
        Federal ID No.: 11748
        Cobb Dill & Hammett, LLC
        222 W. Coleman Blvd.
        Mt. Pleasant, SC 29464
        (843) 936-6680
        randrews@cdhlawfirm.com

        **ATTORNEY FOR THE PLAINTIFF**

Mt. Pleasant, South Carolina
October 16, 2019