IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Dawn Ledwell, | ) | Civil Action No. 2:19-cv-2815-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Thomas Ravenel; Haymaker Content, LLC; | ) | |
| Bravo Media Productions, Inc.; | ) | |
| NBC Universal Media, LLC; | ) | |
| and Comcast Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is Defendant Haymaker Media, Inc. ("Haymaker"), Bravo Media
Productions LLC ("Bravo"), NBCUniversal Media, LLC ("NBC"), and Comcast Corporation's
("Comcast") (collectively the "Defendants") Motion to Dismiss Plaintiff's Amended Complaint.
(Dkt. No. 6.)[1]  For the reasons set forth below, the motion is granted.

I.    **Background**

Plaintiff Dawn Ledwell alleges that she was the caretaker for the children of Thomas
Ravenel for roughly three years. (Dkt. 1-2 ¶ 27.)  Ravenel began appearing on the reality television
show *Southern Charm* around March 2014 and is a central character on the show. (Dkt. 1-2 ¶¶ 11,
14-15.)  *Southern Charm* airs on national and worldwide television. (Dkt. No. 1-2 ¶11.)  At some

---

[1] Plaintiff's Amended Complaint incorrectly designates defendants Haymaker Media, Inc. as
"Haymaker Content, LLC" and Bravo Media Productions LLC as "Bravo Media Productions, Inc."
(Dkt. No. 6-1.)  The signatories to the arbitration agreements at issue in this motion are Plaintiff
and Defendant Haymaker.  NBC, however, is defined as a "Released Party" in both agreements.
(Dkt. Nos. 17-2 and 17-3.)  Further, Defendants have submitted undisputed affidavits affirming
that: (a) defendant Comcast indirectly owns NBC and that (b) Bravo is a subsidiary of NBC. (Dkt.
No. 6-5.)  Both Agreements define "Released Party" to include these parent or subsidiary entities.
Thus, for the purpose of this motion, said parties are referred to interchangeably as "Defendants."

point after beginning to work for Ravenel, (Dkt. No. 17-1 ¶ 5), Plaintiff signed a document, on

September 13, 2014, entitled "Appearance Release Form, Arbitration Provision and Voluntary

Participation Agreement" (the "2014 Agreement") with Haymaker, *Southern Charm*'s producer,

to appear on *Southern Charm*, (Dkt. No. 17-3). Around January 2015, "Plaintiff was the victim of

an unwanted careless and reckless physical act at the hands of an intoxicated . . . Ravenel." (Dkt.

No. 1-2 ¶ 35.) Around December 2015, Plaintiff "notified and informed" Defendants' employee

Chaz Morgan about the incident, but Defendants "failed to investigate Plaintiff's allegations . . .

when they were first made aware of these allegations." (Dkt. No. 1-2 ¶ 46.) Prior to Plaintiff

reporting Ravenel's actions to Defendants, Plaintiff signed a second document, dated September

15, 2015, with Haymaker entitled "Appearance Release Form, Arbitration Provision and

Voluntary Participation Agreement" (the "2015 Agreement") to again appear on *Southern Charm*.

(Dkt. No. 17-2) The 2014 and 2015 Agreements (collectively the "Agreements") contain similar

"Mediation & Arbitration" clauses and are set in similar type. In relevant part, the 2014

Agreement's "Mediation & Arbitration" clause, which is set in bold type and includes certain

sections in all capital letters, reads:

> The parties agree that if any controversy or claim arising out of or relating to the
> Agreement cannot be settled through direct discussions [or JAMS administered
> mediation] . . . THE PARTIES AGREE THAT THE CONTROVERSY OR
> CLAIM, INCLUDING THE SCOPE OR APPLICABILITY OF THIS
> AGREEMENT TO ARBTIRATE, SHALL THEN BE RESOLVED BY FINAL
> AND BINDING CONFIDENTIAL ARBITRATION ADMINISTERED BY
> JAMS IN ACCORDANCE WITH ITS STREAMLINED ARBITRATION RULES
> AND PROCEDURES . . . .

(Dkt. No. 17-3 § 13.) (bolding removed) The 2015 Agreement's clause is similar. (Dkt. No. 17-2

§ 22.) Plaintiff alleges that she made various appearances on *Southern Charm*. (Dkt. No. 1-2 ¶

29.)

On October 3, 2019, Defendants removed this action, which had originally been filed on or around December 7, 2018. (Dkt. No. 1.) Plaintiff's Amended Complaint was filed on or around February 26, 2019. (Dkt. No. 1-2.) Sole resident defendant Ravenel settled with Plaintiff on July 18, 2019. (Dkt. No. 1-1 at 13-23.) Defendants received a copy of the settlement agreement on September 11, 2019 and within thirty days removed the instant action. (Dkt. No. 1.) Plaintiff filed a motion to remand to state court, (Dkt. No. 13), which this Court denied, (Dkt. No. 21). Plaintiff brings causes of action for defamation, various types of negligence, and South Carolina Unfair Trade Practices Act ("SCUTPA") violation. Defendants make a motion to dismiss the action and compel arbitration.[2]

## II.    Legal Standard

The Federal Arbitration Act ("FAA") reflects a liberal policy toward arbitration. The Act provides that a written agreement to arbitrate in any contract involving interstate commerce "shall be valid, irrevocable and enforceable" unless there exists grounds for revocation in law or equity. 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A litigant can compel arbitration under the FAA if the litigant can demonstrate: "(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute." *American Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83,

---

[2] Defendants move under Rule 12(b)(1). (Dkt. No. 6.) The Court will analyze the instant motion under Rule 12(b)(3), however, the correct rule for a motion to dismiss in favor of arbitration. *Brown v. Five Star Quality Care, Inc.*, No. 2:15-cv-4105-RMG, 2016 WL 8710474, at *2 (D.S.C. Jan. 8, 2016) ("In this Circuit, litigants seeking to [compel arbitration] should move under Rule 12(b)(3) (improper venue)" (citing *Aggarao v. MOL Ship. Mgmt. Co.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012)). "This Court's subject-matter jurisdiction is not subject to diminution by private agreement." *Id.* at *5.

87 (4th Cir. 2005) (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002)).

District courts have "no choice but to grant a motion to compel arbitration where a valid arbitration

agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500.

Where all of the claims asserted in a complaint are subject to arbitration, the Fourth Circuit

has held that dismissal is an appropriate remedy. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort,*

*Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues

presented in a lawsuit are arbitrable."). On a Fed. R. Civ. P 12(b)(3) motion to dismiss to compel

arbitration, the Court may consider evidence outside the pleadings, but the facts are viewed in a

light most favorable to the plaintiff because a plaintiff need only make a *prima facie* showing of

proper venue to survive a motion to dismiss. *Brown v. Five Star Quality Care, Inc.*, No. 2:15-cv-

4105-RMG, 2016 WL 8710474, at \*2 (D.S.C. Jan. 1, 2016).

## III.    Discussion

This dispute is subject to arbitration under the FAA and the four-part test applied by the

Fourth Circuit. First, there is a dispute between the parties, as evidenced by the Complaint filed

in this action. (Dkt. No. 1.) Second, Plaintiff does not deny she refused to arbitrate, as evidenced

by her complaint and the filings in this case. Third, the Agreements affect interstate commerce as

shown by Plaintiff's allegations that *Southern Charm* is a television show which airs worldwide,

and which is produced by out-of-state defendants. (Dkt. No. 1-2 ¶ 11.) Thus, the only issue in

dispute is whether there is a valid written agreement which purports to cover this dispute.

Here, the Court finds that the parties entered into valid written agreements which contain

arbitration provisions covering this dispute. For example, the 2014 Agreement, signed by Plaintiff

before the January 2015 incident with Ravenel, explicitly covers "any controversy or claim arising

out of or relating to this Agreement" and further states that "the scope or applicability of this

agreement to arbitrate" shall be resolved by arbitration. (Dkt. No. 17-3 § 13) (emphasis removed)

-4-

Plaintiff claims this and the similar provision from the 2015 Agreement do not cover her claims because she "does not allege any wrongdoing out of her participation on [*Southern Charm*]." (Dkt. No. 17 at 9.) Plaintiff's Amended Complaint belies this argument. Plaintiff's negligence claims arise from allegations that Defendants were careless or reckless in hiring, training, and/or supervising their employees, including Ravenel, in connection with *Southern Charm*, as well as "carelessly and recklessly violating the applicable standards of care owed to persons *appearing* on Corporate Defendants' reality television show." (Dkt. No. 1-2 ¶ 79) (emphasis supplied) Similarly, Plaintiff's defamation claim arises out of the allegation "Defendants, by and through their employee/agent/servant Chaz Morgan and other employees/agents/servants, have made false, defamatory misrepresentations to others regarding the aforementioned incident involving Plaintiff and [Ravenel]." (Dkt. No. 1-2 ¶ 50.) Lastly, Plaintiff's SCUTPA claim arises from allegations that various negligent acts "were done for the purpose of preserving and increasing the profitability of the Corporate Defendant's reality television show and television networks." (Dkt. No. 1-2 ¶ 91.) The Agreements' arbitration clauses cover Plaintiff's claims. *See, e.g.*, *Gray v. Talking Phone Book*, No. 8:08-cv-01833-GRA, 2008 WL 11348324, at *1 (D.S.C. Aug 7, 2008) (granting motion to dismiss where arbitration clause encompassed "any controversy or claim arising out of or relating to this Agreement"); *Jefferies v. Certified Auto Center, LLC*, 2017 WL 10810592, at *3 (D.S.C. Feb. 8, 2017) ("[T]he court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'").

Plaintiff, however, argues that no agreement existed between the parties, and that the arbitration agreements are unconscionable.

Plaintiff's argument that the Agreements are unsupported by a lack of consideration is unconvincing. The Agreements do not lack consideration because the "mutual promise to arbitrate constitutes sufficient consideration." *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997). Further, both agreements state that "I acknowledge and agree that a significant element of the consideration I am receiving under this Agreement is the opportunity for publicity that I will receive if Producer includes the Footage and Materials in the Program or in the Advertisements." (Dkt. No. 17-2 § 7; Dkt. No. 17-3 § 6.) As one court reasoned, Plaintiff "signed on to participate in a television show" and "bargained for the chance for publicity." *See Klapper v. Graziano*, 970 N.Y.S.2d 355, 361 (Sup. Ct. 2013) (upholding release barring plaintiff from suing television producer for defamation in exchange for plaintiff's appearance on reality television show).

By extension, Plaintiff's contention that she needed "new and additional consideration" to support the Agreements is confounding. (Dkt. No. 17 at 6.) Before signing the Agreements, Plaintiff had no contracts with the Defendants. Therefore, to enter into the 2014 Agreement, Plaintiff would not need "new and additional consideration." The fact Plaintiff worked for Ravenel as a nanny prior to her appearances on *Southern Charm* is irrelevant.

Plaintiff also claims she signed the Agreements under duress. However, the 2015 Agreement states that Plaintiff acknowledges that she "had ample opportunity to read, and [has] in fact read, this entire agreement" and that "I understand I am giving up certain legal rights under this agreement, including, without limitation, my right to file a lawsuit in court with respect to any claim arising in connection with this agreement." (Dkt. No. 17-2 at 9) (bolding, capitalization, and underlining removed) Plaintiff has not presented any non-conclusory allegations or evidence that she did not have the opportunity to read or review the document or that Defendants pressured Plaintiff to sign the Agreements. Plaintiff's assertions that "the frequency of filming and my

schedule as a nanny [for Ravenel] . . . made my appearance on [*Southern Charm*] almost inevitable" and that "crew for [*Southern Charm*] approach[ed] me on two separate occasions about appearing on the television show and requesting my consent" do not come close to constituting duress. (Dkt. No. 17-1 ¶¶ 7, 9, 10.) *See Philips v. Baker*, 284 S.C. 134, 325 S.E.2d 533 (S.C. 1985) (no duress absent "improper external pressure or influence that practically destroys the free agency of a party").

Lastly, Plaintiff argues that the Agreements are unconscionable. Plaintiff's principal point is that there are various procedural deficiencies with the arbitration agreements, namely that the 2015 Agreement waives Plaintiff's right to punitive or exemplary damages and limits Plaintiff's recovery to actual damages. (Dkt. No. 17 at 13.) However, a review of the Agreements reveals this is not the case. The 2015 Agreement states "the damages recoverable by the parties to any dispute shall be limited to actual damages, and such parties waive the right to seek, and shall in no event by liable for, punitive or exemplary damages" *only* "to the maximum extent permitted by the law." (Dkt. No. 17-2 § 22.) *See also* 2014 Agreement (Dkt. No. 17-3 § 13) (allowing the arbitrator to award "any remedy that would have been available in court" arising from "unwaivable public rights"). As the Agreements allow the types of "mandatory statutory remedies" Plaintiff could in theory be entitled to under SCUTPA, the Agreements are not unconscionable or against public policy. *See Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 644 S.E.2d 663, 671 (2007) (invalidating arbitration provision providing "[i]n *no* event shall the arbitrator be authorized to award punitive . . . or [mandatory] treble damages" under SCUTPA) (emphasis supplied).

## IV.    Conclusion

For the foregoing reasons, Defendants Haymaker Media, Inc., Bravo Media Productions LLC, NBCUniversal Media, LLC, and Comcast Corporation's Motion to Dismiss (Dkt. No. 6) is **GRANTED**. The Court **ORDERS** Plaintiff Dawn Ledwell and Defendants Haymaker Media,

Inc., Bravo Media Productions LLC, NBCUniversal Media, LLC, and Comcast Corporation to arbitrate their dispute in accordance with the Agreements. All claims against Defendants Haymaker Media, Inc., Bravo Media Productions LLC, NBCUniversal Media, LLC, and Comcast Corporation are **DISMISSED WITHOUT PREJUDICE.**

      **AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

January 17, 2020
Charleston, South Carolina